UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Painters District Council No. 30,

        Plaintiff/Counterdefendant,

v.

Vinco Painting Inc.,

        Defendant/Counterplaintiff.

Case No. 08-cv-1163
Judge Conlon
Magistrate Judge Ashman

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Painters District Council No. 30 (the "Union") respectfully urges this Court to grant summary judgment in favor of Plaintiff and against Defendant Vinco Painting Inc. ("Vinco") both on the Union's claim against Defendant for confirmation of an arbitration award and on Defendant's counterclaim against the Union to vacate the same award. Because no disputed, material facts exist that prevent the entry of judgment as a matter of law in favor of Plaintiff, the award must be enforced, and Defendant must pay the Union's reasonable attorneys' fees and costs in bringing this action.

### FACTS

Vinco is a painting contractor located in Chicago, Illinois.[1] On August 30, 2007, Defendant entered into a collective-bargaining agreement with Plaintiff Painters District Council No. 30 (the "Union"), a labor organization affiliated with the International Union of Painters and Allied Trades, an agreement that has continued in effect at all times relevant to this proceeding.[2] Among the obligations placed upon Defendant by the collective-bargaining agreement (the "CBA") are (1) to maintain an office where it may be reached and to furnish

---

[1] Plaintiff's Statement of Material Facts ("SMF") at ¶ 3, 6, 7.
[2] SMF at ¶ 2, 4-5.

the Union with notice of the current address of that office,[3] (2) to report to the Union all job sites where bargaining-unit work is to be performed,[4] (3) to pay an overtime premium for time worked over eight hours in one day and for time worked in industrial and commercial buildings between 3:30 PM and 7:00 AM,[5] (4) to notify the Union before performing overtime work on a Saturday, Sunday, or holiday,[6] and (5) to provide employees with detachable paycheck stubs showing the Employer's business name, the employee's name or social security number, total straight time hours, overtime hours, the ending date of the pay period, the total amount due, and all itemized deductions.[7]

The CBA also provides, at Article 13, Section 13.1, for the resolution of contractual disputes through arbitration before a Joint Trade Board (the "JTB") consisting of twelve members, six appointed by the Union and six appointed by the Association.[8] The CBA makes all decisions of the JTB final and binding upon all parties.[9] The CBA further provides that a signatory employer must pay the Union's attorneys' fees and costs incurred in seeking judicial enforcement of a JTB award against that employer.[10] It is an unwritten policy of the JTB to permit an employer against which it has issued findings to present additional evidence to the JTB and seek reconsideration of its findings at a subsequent meeting, so long as it makes a written request and tenders a check in the amount of half of the penalties assessed by the JTB, which check is held but not cashed until after the subsequent hearing.[11]

---

[3] SMF at ¶ 18-19.
[4] SMF at ¶ 13.
[5] SMF at ¶ 14-15.
[6] SMF at ¶ 14.
[7] SMF at ¶ 17.
[8] SMF at ¶ 8.
[9] SMF at ¶ 9.
[10] SMF at ¶ 10.
[11] SMF at ¶ 37.

On or about December 28, 2007, the Union filed charges against Defendant alleging violations of the CBA.[12] On about January 3, 2008, the Union sent written notice of the charges and that the JTB would hear those charges on January 17, 2008, to Defendant from its offices in Aurora, Illinois by both certified and regular first-class mail to the address reported by Defendant to the Union when it signed the CBA in August 2007: 6649 Ogallah Ave., Chicago, Illinois 60631.[13] However Defendant had moved from this address on November 6, 2007, without ever notifying the Union of the new address until about January 24 or 25, 2008, when Charles Anderson spoke with both Vince and Denise Angelilli.[14] Because Defendant had moved, the Postal Service was unable to deliver the Union's notices, and on January 14, 2008, the Postal Service returned the copy of the notice sent by certified mail on January 3, 2008, marked, "Return to sender — moved left no address."[15] The copy of the notice sent by first-class mail was never returned to the Union.[16]

