UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Painters District Council No. 30,

        Plaintiff/Counterdefendant,

v.

Vinco Painting Inc.,

        Defendant/Counterplaintiff.

Case No. 08-cv-1163
Judge Conlon
Magistrate Judge Ashman

**PLAINTIFF'S LR56.1 STATEMENT
OF UNDISPUTED MATERIAL FACTS**

1. This is an action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking confirmation and enforcement of a labor arbitration award. (Defendant's Answer, submitted herewith as Exhibit 1, at ¶ 1.)[1]

2. Plaintiff Painters District Council No. 30 (the "Union") is a labor organization affiliated with the International Union of Painters and Allied Trades. (Exh. 1 – Answer at ¶ 4.)

3. Defendant Vinco Painting Incorporated ("Vinco") is an Illinois corporation and an employer engaged in the construction painting industry. (Exh. 1 – Answer at ¶ 5.)

4. At all material times the Union and members of the FCA of Illinois, an employer association (the "Association"), as well as other employers, have been signatories to a collective bargaining agreement with effective dates of May 1, 2004 through April 20, 2008 (the "Agreement"). (Declaration of Charles E. Anderson, submitted herewith as Exhibit 2, at ¶ 4.)

---

[1] Plaintiff withdraws its contention in the complaint that Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, provides an independent basis for federal jurisdiction in this case.

5. Vinco is and has since August 30, 2007, been signatory to the collective bargaining agreement between the Union and members of the FCA of Illinois effective May 1, 2004, through April 20, 2008. (Defendant's Answers to Plaintiff's Requests for Admission, submitted herewith as Exhibit 3, at ¶ 6-8; Exh. 2 – Anderson Decl. at ¶ 5.)

6. From August 30, 2007, until at least November 6, 2007, Vinco maintained its offices at 6649 N. Ogallah Ave., Chicago, Illinois 60631. (Defendant's Answers to Plaintiff's First Set of Interrogatories, submitted herewith as Exhibit 4, at ¶ 3.)

7. Since November 6, 2007, Vinco's offices have been located at 4637 N. Forestview Ave., Chicago, Illinois 60650. (Exh. 4 – Def. Ans. to Interrogs. at ¶ 3.)

8. Article 13, Section 13.1 of the Agreement provides:

> The Union and the Association agree to establish and maintain a Joint Trade Board consisting of twelve (12) members with six (6) members and an alternate appointed by each party. All disputes and grievances shall be referred to the Joint Trade Board, unless as otherwise expressly provided for under this Agreement.

(Exh. 2 – Anderson Decl. at Exh. B, §13.1.)

9. Article 13, Section 13.3 of the Agreement provides:

> Three (3) members of the Joint Trade Board shall constitute a quorum, provided that at least one (1) member is representing each party to this Agreement. In the absence of any party's representatives or if there is a vacancy, that party shall be entitled to cast pro rata through the members present the votes of an absent member or vacant position so that at all times the votes of each party shall be equal. Any decision of the Joint Trade Board shall be final and binding upon every party and any signatory to this Agreement.

(Exh. 2 – Anderson Decl. at Exh. B, §13.3.)

10. Article 13, Section 13.5 of the Agreement provides:

> If the Joint Trade Board finds that an Employer violated this Agreement, the Joint Trade Board is authorized to fashion, in its sole discretion, all appropriate remedies, including but not limited to, awarding actual damages to the aggrieved individual or entity, plus fines not to exceed one

thousand dollars ($1,000.00) per violation, and assessing liquidated damages, interest, costs, reasonable attorneys' fees, administrative expenses, and auditing fees incurred by the Joint Trade Board. Such remedies and assessments shall also be imposed on the Employer if the Joint Trade Board, any party to this Agreement, or any entity enforcing its rights under this Agreement obtains judicial enforcement of the Joint Trade Board Award.

(Exh. 2 – Anderson Decl. at Exh. B, §13.5.)

11. On or about December 28, 2007, the Union filed charges with the JTB against Vinco for violations of Articles 4, 8, and 9 of the Agreement. (Exh. 1 – Answer at ¶ 11; Exh. 2 – Anderson Decl. at ¶ 9.)

