**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Painters District Council No. 30,

                        Plaintiff/Counterdefendant,

   v.

Vinco Painting Inc.,

              Defendant/Counterplaintiff.

Case No. 08-cv-1163
Judge Conlon
Magistrate Judge Ashman

**DECLARATION OF CHARLES E. ANDERSON**

I, Charles E. Anderson, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1.    I am Secretary-Treasurer of District Council No. 30 of the International Union of Painters and Allied Trades, AFL-CIO (the "Union"), the Union's chief executive officer. I am also a member and Secretary-Treasurer of the Joint Trade Board (the "JTB"), which is described more fully below. I have first-hand knowledge of the matters set forth in this Declaration and am competent to testify as a witness if necessary. This Declaration is based upon my first-hand knowledge as the Secretary-Treasurer of both the Union and the JTB and upon the Union's files and records, which are maintained under my dominion and control at the Union's offices.

2.    The Union is a labor organization comprised of ten local unions affiliated with the International Union of Painters and Allied Trades.

3.    The Union's offices are located in Aurora, Illinois.

4.    The Union is signatory to a collective-bargaining agreement with members of the FCA of Illinois, an employer association (the "Association"), as well as various other employers, effective May 1, 2004 through April 20, 2008 (the "CBA"). I have attached a copy

of the CBA as Exhibit A to this Declaration.

5.    Vinco Painting Inc. ("Vinco") has since August 30, 2007, been signatory to the CBA. I have attached as Exhibit B a copy of the signature page executed by Vinco binding it to the CBA. The page is signed by Vince Angelilli, who I understand owns and runs the business along with his wife Denise Angelilli.

6.    The CBA provides for the arbitration of contractual disputes by a Joint Trade Board consisting of twelve members, six appointed by the Union, and six appointed by the Association. I am one of the Union-appointed members of the JTB and am also its Secretary-Treasurer.

7.    Among my responsibilities as the JTB's Secretary-Treasurer is to keep the minutes of its meetings.

8.    James Stelmasek is employed by the Union as its Director of Membership Services. Among his responsibilities is policing signatory contractors to ensure that they comply with the requirements of the CBA.

9.    On or about December 28, 2007, I received from James Stelmasek a letter charging Vinco with violating Articles 4, 8, and 9 of the CBA. I have attached a copy of this letter as Exhibit C.

10.  These charges against Vinco were, pursuant to the grievance procedure in the CBA, referred to the JTB for decision. The first scheduled JTB meeting after the charges issued was January 17, 2008.

11.  On about January 3, 2008, I signed a letter to Vinco notifying it of the charges and of the January 17, 2008, meeting date at which those charges would be considered by the JTB. I have attached a copy of the letter as Exhibit D.

12.   That letter was sent with the Union's outgoing mail to Vinco by both regular first-class mail and certified mail the same day I signed it, on January 3, 2008.

13.   The Union mailed the letter to the address it then had on file for Vinco: 6649 Ogallah Ave., Chicago, Illinois 60631. This was the address that Vinco had reported to the Union when it first became a signatory employer, and as of January 3, it had never reported a new address to the Union.

14.   The copy of my January 3 letter that was sent by certified mail was returned to the Union's offices by the U.S. Postal Service on about January 14, 2008, marked "Return to Sender — Moved left no address." I have attached a copy of the envelope as Exhibit E.

15.   The Postal Service never returned to the Union the copy of the charges and notice of hearing sent by regular first-class mail.

16.   The JTB met on January 17, 2008. I was in attendance at this meeting and took the minutes. A copy of the minutes of that meeting are attached as Exhibit F.

17.   No representative of Vinco was in attendance at the January 17 meeting.

18.   Evidence supporting the allegations contained in the charges was presented, and the JTB found that Vinco had violated the collective-bargaining agreement. The minutes accurately reflect the contractual violations found and the penalties assessed by the JTB at the January 17 meeting. The total amount of the fines and back wages awarded by the JTB against Vinco was $305,949.86.

19.   The JTB's decision is immediately effective and requires no further action by the JTB to become final.

20.   On about January 22, 2008, I signed a letter to Vinco notifying it of the award of the JTB. I have attached a copy of that letter as Exhibit G. That letter was sent with the Un-

ion's outgoing mail to Vinco at 6649 Ogallah Ave., Chicago, Illinois 60631, by both regular first-class mail and certified mail on January 22, 2008.

21.   The copy of my January 22 letter that was sent by certified mail was returned to the Union's offices by the U.S. Postal Service on February 25, 2008, marked "Return to Sender — Harwood Hts. (60656) — Unclaimed." I have attached a copy of the envelope as Exhibit H. The envelope contains a sticker pasted over the Ogallah Ave. address with a new, handwritten address on it: 4637 N. Forestview, Chicago, IL 60656. This sticker was not on the envelope when the Union placed it in the mail on January 22. The Postal Service never returned to the Union the copy of the January 22 letter sent by regular first-class mail.

22.   On or about January 24 or 25, 2008, I spoke by telephone form my office with Denise Angelilli. I informed her of the outcome of the JTB hearing, and she told me that Vinco had moved from its former address and had therefore not been notified of the hearing. This day was the first time the Union learned of Vinco's new mailing address.

23.   Also on or about January 24 or 25, 2008, I spoke by telephone from my office with Vince Angelilli. I informed him that he could appear before the JTB at its next meeting, present any evidence he wished the JTB to consider, and ask it to reconsider its award. I instructed him to make a written request to the JTB and to send the Union a check for $50,000, which I told him the Union would not cash prior to the hearing.

24.   Angelilli initially refused and hung up the phone, but a few minutes later he called back, apologized, stated the he did want to appear before the JTB, and stated that he would make a written request and send in a check.

25.   The JTB has an unwritten but established policy that an employer against which it issues an award may come back before the JTB and seek reconsideration of the award upon

a written request and the tendering of a check for fifty percent of any damages or penalties assessed, which the JTB does not cash prior to the employer's appearance at the next hearing.

26.  When I instructed Vince Angelilli to mail in a check for $50,000, I was deviating from this unwritten policy of the JTB by requiring Vinco to tender less than twenty percent of the JTB's award.

27.  The next JTB meeting after the January 17, 2008, meeting was scheduled for March 13, 2008.

28.  I did not hear anything further from Vinco until the day before the hearing, on March 12, 2008, when I received a telephone call at my office from Vince Angelilli. He stated that he intended to appear at the JTB meeting the next day and that he would bring in documentation relating to the charges against Vinco. He further stated that he would come in to the Union's offices with a check for $50,000 within the next couple of hours, and that he would see me the following morning at the JTB. To the best of my knowledge Angelilli never appeared at the Union's offices that day. The Union never received a check for $50,000 from Vinco.

29.  The JTB met as scheduled on March 13, 2008. I was in attendance and took the minutes, a copy of which I have attached as Exhibit I.

30.  At that meeting, the JTB approved the minutes of its January 2008 meeting.

31.  Tri-Cor Painting is also a signatory employer against whom the JTB had issued findings at its meeting on January 17, 2008. Tri-Cor appeared at the March 13 meeting to appeal the JTB's findings against it, and as a result the JTB substantially reduced the penalties against Tri-Cor.

32.  No representative of Vinco appeared at the March 2008 meeting of the JTB.

Executed on June 5, 2008.

Charles E. Anderson