# EXHIBIT

## 3

CERTIFIED ORIGINAL                                        1

1    S54682A

2

3              IN THE UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF ILLINOIS

4                   EASTERN DIVISION

5

     PAINTER'S DISTRICT            )
6    COUNCIL NO. 30,               )
                                   )
7         Plaintiff/               )
          Counterdefendant,        )
8                                  )
          vs.                      )   No. 08 CV 1163
9                                  )
     VINCO PAINTING, INC.,         )
10                                 )
          Defendant/               )
11        Counterplaintiff.        )
                                   )

12

13          Deposition of CHARLES ANDERSON, called as

14   a witness by the Defendant/Counterplaintiff,

15   pursuant to the provisions of the Illinois Code

16   of Civil Procedure and the rules of the Supreme

17   Court thereof pertaining to the taking of

18   depositions for the purpose of discovery, before

19   Karen S. Fogle, CSR, RPR, and a Notary Public in

20   and for the County of DuPage, State of Illinois,

21   taken at Berglund & Niew, P.C., Suite 122, 900

22   Jorie Boulevard, Oak Brook, Illinois, on the 19th

23   day of May, A.D. 2008, at the hour of 10:30 a.m.

24

EXHIBIT
3

2

```
1    PRESENT:
2         JACOBS, BURNS, ORLOVE, STANTON & HERNANDEZ, by
3         MR. DAVID HUFFMAN-GOTTSCHLING,
4         Suite 1720
          122 South Michigan Avenue
5         Chicago, Illinois   60603
          (312) 327-3443
6
               appeared on behalf of
7              Plaintiff/Counterdefendant; and
8         BERGLUND & NIEW, P.C., by
9         MR. JOSEPH P. BERGLUND,
10        Suite 122
          900 Jorie Boulevard
11        Oak Brook, Illinois   60523
          (630) 990-0234
12
               appeared on behalf of
13             Defendant/Counterplaintiff.
14
15
16
17
18
19
20
21
22
23
24
```

3

1                    I N D E X

2  EXAMINATION

3  By Mr. Berglund                                    4

4        Certified question appears on page 12, line 19.

5

                     E X H I B I T S

6

   No. 1     Letter                              11

7  No. 2     Letter                              15

   No. 3     Minutes                             17

8  No. 4     Letter                              20

   No. 5     Fax                                 22

9  No. 6     Signature Page                      26

   No. 7     Collective Bargaining Agreement     27

10 No. 8     Wage Documents                      34

   No. 9     Letter                              36

11 No. 10    Answers to Interrogatories          39

12

        (Exhibits Retained by Mr. Berglund.)

13

14

15

16

17

18

19

20

21

22

23

24

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

4

1           (The witness was thereupon duly

2                   sworn.)

3           MR. BERGLUND:  Let the record reflect

4     that this is the discovery deposition taken of

5     Charles Anderson pursuant to notice and by

6     agreement of the parties in Oak Brook, Illinois.

7           CHARLES ANDERSON,

8  called as a witness by the Defendant/Counterplaintiff,

9  pursuant to the provisions of the Illinois Code of

10  Civil Procedure and the rules of the Supreme Court

11  thereof pertaining hereto, having first been duly

12  sworn, was examined and testified as follows:

13           E X A M I N A T I O N

14  BY MR. BERGLUND:

15  Q   Can you state your name and spell your last name

16      for the record.

17  A   Charles Anderson, A-n-d-e-r-s-o-n.

18  Q   Have you had your deposition taken before?

19  A   Yes, I have.

20  Q   Approximately how many times?

21  A   Five or six.

22  Q   You have to answer my questions out loud, not

23      shrug your shoulders or nod your head.  Do you

24      understand that?

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

5

1   A   Yes, I do.

2   Q   And if you don't understand my question, tell me

3       so, and I will repeat it for you.  Is that

4       understood?

5   A   Yes, it is.

6   Q   What is your current employment?

7   A   I'm secretary/treasurer of Painter's District

8       Council No. 30.

9   Q   Is that the highest ranking position of Painter's

10      District Council No. 30.

11  A   The highest elected position.

12  Q   Briefly, what are your responsibilities on a

13      day-to-day basis?

14  A   To manage all the day-to-day functions of the

15      District Council.

16  Q   Do any persons report to you?

17  A   Yes, they do.

18  Q   Who reports to you?

19  A   The 13 people employed by the District Council.

20  Q   And of those 13, is James Stelmasek one of those

21      persons?