Meanwhile, on January 17, 2008, the JTB convened, and no representative of Defendant was in attendance.[17] Evidence supporting the allegations in the charges was presented, and the JTB found that Defendant violated the collective-bargaining agreement in several respects.[18] Specifically, the JTB found that Defendant had violated the Agreement by (a) failing on 73 occasions to pay employee Loren Deland overtime as required by the CBA, (b) failing on 79 occasions to pay employee William Medina overtime as required by the CBA, (c) failing on 63 occasions to pay employee Jesus Mota overtime as required by the CBA, (d) failing on 94 occasions to pay employee Jeremy Weise overtime as required by the CBA, (e) failing on 94 occasions to secure an overtime permit from the Union, (f) failing on 101

---

[12] SMF at ¶ 11.
[13] SMF at ¶ 20.
[14] SMF at ¶ 7, 21, 32, 33.
[15] SMF at ¶ 22.
[16] SMF at ¶ 22.
[17] SMF at ¶ 23.
[18] SMF at ¶ 24.

3

occasions to register job locations with the Union, and (g) failing on 101 occasions to provide employees with detachable paycheck stubs.[19] The JTB, interpreting the provisions of the CBA, assessed penalties against Defendant of $500 for each of the occasions described immediately above, plus the actual overtime wages required under the CBA but not paid.[20] The following chart summarizes the penalties assessed by the JTB against Defendant:[21]

|  |  | Total Owed |
|---|---|---|
| **Loren Deland** |  |  |
| Actual overtime wages | $ 2,091.82 |  |
| Fine of $500/day for 73 days of non-payment of overtime | 36,500.00 |  |
| Sub-Total |  | $ 38,591.82 |
| **William Medina** |  |  |
| Actual overtime wages | 592.95 |  |
| Fine of $500/day for 79 days of non-payment of overtime | 39,500.00 |  |
| Sub-Total |  | 40,092.95 |
| **Jesus Mota** |  |  |
| Actual overtime wages | 548.70 |  |
| Fine of $500/day for 63 days of non-payment of overtime | 31,500.00 |  |
| Sub-Total |  | 32,048.70 |
| **Jeremy Weise** |  |  |
| Actual overtime wages | 216.39 |  |
| Fine of $500/day for 94 days of non-payment of overtime | 47,000.00 |  |
| Sub-Total |  | 47,216.39 |
| **Painters District Council 30** |  |  |
| Fine of $500/day for 94 days of failing to secure an overtime permit from the Union | 47,000.00 |  |
| Fine of $500/day for 101 days of failing to register job locations with the Union | 50,500.00 |  |
| Fine of $500/day for 101 days of failing to provide check stubs to employees | 50,500.00 |  |
| Sub-Total |  | 148,000.00 |
| **Total** |  | **$305,949.86** |

---

[19] SMF at ¶ 26, 27.
[20] SMF at ¶ 26, 27.
[21] SMF at ¶ 27.

4

The JTB's findings are summarized in the minutes of the meeting taken by Anderson, who was present at the hearing.[22]

On about January 22, 2008, the Union mailed a letter to Defendant at 6649 Ogallah Ave., Chicago, Illinois 60631, by both regular first-class mail and certified mail notifying it of the award of the JTB on January 22, 2008.[23] On February 25, 2008, the U.S. Postal Service returned the copy of the Union's January 22 letter that had been sent by certified mail, marked "Return to Sender — Harwood Hts. (60656) — Unclaimed."[24] When it was returned, the envelope contained a sticker pasted over the Ogallah Ave. address with a new, handwritten address on it — 4637 N. Forestview, Chicago, IL 60656 — that had not been on the envelope when the Union placed it in the mail on January 22.[25] The Postal Service never returned to the Union the copy of the January 22 letter sent by regular first-class mail.[26]