12. Article 6, Section 6.3 of the Agreement provides, "A permit must be secured for overtime or work on Saturday, Sunday or a Holiday. The request must be submitted to the Union's Secretary-Treasurer twenty-four (24) hours in advance, or within four (4) hours of a request to the Employer, whichever is later." (Exh. 2 – Anderson Decl. at Exh. B, § 6.3.)

13. Article 6, Section 6.9 of the Agreement provides:

> The Employer shall report, in writing to Painters District Council NO. 30, all job sites where Collective Bargaining Unit work is to be performed, including the name of the job site and the location of the job site, prior to the commencement of work. Failure to adhere to this Article will be subject to Article 13 of this Agreement.

(Exh. 2 – Anderson Decl. at Exh. B, §6.9.)

14. Article 8, Section 8.5 of the Agreement provides:

> All work performed in industrial and commercial buildings only after 3:30 p.m. or before 7:00 a.m. Monday to Friday inclusive until 7:00 a.m. Saturday, shall be paid at the rate of nine (9) hours of pay for eight (8) hours worked. If less than eight hours of work is performed during this period, each employee shall be paid at the premium rate one (1) extra hour of pay above the number of hours actually worked. The Employer shall report all such work to the Union at least twenty-four (24) hours before the work begins or be subject to the procedures of the Joint Trade Board. If such notice is not given, all work performed shall be paid at time and one-half (1½) the employee's regular rate.

(Exh. 2 – Anderson Decl. at Exh. B, §8.5.)

15. Article 8, Section 8.6 of the Agreement provides:

If an employee works more than eight (8) hours in a day, premium pay of time and one-half (1½) shall be paid for each hour worked after eight (8) hours. All work on Saturday, Sunday, and Holidays, if permitted pursuant to Article 6.3, shall also be at time and one-half (1½) the employee's regular rate (subject to Article 6.4, for Saturday makeup).

(Exh. 2 – Anderson Decl. at Exh. B, §8.6.)

16. Article 8, Section 8.7(a) of the Agreement provides:

The Employer shall establish and maintain a weekly payday which shall be Friday, not later than the ending time of the normal work day. Payment of wages is to be made on the job site or, if prior arrangements have been made and agreed to by the Union, the employees and the Employer, such payments may be made at the Employer's principal place of business, by electronic transfer or mailed to the employee. All employees shall be paid by negotiable check for all work performed up through and including the Wednesday night preceding said payday.

(Exh. 2 – Anderson Decl. at Exh. B, §8.7.)

17. Article 8, Section 8.7(b) of the Agreement provides:

Each employee shall be furnished with a detachable check stub showing the Employer's business name, the employee's name or social security number, total straight time hours, overtime hours, the ending date of the pay period, the total amount due, and all itemized deductions. The Employer shall (as shown on the pay stub) conform with federal law pertaining to the payment of Social Security. It shall be a violation of this Agreement for an Employer to issue any check other than a payroll check for compensation earned under this Agreement.

(Exh. 2 – Anderson Decl. at Exh. B, §8.7.)

18. Article 14, Section 14.2 of the Agreement provides, "The Employer shall maintain an office and telephone where it can be contacted during the usual working hours."

(Exh. 2 – Anderson Decl. at Exh. B, § 14.2.)

19. Article 9, Section 9.8(a) of the Agreement provides:

Each Employer shall furnish the Trustees with information such as the

4

    names of all subcontractors, affiliates, employees (by classification, craft and social security number), wages earned and hours worked by employees, the Employer's federal/state employer identification number, the Employer's business address (which shall not be a P.O. Box), the principal corporate officer's or business owner's driver's license number, proof of the Employer's corporate status, proof of insurance or surety bonds as required by this Agreement, and such other information as may be required by the Trustees. Such information available at the time this Agreement is executed shall be provided within seven (7) days of execution; all other information shall be provided within seven (7) days of the Trustees' written request.

(Exh. 2 – Anderson Decl. at Exh. B, §9.8.)

    20. On about January 3, 2008, the Union sent written notice of the charges and that the JTB would hear those charges on January 17, 2008, to Vinco by both certified and regular first-class mail at the address reported by Vinco to the Union when it became a signatory contractor in August 2007: 6649 Ogallah Ave., Chicago, Illinois 60631. (Exh. 2 – Anderson Decl. at ¶ 11-13.)

    21. Vinco did not notify the Union of its new address until about January 24 or 25, 2008. (Exh. 2 – Anderson Decl. at ¶ 22.)