22  A   Yes, he is.

23  Q   What is his position?

24  A   He's a business representative.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

6

1    Q    Where is your office located?

2    A    1905 Sequoia Drive, Aurora, Illinois.

3    Q    How long have you been at that location?

4    A    June of 2007.

5    Q    Where is Mr. Stelmasek's office?

6    A    At the 1905 address.

7    Q    Do you have any relationship to the Painter's

8         District Council No. 30 Joint Trade Board?

9    A    Yes, I do.

10   Q    What is the relationship?

11   A    I'm the secretary/treasurer of the Trade Board.

12   Q    Do you serve on the Joint Trade Board from time

13        to time?

14   A    Yes, I do.

15   Q    How often?

16   A    Every meeting.

17   Q    Where are the offices of the Joint Trade Board?

18   A    They are located at 1905 Sequoia.

19   Q    Is that the same address as your address?

20   A    Yes, it is.

21   Q    Are you a chairman or co-chairman of the Joint

22        Trade Board?

23   A    I'm secretary/treasurer of the Joint Trade Board.

24   Q    Is there a chairman?

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

7

1  A    There is.

2  Q    Who is the chairman?

3  A    Justin Avey.

4  Q    Is there a co-chairman?

5  A    There is not.

6  Q    Are there any rules or regulations that govern

7       the Joint Trade Board?

8  A    Yes, there are.

9  Q    Are those rules and regulations in writing?

10  A    Yes, they are.

11  Q    Where are those rules and regulations? Are they

12      contained in the collective bargaining agreement?

13  A    Some of the Trade Board issues are in the

14      collective bargaining agreement.  Others are just

15      part of the Trade Board policy, which the

16      trustees to the Trade Board adopted.

17  Q    With regard to these rules that are not contained

18      in the collective bargaining agreement, are they

19      given to employees of Vinco Painting?

20  A    Upon request.

21           MR. BERGLUND:  Did you produce those?

22      I thought you said there were no separate rules

23      in response to my production.

24           MR. GOTTSCHLING:  I will produce it.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

8

1      That was my understanding.  I will produce them.

2  BY MR. BERGLUND:

3  Q   One of the documents I asked for were all rules,

4      policies, regulations, and guidelines of the

5      Joint Trade Board.  The response I received was

6      that, "Plaintiff states that no such rules,

7      policies, regulations, or guidelines exist beyond

8      the applicable provisions of the collective

9      bargaining agreement which was produced with

10     Plaintiff's Rule 26A-1 disclosures."

11         Just so I'm clear:  In addition to the

12     information contained in the collective

13     bargaining agreement, there are separate rules,

14     policies, and regulations of the Joint Trade

15     Board; correct?

16 A   There are.

17 Q   What do those rules and regulations provide for?

18     The reason I'm asking is I don't have them in

19     front of me.

20 A   And neither do I.

21 Q   Do you know approximately when those rules were

22     drafted?

23 A   It would have been drafted and revised over the

24     last 10, 20 years.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

9

1    Q    Do you know if those rules provide for appeals

2         from the decisions of the Joint Trade Board?

3    A    They do not.

4    Q    Can an employer appeal from a decision of the

5         Joint Trade Board?

6    A    The rules of the Trade Board are the decision of

7         the Board.  It's final and binding on all

8         parties.

9    Q    Does that mean that an employer cannot appeal

10        from a decision of the Joint Trade Board?

11   A    They can if they wish.

12   Q    What procedures are there which allow for an

13        employer to appeal from a decision of the Joint

14        Trade Board?

15   A    They would have to request it.

16   Q    And who would they make that request to?

17   A    To myself.

18   Q    And does that request have to be in writing?

19   A    I prefer that.

20   Q    Have there been occasions in the last five years

21        where you received a request from an employer to

22        appeal from a decision of the Joint Trade Board

23        which was verbal and not in writing?

24   A    Yes.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

10

1  Q  When was the last time you received such a
2     request?

3  A  I can't recall.

4  Q  Are you familiar with Tri-Cor Carpentry?

5  A  Yes, I am.

6  Q  How are you familiar with Tri-Cor Carpentry?

7  A  They are signatory to the collective bargaining
8     agreement.

9  Q  Did Tri-Cor make a request to you to appeal from
10    a decision of the Joint Trade Board?

11 A  Yes, they did.

12 Q  Was that request in writing or verbal?

13 A  Both.

14 Q  Was their request granted?

15 A  Yes, it was.

16 Q  Are you familiar with Vinco Painting?

17 A  Yes, I am.

18 Q  How are you familiar with them?

19 A  They are a signatory employer to the collective
20    bargaining agreement.

21 Q  Have you met any officers or representatives of
22    Vinco Painting?

23 A  I believe I met Vince casually and possibly
24    Denise, also casually.  She was in the office,

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

11

1    but I'm not 100 percent sure on that.