On January 24 or 25, 2008, Anderson spoke by telephone with Vinco representative Denise Angelilli and informed her of the outcome of the JTB hearing.[27] She replied that Defendant had moved from its former address and had not received notice of the hearing; this was the first time that Defendant ever notified the Union that Defendant had moved from its former address.[28] Also on January 24 or 25, 2008, Anderson spoke by telephone with Vince Angelilli.[29] Pursuant to JTB policy, Anderson informed him that Defendant could appear at the next JTB meeting, present evidence, and seek reconsideration of the Award, provided it made a written request and sent the Union a check for $50,000 (substantially less than the 50% required by the JTB's policy), which Anderson assured Angelilli would

---

[22] SMF at ¶ 25.
[23] SMF at ¶ 29.
[24] SMF at ¶ 30.
[25] SMF at ¶ 31.
[26] SMF at ¶ 31.
[27] SMF at ¶ 32.
[28] SMF at ¶ 32, 33.
[29] SMF at ¶ 34.

not be cashed.[30] Angelilli initially refused but called back a few minutes later to state that he wished to appear before the JTB and would meet the conditions set forth by Anderson.[31] The next JTB meeting, as Anderson informed Angelilli, was scheduled for March 13, 2008.[32] On March 12, 2008, Anderson again spoke by telephone with Vince Angelilli.[33] Angelilli confirmed that he still wished to appear and that he would bring a check for $50,000 to the Union, but he never tendered a check and did not appear at the March 2008 JTB meeting.[34] Representatives of Tri-Cor Painting, another signatory employer against whom the JTB had issued an award in January 2008, did appear at the March 13 meeting to appeal the JTB's findings against it, and the JTB substantially reduced the penalties against Tri-Cor as a result.[35]

## ARGUMENT

This Court should grant summary judgment in favor of Plaintiffs and against Defendants because the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sullivan v. Lemoncello*, 36 F.3d 676, 678 (7th Cir. 1994), quoting Fed. R. Civ. P. 56(c). The Court "must review the record and all inferences drawn from it in the light most favorable to the nonmovant … and determine whether a genuine issue exists as to any material fact." *Jasper Cabinet Co. v. United Steelworkers of Am., Upholstery and Allied Div.*, 77 F.3d 1025, 1026 (7th Cir. 1996), citing *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991). The mere existence of some factual dispute does not defeat a summary judgment motion; "there must be a *genuine* issue of *material* fact for the case to survive." *Kramer v. Village of North Fond du Lac*, 384 F.3d 856 (7th Cir.

---

[30] SMF at ¶ 35, 37, 38.
[31] SMF at ¶ 36.
[32] SMF at ¶ 39.
[33] SMF at ¶ 40.
[34] SMF at ¶ 41, 42, 48.
[35] SMF at ¶ 43-47.

2004), emphasis original. In the present case, there are no disputed material facts. On the contrary, it is undisputed that the Joint Trade Board met, considered the facts presented by the Union, interpreted and applied the collective-bargaining agreement to those facts, and issued its Award. The Award is due the full deference afforded arbitration awards by reviewing courts, and this Court should confirm the Award as a matter of law. Defendant has identified no procedural or substantive deficiency in the Award that would prevent this Court from confirming it.