    22. On January 14, 2008, the United States postal service returned the January 3, 2008, notice marked, "Return to sender — moved left no address." The copy of the notice sent by first-class mail was never returned to the Union. (Exh. 2 – Anderson Decl. at ¶ 14, 15.)

    23. On January 17, 2008, the JTB convened. No representative of Vinco was in attendance. (Exh. 1 – Answer at ¶ 12; Exh. 2 – Anderson Decl. at ¶ 16, 17.)

    24. Evidence supporting the allegations in the charges was presented, and the JTB found that Vinco violated the collective-bargaining agreement. (Exh. 2 – Anderson Decl. at ¶ 18.)

25. The JTB's findings are summarized in the minutes of the meeting taken by Anderson, who was present at the meeting. (Exh. 2 – Anderson Decl. at ¶ 18.)

26. Specifically, the JTB found that Vinco had violated the Agreement by failing to pay employees Loren Deland, William Medina, Jesus Mota, and Jeremy Weise overtime as required by Article 8 of the Agreement, by failing to secure an overtime permit from the Union for overtime work performed on Saturdays, Sundays, or holidays as required by Section 6.3 of the Agreement, by failing to report to the Union all job sites where work covered by the Agreement was performed as required by Section 6.9 of the Agreement, and by failing to provide check stubs to its employees showing Vinco's business name, the employee's name or social security number, total straight time hours, overtime hours, the ending date of the pay period, the total amount due, and all itemized deductions as required by Section 8.7(b) of the Agreement. (Exh. 2 – Anderson Decl. at Exh. F.)

27. The JTB ordered Vinco to pay the following amounts in damages and fines to the above-named persons and to the Union for its contractual violations:

|  |  | Total Owed |
|---|---|---|
| **Loren Deland** |  |  |
| Actual overtime wages | $ 2,091.82 |  |
| Fine of $500/day for 73 days of non-payment of overtime | 36,500.00 |  |
| Sub-Total |  | $ 38,591.82 |
| **William Medina** |  |  |
| Actual overtime wages | 592.95 |  |
| Fine of $500/day for 79 days of non-payment of overtime | 39,500.00 |  |
| Sub-Total |  | 40,092.95 |
| **Jesus Mota** |  |  |
| Actual overtime wages | 548.70 |  |
| Fine of $500/day for 63 days of non-payment of overtime | 31,500.00 |  |
| Sub-Total |  | 32,048.70 |
| **Jeremy Weise** |  |  |

6

|  |  | Total Owed |
|---|---:|---:|
| Actual overtime wages | 216.39 |  |
| Fine of $500/day for 94 days of non-payment of overtime | 47,000.00 |  |
| Sub-Total |  | 47,216.39 |
| Painters District Council 30 |  |  |
| Fine of $500/day for 94 days of failing to secure an overtime permit from the Union | 47,000.00 |  |
| Fine of $500/day for 101 days of failing to register job locations with the Union | 50,500.00 |  |
| Fine of $500/day for 101 days of failing to provide check stubs to employees | 50,500.00 |  |
| Sub-Total |  | 148,000.00 |
| Total |  | $305,949.86 |

(Exh. 2 – Anderson Decl. at Exh. F.)

28.  The JTB's decision is immediately effective and requires no further action by the JTB to become final. (Exh. 2 – Anderson Decl. at ¶ 19.)

29.  On about January 22, 2008, the Union mailed a letter to Vinco at 6649 Ogallah Ave., Chicago, Illinois 60631, by both regular first-class mail and certified mail notifying it of the award of the JTB on January 22, 2008. (Exh. 2 – Anderson Decl. at ¶ 20.)

30.  The Union's January 22 letter that was sent by certified mail was returned to the Union's offices by the U.S. Postal Service on February 25, 2008, marked "Return to Sender — Harwood Hts. (60656) — Unclaimed." (Exh. 2 – Anderson Decl. at ¶ 21.)

31.  When it was returned, the envelope contained a sticker pasted over the Ogallah Ave. address with a new, handwritten address on it — 4637 N. Forestview, Chicago, IL 60656 — that was not on the envelope when the Union placed it in the mail on January 22. The Postal Service never returned to the Union the copy of the January 22 letter sent by regular first-class mail. (Exh. 2 – Anderson Decl. at ¶ 21.)