2 Q   And when you say "Vince," are you referring to

3    Vince Angelilli?

4 A   Correct.

5 Q   Are you familiar with charges brought against

6    Vinco Painting by James Selmasek?

7 A   Yes, I am.

8 Q   Did Mr. Selmasek bring those charges to your

9    attention?

10 A   Yes, he did.

11 Q   Do you recall what those charges involved?

12 A   The charges involved nonpayment of overtime,

13    nonregistering of jobs, nonregistering of

14    overtime permits, and inadequate binding, I

15    believe.

16 Q   Let me show you what I have marked as Deposition

17    Exhibit No. 1 for identification.  If you could

18    take a moment to review it and let me know when

19    you are finished, please.

20                     (The document was thereupon

21                      marked Deposition Exhibit No. 1

22                      for identification as of

23                      May 19, 2008.)

24

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

12

1    BY MR. BERGLUND:

2    Q    Is that your signature at the bottom of the

3         first page?

4    A    Yes, it is.

5    Q    Are you familiar with this document?

6    A    Yes, I am.

7    Q    Did you mail this to Vinco Painting?

8    A    Did I personally mail it to them?

9    Q    Yes.

10   A    No.

11   Q    Do you know who did?

12   A    My secretary.

13   Q    Who is your secretary?

14   A    Linda Anderson.

15   Q    What relationship is she to you?

16             MR. GOTTSCHLING:  Objection;

17        relevance.

18   BY MR. BERGLUND:

19   Q    Does she have any relationship to you?

20             MR. BERGLUND:  It goes to show bias

21        if there is some sort of relationship.

22             MR. GOTTSCHLING:  You can answer.

23             THE WITNESS:  I'm not going to.

24             MR. BERGLUND:  Could you please

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

13

1        certify the question.

2    BY MR. BERGLUND:

3    Q    Do you know if this was mailed to Vinco Painting?

4    A    Yes, I do.

5    Q    How do you know that?

6    A    Because I have competent staff.  When they are

7         given documents to mail, they are mailed.

8    Q    Do you know how this was mailed to Vinco

9         Painting?

10   A    Certified mail and first class mail.

11   Q    I want to make sure:  You didn't mail this

12        letter, either personally certified or by first

13        class mail, did you?

14   A    I did not.

15   Q    Do you know if the mail was returned to your

16        office?

17   A    The certified was returned unclaimed; the first

18        class was never returned.

19   Q    Do you know why it was returned unclaimed?

20   A    I presume -- no, I don't.

21   Q    Do you have a copy of the green card showing it

22        was returned?

23             MR. GOTTSCHLING:  I think we provided

24        you with that.

SONNTAG REPORTING SERVICE, LTD.
sonntagreporting.com - 800.232.0265

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

14

1              MR. BERGLUND:  I didn't see the

2      green card.

3                    (There followed a discussion

4                     outside the record.)

5   BY MR. BERGLUND:

6   Q   Do you know approximately how long Vinco Painting

7       has been signatory to a collective bargaining

8       agreement with Painter's District Council No. 30?

9   A   Offhand, I do not.

10  Q   Is there certain information an employer is

11      required to provide about itself to the union

12      when it does sign a collective bargaining

13      agreement?

14  A   Yes, there are requirements.

15  Q   What information is that?

16  A   Name, address, phone number, Federal I.D. number,

17      State I.D. number, State unemployment number,

18      bond, surety bond, driver's license number, proof

19      of workmen's comp, public liability.  There may

20      be more but that's all I recall.

21  Q   Let me show you what I have marked as Deposition

22      Exhibit No. 2.  If you could take a moment and

23      let me know when you're finished reviewing it.

24                    (The document was thereupon

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

15

1                          marked Deposition Exhibit No. 2

2                          for identification as of

3                          May 19, 2008.)

4    A    Okay.

5    BY MR. BERGLUND:

6    Q    Are you familiar with this document?

7    A    Yes, I am.

8    Q    There are some papers in this Deposition Exhibit

9         No. 2 that weren't contained in Deposition

10        Exhibit No. 1.  They were produced -- Deposition

11        Exhibit No. 2 was produced in one group.

12             Do you know if all of these documents were

13        mailed to Vinco Painting that are contained in

14        Deposition Exhibit No. 2?

15   A    I do not.

16   Q    If you can take a look back at Deposition Exhibit

17        No. 1 starting with the second page, which is a

18        letter to you from James Selmasek dated

19        December 28, 2007, do you see allegations made

20        with regard to a violation of the collective

21        bargaining agreement by Vinco Painting?