### I. Plaintiff is Entitled to Summary Judgment on its Claim for Confirmation of the Award.

This Court should enter summary judgment in favor of Plaintiff and confirm the Award of the JTB. As the agreed-upon arbiter of contractual disputes between the Union and its signatory employers, the Joint Trade Board functions as a board of arbitration, and the law sharply limits this Court's review of its decisions. *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596 (1960); *Jasper Cabinet*, 77 F.3d at 1028 (upholding district court's confirmation of arbitration award and awarding union its attorneys' fees for employer's meritless contention that award did not draw its essence from contract); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) ("judicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all"). A reviewing court must uphold an arbitration decision if it "draws its essence from the collective bargaining agreement." *United Paperworkers Int'l Union et al. v. Misco, Inc.*, 484 U.S. 29, 36 (1960). The Court's inquiry is simply whether the arbitrator "exceeded the powers delegated to him by the parties." *Dexter Axle Co. v. International Ass'n of Machinists and Aerospace Workers, Dist. 90, Lodge 1315*, 418 F.3d 762, 768 (7th Cir. 2005), quoting *Ethyl Corp., v. United Steelworkers of Am.*, 768 F.2d 180, 184 (7th Cir. 1985) (affirming district court's confirmation of award). The parties have bargained for the JTB's interpretation of the CBA, and the Court's failure to respect that bargained-for interpretation would undermine the federal policy of settling labor disputes by arbitration. *Ladish v. International Ass'n of Machinists and*

*Aerospace Workers, Dist. No. 10 and Local 1862*, 966 F.2d 250, 252 (7th Cir. 1992) (upholding district court's refusal to vacate award). The party seeking to vacate an arbitration award must "shoulder [a] heavy burden," *Dexter Axle*, 418 F.3d at 767, a burden that the undisputed material facts in the present case make clear Defendant cannot sustain. The decision of the JTB, memorialized in the minutes of its January 2008 meeting, reflects its binding interpretation of the contract as applied to the facts that it found, and this Court should defer to that decision.

There is nothing deficient about the JTB's award itself that would prevent the Court from confirming it. The JTB did not issue written findings in support of its decision, but it is well-established that it was not required to do so. *Lemoncello*, 36 F.3d at 683 (upholding district court's confirmation of award of joint arbitration board); *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312 (7th Cir. 1981). (upholding confirmation of award despite arbitrators' failure to give reasons). In *Lemoncello* the court described as a "red herring" the employer's argument that the fact that the joint arbitration board's awards did not explain the board's reasoning in penalizing the defendant for his contract violations meant that the awards did not draw their essence from the collective bargaining agreement, noting that "arbitrators have no obligation … to give their reasons for an award." *Lemoncello*, 36 F.3d at 683, quoting *Enterprise Wheel*, 363 U.S. at 598. For the same reasons the award of the JTB in the present case is due no less deference by this Court than if it had been supported by detailed written findings. Defendant has admitted that the JTB made the decision it made, and there is no question that the JTB met and considered the evidence against Defendant presented by the Union. The JTB's decision against Defendant should be confirmed by this Court.

## II. Plaintiff is Entitled to Summary Judgment on Defendant's Counterclaim.

The undisputed material facts establish that Defendant cannot prevail on its counterclaim. Defendant urges that the JTB Award be vacated on both procedural and substantive

8

grounds, but the undisputed facts establish that Defendant cannot meet its burden of proving either ground, and the Court should enter judgment against Defendant on its counterclaim as a matter of law.

### A. The Award Is Procedurally Sufficient.

The undisputed material facts establish that the Union afforded the Defendant the process it was due. While Defendant complains that it never received notice of the hearing, the Union fully satisfied its obligations by mailing notice of the hearing by both regular and certified mail to the last address that Defendant had ever provided. Moreover, the JTB afforded Defendant an opportunity to appear before it and request reconsideration of its decision, an opportunity Defendant declined.

The Union's mailing of notice to Defendant's last reported address fully satisfied the due process requirement that the Union make reasonable efforts at notice. It is a well-established principle of due process that, where a party to a proceeding is under an obligation to supply either the tribunal or the other parties with current address information, a party that fails to satisfy this obligation has waived its right to complain that it has been denied due process when, as an inevitable result of its neglect, it fails to receive notice mailed to an out-of-date address. *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1996) (confirming arbitration award despite party's absence where parties had agreed to be bound by procedures of AAA, which provide that notices may be served by mail at party's last known address); *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir. 1991) (noting in discussion of Chicago's "booting" of cars with accumulated unpaid parking tickets that notices sent by "[m]ail to the registered owner of the car, at the address in the state's files — an address the owner is supposed to keep current — is reasonably calculated to produce actual knowledge" and satisfied constitutional due process); *Thongphilack v. Gonzales*, 506 F.3d 1207, 1208 (10th Cir. 2007) (denying review of Board of Immigration Appeals Order denying motion to reopen removal proceedings where, despite fact that Immigration Judge