32.  On January 24 or 25, 2008, Anderson spoke by telephone with Defendant's representative Denise Angelilli to inform her of the outcome of the JTB hearing, and she told

him that Vinco had moved from its former address and had therefore not been notified of the hearing. (Exh. 2 – Anderson Decl. at ¶ 22.)

33. The day of Anderson's telephone conversation with Denise Angelilli was the first time that the Union learned of Vinco's new address. (Exh. 2 – Anderson Decl. at ¶ 22.)

34. Also on January 24 or 25, 2008, Anderson spoke with Vinco principal Vince Angelilli. Anderson informed Angelilli that he could appear before the JTB at its next meeting on March 13, 2008, present any evidence he wished the JTB to consider, and ask it to reconsider its award. (Exh. 2 – Anderson Decl. at ¶ 23.)

35. Anderson instructed Angelilli to make a written request and to send a check for $50,000 to the Union, which the Union would not cash. (Exh. 2 – Anderson Decl. at ¶ 23.)

36. Angelilli initially refused but then called back a few minutes later to state that he wished to appear before the JTB and would meet the conditions set forth by Anderson. (Exh. 2 – Anderson Decl. at ¶ 24.)

37. It is an established but unwritten policy of the JTB to require an employer wishing to appear before the JTB to appeal an adverse award to submit a written request and to tender a check for fifty percent of the amount of the findings, which check the JTB does not cash in advance of the employer's appearance. (Exh. 2 – Anderson Decl. at ¶ 25.)

38. Anderson partially waived that requirement by requiring payment by Vinco of less than twenty percent of the JTB's findings in order to appear before the JTB. (Exh. 2 – Anderson Decl. at ¶ 26.)

39. The first JTB meeting after the January 17, 2008, meeting was scheduled for March 13, 2008. (Exh. 2 – Anderson Decl. at ¶ 27.)

40. On about March 12, 2008, Anderson spoke by telephone with Vince Angelilli. (Exh. 2 – Anderson Decl. at ¶ 28.)

41. During this conversation, Angelilli again stated that he intended to appear before the JTB the next day and that he would bring a check for $50,000. (Exh. 2 – Anderson Decl. at ¶ 28.)

42. Angelilli never tendered a check for $50,000. (Exh. 2 – Anderson Decl. at ¶ 28.)

43. The JTB met on March 13, 2008. (Exh. 2 – Anderson Decl. at ¶ 29.)

44. At its March 13, 2008, meeting, the JTB approved the minutes of its January 2008 meeting. (Exh. 2 – Anderson Decl. at ¶ 30, Exh. I.)

45. Tri-Cor Painting is also a signatory employer against whom the JTB had issued an award at its meeting on January 17, 2008. (Exh. 2 – Anderson Decl. at ¶ 31.)

46. Tri-Cor appeared at the March 13 meeting to appeal the JTB's findings against it. (Exh. 2 – Anderson Decl. at ¶ 31.)

47. The JTB substantially reduced the penalties against Tri-Cor at its March 2008 meeting. (Exh. 2 – Anderson Decl. at ¶ 31.)

48. No representative of Defendant appeared at the March 2008 meeting of the JTB. (Exh. 2 – Anderson Decl. at ¶ 32.)

49. Defendant has not paid the amounts assessed by the JTB in January 2008. (Exh. 1 – Answer at ¶ 17.)

50. Jurisdiction in this Court is proper pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), because the Award was issued by the JTB pursuant to its authority under the CBA. (Exh. 1 – Answer at ¶ 2.)

51. Venue in this judicial district is proper because the Award was made and both parties are located in the district. (Exh. 1 – Answer at ¶ 3.)

Respectfully submitted,

   s/ David Huffman-Gottschling
One of Plaintiff's attorneys

David Huffman-Gottschling
Jacobs, Burns, Orlove, Stanton and Hernandez
122 S. Michigan Ave., Ste. 1720
Chicago, Illinois 60603
(312) 372-1646

## CERTIFICATE OF SERVICE

I, David Huffman-Gottschling, an attorney, certify that I caused a copy of the foregoing document to be served electronically upon the following person by filing it using the ECF system on June 6, 2008:

Joseph P. Berglund
Berglund & Mastny, P.C.
900 Jorie Blvd., Ste. 122
Oak Brook, IL 60523-2229

   s/ David Huffman-Gottschling
David Huffman-Gottschling