22   A    Which paragraph?

23   Q    On the first page.  Do you see allegations made

24        that Vinco violated the collective bargaining

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

16

1        agreement?

2    A    Yes, I do.

3    Q    How many alleged violations are there?

4    A    Seven or eight.

5    Q    Your letter states, "The Joint Trade Board would

6        be held on January 18th, 2008, at 9:00 a.m."

7            Did it proceed on that date?

8    A    Yes, it did.

9    Q    Did anyone from Vinco Painting appear?

10   A    They did not.

11   Q    Do you know why not?

12   A    I do.  Do I know why not then?

13   Q    Yes.

14   A    At the time I did not know.

15   Q    At the time this hearing took place on

16       January 17, 2008, had your office received the

17       green card back showing that the notice wasn't

18       delivered by certified mail to Vinco Painting?

19   A    It did not.

20   Q    Do you know when it was returned to your office?

21   A    As you know, the whole thing was unclaimed.

22       We've already discussed it.

23   Q    When it came back?

24   A    No.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

17

1  Q    You don't know when it came back?

2  A    No.  I don't know when it came back to the

3       office.

4  Q    Did you call Vinco Painting when they didn't

5       appear at the Joint Trade Board hearing?

6  A    I did not.

7  Q    Why not?

8  A    They were given an opportunity to appear, and he

9       chose not to.

10 Q    Did you serve on the Board at the hearing?

11 A    Yes, I did.

12 Q    And do you recall who else served on the Board?

13 A    Without looking at the minutes, no.

14 Q    Did you take notes?

15 A    Yes, I did.

16 Q    Do you still have your notes?

17 A    You have the minutes.  That's all I have.

18 Q    What did you do with your notes?

19 A    Threw them away.

20 Q    Let me show you what is marked as Deposition

21      Exhibit No. 3.  If you can review it and let me

22      know when you're finished, please.

23                         (The document was thereupon

24                          marked Deposition Exhibit No. 3

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

18

1          for identification as of

2              May 19, 2008.)

3   BY MR. BERGLUND:

4   Q    Are these minutes of the January 17, 2008, Joint

5        Trade Board hearing that you typed up?

6   A    Yes.

7   Q    Did you type them up yourself?

8   A    Yes, I did.

9   Q    Do the names in the first paragraph accurately

10       reflect the individuals who served on the Joint

11       Trade Board?

12  A    Yes, they do.

13  Q    So is it fair to state that where you typed," In

14       attendance representing Painter's District

15       Council No. 30 were Charles E. Anderson, Aaron

16       Anderson, Brian Muscat, Mark Guethle, and Todd

17       Dotson."

18            Did those individuals then represent

19       persons that served on the Joint Trade Board as

20       union representatives?

21  A    That's correct.

22  Q    Is it fair to state that Joe Maring, Michael

23       LeGood, and Rick Vandegraft represented the

24       employer on the Joint Trade Board?

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

19

1   A   Yes.

2   Q   There wasn't a separate award issued, was there?

3   A   I don't know what you mean.

4   Q   Do these meeting minutes reflect the action taken

5       by the Joint Trade Board against Vinco Painting

6       on January 17, 2008?

7   A   Yes, they do.

8   Q   Is there any other document that constitutes the

9       decision that was entered against Vinco Painting?

10      I understand that there is minutes from the

11      subsequent meeting approving these minutes, but

12      is there any other -- some boards issue separate

13      awards.  I want to make sure I have all the

14      documents.

15   A   There were no other awards.

16   Q   Is it your testimony, then, that the award issued

17      against Vinco Painting is final and binding?

18   A   That is my opinion.

19   Q   What is your definition of final and binding?

20            MR. GOTTSCHLING:  I'm going to

21      object.  You're calling for an interpretation of

22      a term that is in the collective bargaining

23      agreement.

24  BY MR. BERGLUND:

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

20

1  Q    Isn't it true that employers can appeal from
2       awards issued by the Joint Trade Board?
3  A    They can appeal.
4  Q    If an employer's request for an appeal is
5       granted, isn't it true that there is the
6       possibility, then, that the award previously
7       issued by the Joint Trade Board could be
8       modified?
9  A    That depends on the facts.
10 Q    It's a possibility, isn't it?
11 A    I guess anything is possible.
12 Q    Isn't it true that's what happened with Tri-Cor
13      Carpentry?
14 A    That is true.
15 Q    Let me show you what I have marked as Deposition
16      Exhibit No. 4, and let me know when you're
17      finished reviewing it.
18                         (The document was thereupon
19                          marked Deposition Exhibit No. 4
20                          for identification as of
21                          May 19, 2008.)
22 A    Okay.
23 BY MR. BERGLUND:
24 Q    Are you familiar with this document?