saw petitioner holding change-of-address form during advisement hearing and told him to fill it out, petitioner failed to do so, and notice of hearing was mailed to out-of-date address); *Theede v. United States Dep't of Labor*, 172 F.3d 1262, 1267-68 (10th Cir. 1999) (holding that party who subtly substituted new address in court filings without affirmatively directing court's attention to new address waived right to appellate review despite never receiving recommendation of magistrate judge), and cases cited therein (noting, *inter alia*, responsibility of taxpayer to communicate change of address to IRS and charging party to provide new address to EEOC). As in all of the above-cited cases, in the present case Defendant was required to notify the Union of its current address, and it failed to do so.

The CBA required Defendant to notify the Union of its address. Section 14.2 of the CBA required Defendant to "maintain an office and telephone where it can be contacted during the usual working hours," and Section 9.8(a) required Defendant to "furnish the Trustees with information such as … the Employer's business address (which shall not be a P.O. Box)." The language in Section 9.8(a) of the CBA requiring an employer to provide information in its possession within seven days of signing the Agreement and any additional information upon the Trustees' written request does not license Defendant to wait to report a change of address until the Union asks. This contractual provision would be wholly meaningless if, once providing the information, an employer had no duty to keep it current, leaving the Union to guess whether or not each signatory employer has moved. The CBA should not be interpreted so as to read nonsensically; rather, sections 9.8(a) and 14.2, in combination, placed an obligation on the Defendant to notify the Union of its changed address.[36]

It is undisputed that Defendant never satisfied this contractual obligation to keep the Union apprised of its mailing address after moving in early November 2007: the Union never received any written notice of its change of address and was able to update its records with

the correct address only when Anderson spoke with Angelilli after the JTB hearing. Indeed, Defendant appears not to have apprised the Postal Service, either, of its new address for *two full months* after leaving Ogallah Avenue, as the Postal Service returned the Union's January 3 letter with an indication that Defendant had left no forwarding address.[37] Had it done even this much, Defendant surely would have received timely notice of the hearing. But Defendant appears to have had very little interest in being reached at its new address. Because it was only Defendant's failure to notify the Union of its correct address that waylaid the Union's notice of hearing (at least the copy sent by certified mail), Defendant cannot now be heard to claim that it was thereby denied due process. The Union made reasonable efforts at notice, and those efforts satisfied the requirements of due process.

Finally, the undisputed evidence shows that the JTB afforded Defendant an opportunity to appear at its next meeting to seek reconsideration, effectively curing any prejudice claimed by the Defendant as a result of its own failure for two and a half months to provide the Union or the Post Office with a current address. Yet Defendant, after twice expressing both its desire to appear before the JTB and its willingness to meet the criteria for seeking reconsideration — a written request together with a check that the Union would not cash[38] — failed to appear at the March 13 meeting. After twice confirming that it would meet the JTB's conditions and appear on March 13 to contest the Award, Defendant, by its failure to appear, waived not only any right to seek reconsideration of the Award but also any objections to the procedural integrity of the January 2008 hearing. *Dean v. Sullivan*, 118 F.3d 1170, 1172 (7th Cir. 1997) (rejecting party's argument that arbitration proceeding was procedurally deficient when he elected not to attend subsequent meeting of arbitration board to present this argument, instead raising it for first time before district court).

---

[36] SMF at 32, 33.

[37] SMF at ¶ 22.