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

21

1    A    Yes.

2    Q    How are you familiar with it?

3    A    I prepared it.

4    Q    Is that your signature on the second page?

5    A    Yes, it is.

6    Q    Did you or -- did you mail this document to Vinco

7         Painting?

8    A    I had it mailed.

9    Q    Is it fair to state that you did not personally

10        mail this letter to Vinco Painting?

11   A    I did not.

12   Q    Do you know if the letter that was mailed to

13        Vinco Painting by certified mail was returned to

14        your office?

15   A    It came back unclaimed.

16                MR. BERGLUND:  Can you produce the

17        green card?

18                MR. GOTTSCHLING:  Yes.

19                MR. BERGLUND:  Thank you.

20   BY MR. BERGLUND:

21   Q    Can you tell me on what day the award issued

22        against Vinco Painting was made final.

23   A    January 17th.

24   Q    Is there any requirement for the members of the

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

22

1       Board to approve the meeting minutes in order to

2       make the awards final and binding?

3   A   There is not.

4   Q   Let me show you what I have marked as Deposition

5       Exhibit No. 5.  If you can review that for a

6       moment, please.

7                       (The document was thereupon

8                        marked Deposition Exhibit No. 5

9                        for identification as of

10                       May 19, 2008.)

11  A   Okay.

12  BY MR. BERGLUND:

13  Q   Have you seen this before today?

14  A   Yes.

15  Q   Is any of the writing on this document yours?

16  A   No.

17  Q   Do you recognize any of the writing?

18  A   I do not.

19  Q   Is some of the information contained on this

20      Deposition Exhibit No. 5 information that is

21      given to the union when an employer becomes

22      signatory to an agreement with the union?

23  A   Could you restate that again.

24  Q   Sure.  Is the information contained on Deposition

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

23

1          Exhibit No. 5 information that is typically given

2          to the union when an employer becomes signatory

3          to an agreement?

4    A     Yes, it is.

5    Q     And this document is dated January 24th -- the

6          last digit is not on my copy.  Do you know what

7          year this document was generated?

8    A     2008.

9    Q     How do you know that?

10   A     By the notes at the bottom of the page.

11   Q     Do you see the date on the left side of the

12         document of February 11, 2008?

13   A     The header, yes.

14   Q     Is the Painter's District Council fax number

15         (630) 377-2384?

16   A     Yes, it is.

17   Q     Do you know to whom this document was faxed to?

18   A     I do not.

19   Q     Is it fair to state, then, that Painter's

20         District Council No. 30 had on January 24, 2008,

21         the information contained on this document?

22   A     Yes, it is.

23   Q     After January 17, 2008, did you speak with Vince

24         Angelilli?

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

24

1   A   Yes, I did.

2   Q   How many times?

3   A   Since then?

4   Q   After January 17, 2008.

5   A   Two, possibly three.

6   Q   Approximately when was the first time you talked

7       with him?

8   A   I would believe the date would be the 24th of

9       January, 2008.

10  Q   Did you call him or did he call you?

11  A   I believe he called me.

12  Q   And how long did the conversation last?

13  A   The first part of it lasted possibly two minutes.

14  Q   And where were you when he called you?

15  A   In my office.

16  Q   Was there anyone else on the telephone other than

17      you and him?

18  A   I do not believe so.

19  Q   What did he say to you and you say to him?

20  A   I believe that Vince called.  He had received a

21      copy of the findings of the Trade Board.

22  Q   What did he tell you?

23  A   That none of it was true and that he was not

24      going to pay it.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

25

1    Q    What did you tell him?

2    A    I told him he was under an obligation to pay it,

3         and that if he wished to appeal it, he needed to

4         provide the District Council with a check made

5         out to the District Council in the amount of

6         $50,000.  He was told that that check would not

7         be cashed, and that he would have to appear

8         before the next Board meeting.

9    Q    Did you tell him anything else?

10   A    After he told me that I was extorting money from

11        him, I told him that I would see him in court and

12        hung up.

13   Q    During that two-minute conversation, did he tell

14        you that he did not receive notice of the

15        hearing?

16   A    Yes, he did.

17   Q    Is it your position that he didn't receive notice

18        of the hearing that was set for January 17, 2008?

19   A    I have no idea if he did or if he didn't.

20        Certified was returned, first class wasn't.

21   Q    Assuming he didn't receive notice of the hearing

22        that was set for January 17, 2008, isn't it fair

23        to state that it's unfair to enforce this award

24        that was issued against Vinco Painting?