[38] This requirement is akin to the requirement in the Federal Rules that an appellant post a bond in order to stay enforcement of a judgment pending appeal. Fed. R. Civ. P. 62(d).

The JTB fully satisfied its obligations to the Defendant under the CBA, and Defendant can identify no due process claims that would require this Court to abandon its proper deference to the arbitral process and vacate the Award.

### B. The Award is Substantively Sufficient.

The other ground urged by Defendant for vacating the Award — that it was *substantively* deficient — also fails, and thus Defendant has offered no viable grounds for vacating the Award, and it should be confirmed. This Court's review of the findings and reasoning of the JTB is extremely limited; the Court may not overturn the Award even if it believes that the board of arbitration erroneously interpreted the CBA. *Enterprise Wheel*, 363 U.S. at 599; *Jasper Cabinet*, 77 F.3d at 1028 ("We will uphold an arbitrator's award based upon a misreading of the contract so long as the arbitrator's interpretation is derived from the language of the contract"), citing *Polk Bros., Inc. v. Chicago Truck Drivers Union*, 973 F.2d 593, 597 (7th Cir. 1993). Rather, only if the award fails to "draw its essence" from the contract, for instance by relying upon some authority outside the contract or by failing to interpret the contract at all, may the Court may properly vacate the award. *Id.* "It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract … that the award can be said not to 'draw its essence from the collective bargaining agreement.'" *Ethyl Corp.*, 768 F.2d at 184-85, emphasis original, quoting *Enterprise Wheel*, 363 U.S. at 597. "[W]e will vacate only if there is no possible interpretive route to the award." *Northern Indiana Public Serv. Co. v. United Steelworkers of Am.*, 243 F.3d 345, 347 (7th Cir. 2001) (affirming district court's confirmation of arbitration award). Courts must "resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award." *Polk Bros.*, 973 F.2d at 597. Remarkably, it is this ground for vacating the Award that Defendant urges upon the Court, despite the fact that it lacks any basis in the undisputed facts.

But Defendant's position is merely a quibble with the JTB's *interpretation* of the CBA. De-

fendant asserts that the contractual restriction of fines to $1,000 "per violation" applies to each provision of the contract with which the Union has charged the employer with violating; by contrast the JTB interpreted that same limit to apply to each individual occasion on which the employer engages in conduct that violates a contractual provision. But it was the JTB's interpretation of the agreement that Defendant agreed to when it signed the collective-bargaining agreement, and the fact that it now disagrees with the interpretation given by the JTB cannot justify overturning the Award. *Misco*, 484 U.S. at 38.

The contractual provision in question is hardly univocal, tolerating only a single rational meaning, deviation from which would somehow automatically signal the Award's failure to "draw its essence" from the contract. On the contrary, the word 'violation' in Section 13.5 is never defined, leaving the "per violation" cap on fines open to myriad interpretations.[39] But the JTB's interpretation that each contravention of the contract, for instance by each failure to pay an employee overtime, constitutes a fresh "violation" punishable by a separate $1,000 fine is wholly reasonable: the law frequently interprets each failure to pay a required wage as a fresh violation for purposes of applying a statutory limitations period. *See, e.g., Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F.3d 1014, 1029 (7th Cir. 2003) (finding that each issuance of paycheck containing discriminatory pay was a distinct violation of the law for limitations purposes). But what is important is not that the JTB correctly or even reasonably interpreted Section 13.5, but that it did so at all — and the phrasing of the Award reveals that it did: for example, "$500 per day, for 73 days of non-payment of overtime…"[40] Even if this Court disagrees with the JTB's interpretation or its calculation of the amount of the fines, it should nevertheless enforce the Award. *Polk Bros.*, 973 F.2d at 597; *Lemoncello*, 36 F.3d at 684.

> The amount of the fine assessed against Lemoncello in the … award is arguably a mite steep. However, we cannot say that the fine was excessive

---

[39] SMF at ¶ 10.
[40] Exh. 2 – Anderson Decl. at Exh. F.

> or that it rendered the … award unenforceable because all that is required to uphold an arbitration award is a finding that the arbitrator's interpretation can in some rational manner be derived from the collective bargaining agreement.

*Id.* The undisputed material facts in the present case establish that the JTB has done exactly what the parties contracted it to do: hear evidence, interpret the CBA, and render a decision. The Award should be confirmed.

### III. Defendant Must Pay Plaintiffs' Attorneys' Fees and Costs in Bringing this Action.

The CBA expressly requires Defendant to pay any attorneys' fees and costs incurred by any party to the CBA in enforcing an award of the JTB against it, and this Court has jurisdiction under Section 301 of the LMRA to enforce the CBA's attorney fee provision against Defendant.[41] *Reid v. Harvey Motorcycle and Camper*, 2007 WL 4277435 (N.D. Ill. 2007) (awarding attorneys' fees pursuant to contractual provision). In the instant case, the JTB issued a decision ordering Defendant to pay certain wages and fines, and Defendant has not paid, requiring the Union to initiate this action to seek enforcement of the Award. Pursuant to the terms of the CBA, the Union is entitled to its attorneys' fees and costs in connection with the enforcement of the Award. Plaintiff respectfully requests that this Court award Plaintiff its reasonable attorneys' fees and costs incurred in prosecuting this enforcement action.

### CONCLUSION

Summary judgment should be granted in favor of the Union and against Defendant. The JTB, pursuant to its authority under the collective bargaining agreement between the Union and the Defendant, issued an award against Defendant finding that it had violated the contract in several respects and ordering it to pay back wages and fines as follows:

|  | Total Owed |
|---|---|
| Loren Deland | $ 38,591.82 |
| William Medina | 40,092.95 |

---

[41] SMF at ¶ 10.

|  | Total Owed |
|---|---|
| Jesus Mota | 32,048.70 |
| Jeremy Weise | 47,216.39 |
| Painters District Council 30 | 148,000.00 |
| Total | $305,949.86 |

The undisputed evidence does not bear out Defendant's contention that the JTB denied it due process; rather, that evidence demonstrates conclusively that Defendant can blame no one but itself if it failed to learn of the proceedings prior to the hearing, and in any event Defendant has waived this argument by failing to appear and present it before the JTB. The facts lend even less support to Defendant's assertion that the Award fails to draw its essence from the CBA; on the contrary the minutes of the hearing make clear that the JTB was interpreting the CBA's $1,000 per violation limit on fines in assessing the penalties above, and Defendant's disagreement with that interpretation falls well short of a sufficient justification for vacating the Award. Because Defendant has identified no adequate grounds for vacating the Award, it must be confirmed.

The Union respectfully requests this Court to enter judgment against Defendant and in favor of Plaintiff, entering an order confirming the Arbitration Award of the Joint Trade Board against Defendant Vinco Painting, Inc., dismissing Defendant's Counterclaim, and awarding the Union its reasonable attorneys' fees and costs.

        Respectfully submitted,

        **PAINTERS DISTRICT COUNCIL NO. 30**

        By:   s/ David Huffman-Gottschling
             One of its attorneys

David Huffman-Gottschling
ARDC No. 6269976
Jacobs, Burns, Orlove, Stanton and Hernandez
122 S. Michigan Ave., Ste. 1720
Chicago, Illinois 60603
(312) 372-1646

**CERTIFICATE OF SERVICE**

I, David Huffman-Gottschling, an attorney, certify that I caused a copy of the foregoing document to be served electronically upon the person below by filing it using the ECF system on June 6, 2008:

>Joseph P. Berglund
>Berglund & Mastny, P.C.
>900 Jorie Blvd., Ste. 122
>Oak Brook, IL 60523-2229

           s/ David Huffman-Gottschling
           David Huffman-Gottschling