CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

26

1       MR. GOTTSCHLING:  Objection.  You're

2  asking for the witness' opinion.

3       MR. BERGLUND:  He's familiar with the

4  collective bargaining agreement and the rules of

5  the Joint Trade Board.

6       MR. GOTTSCHLING:  You're asking if it

7  was unfair, not the rules provided.

8  A    No.

9  BY MR. BERGLUND:

10 Q    Are there any rules that address a situation

11      where an employer doesn't receive notice of a

12      hearing before the Joint Trade Board?

13 A    The rules are that they will provide us with the

14      address when they change addresses.

15 Q    What rules are you speaking of?

16 A    In the collective bargaining agreement.

17 Q    Let me show you what I have marked as Deposition

18      Exhibit No. 6.  Please review that and let me

19      know if you're familiar with that document.

20                      (The document was thereupon

21                       marked Deposition Exhibit No. 6

22                       for identification as of

23                       May 19, 2008.)

24 A    Yes, I am.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

27

1    BY MR. BERGLUND:

2    Q    And how are you familiar with it?

3    A    The signature page for the 2004-2008 collective

4         bargaining agreement.

5    Q    Does this refresh your recollection as to when

6         Vinco Painting became signatory with the

7         Painter's District Council No. 30?

8    A    August 30, 2007.

9    Q    Let me show you what was marked as Deposition

10        Exhibit No. 7, and that was produced to me by

11        your counsel.  Is this the collective bargaining

12        agreement to which Vinco Painting is bound with

13        Painter's District Council No. 30?

14                        (The document was thereupon

15                        marked Deposition Exhibit No. 7

16                        for identification as of

17                        May 19, 2008.)

18   A    This is the first agreement that he signed.

19   BY MR. BERGLUND:

20   Q    Is there another agreement?

21   A    The new May 1, 2008, through April 30, 2013

22        agreement.

23                        MR. GOTTSCHLING:  I have a copy of it

24        if you want it.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

28

1          MR. BERGLUND:  If you contend it's

2     relevant, otherwise I don't see how it is.

3  BY MR. BERGLUND:

4  Q    Can you point out the specific provision, then,

5       where Vinco Painting was required to notify

6       Painter's District Council No. 30 of any change

7       in its address.

8  A    Article 14.

9  Q    Where in Article 14 does it require Vinco

10      Painting to provide notice of any change in

11      address?

12 A    My mistake, it's not 14.  It's where it talks

13      about it will not be a post office box.

14 Q    If I can direct your attention to page 33,

15      Section 9.8, is that the section you are

16      referring to?

17 A    That is correct.

18 Q    So is it your testimony that Section 9.8(a),

19      which begins on page 33 and ends on page 34, is

20      the section of the agreement that requires Vinco

21      Painting to provide notice of any change in its

22      address?

23 A    Correct.

24 Q    After you had this two-minute conversation you

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

29

1       told me that you had with Vince Angelilli, did

2       you speak with him again?

3   A   Yes, I did.

4   Q   When was the next time?

5   A   Three minutes after that conversation.

6   Q   And did he call you back?

7   A   Yes, he did.

8   Q   How long did this conversation last?

9   A   Several more minutes.

10  Q   And what did he say to you?

11  A   He apologized for his remarks and stated that he

12      would like to appear before the Board, that he

13      had proof that these allegations were incorrect.

14      I told him that would be fine, that he would need

15      to, again, get a check to the District Council

16      payable to the District Council in the amount of

17      $50,000.

18          He was told the check would not be cashed

19      and told when the meeting date was, and that he

20      was to send me a request to appear before the

21      Board along with the check.

22  Q   What did he say to you?

23  A   "I will get that taken care of."

24  Q   Is the requirement to provide a check for $50,000

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

30

1      to the District Council to appeal from an award

2      issued by the Joint Trade Board a policy or a

3      rule that was approved by the Joint Trade Board?

4   A   The Board of Trustees stated that if there was a

5      request to appeal -- anticipating things like

6      that -- to get 50 percent of the total fine.  I

7      took it upon myself to reduce it to $50,000.

8   Q   Then what if Vinco Painting didn't have $50,000?

9   A   Not my problem.

10  Q   Let's assume that Vince Angelilli told you he

11     didn't have the money to give to you.  What would

12     your response be?

13              MR. GOTTSCHLING:   Objection; it

14     assumes facts not in evidence.

15  A   What I told him was send the check; it will not

16     be cashed.

17  BY MR. BERGLUND:

18  Q   What is the purpose of asking for any money to

19     allow an employer to appeal?

20  A   Policy of the Board.

21  Q   Did you have any other conversations with Vince

22     Angelilli?

23  A   One more, I believe.

24  Q   Approximately what day was that?

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

31

1    A    The date prior to the next scheduled Trade Board

2         meeting.

3    Q    Do you know how many days this conversation took

4         place after the conversation you just described

5         you had with him?

6    A    I talked to him on the 24th of January, I

7         believe.  The next meeting of the Trade Board was

8         scheduled for March -- I believe it was the 12th

9         of March.

10   Q    Did he call you?

11   A    Yes, he did.

12   Q    Where were you when he called you?

13   A    In my office.

14   Q    How long did this conversation last?

15   A    Several minutes.

16   Q    What did he say to you and you say to him?

17   A    Vince stated he would be bringing in his

18        delinquent reports, the money that he owed on

19        those reports, and a check for the $50,000.

20             I told him that I would see him.  He said

21        he would be there in a couple hours, and I said I

22        may or may not be in the office, and that if I

23        wasn't, I would see him the following morning at

24        the Trade Board.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

32

1  Q   Did he ever bring a check to you for $50,000?

2  A   He never appeared at the office.

3  Q   Did you have any other conversations with him?

4  A   I have not.

5  Q   After the Joint Trade Board award was issued on

6      January 17, 2008, did you have any conversations

7      with Denise Angelilli?

8  A   Yes, I did.

9  Q   Approximately how many?

10 A   One.

11 Q   When was that?

12 A   It would have been the 24th.

13 Q   And did she call you or you call her?

14 A   She called me.

15 Q   Other than you and Denise, was there anyone else

16     on the phone?

17 A   To the best of my knowledge, no.

18 Q   What did she say to you and you say to her?

19 A   She was questioning the fine and the monies owed.

20     She stated that they had not received notice.

21     And it is at that point that I read the address,

22     and I was told, "Well, we moved."

23         I told her what she would have to do, write

24     a letter of appeal, send a check for $50,000, and

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

33

1          appear at the next Trade Board meeting.

2    Q     What did she say?

3    A     "Goodbye."

4    Q     Did she tell you whether she had the money or

5          didn't have the money?

6    A     I don't believe she did.

7    Q     So is it fair to state that if Vinco didn't give

8          you a check for $50,000 for whatever the reason,

9          that you would not let Vinco appeal?

10   A     As I told Vince, that was a policy.  That was the

11         wishes of the Board.

12   Q     How long did that conversation with Denise last?

13   A     Several minutes.

14   Q     After January 17th, 2008, did you have any

15         conversations with James Selmasek of the Joint

16         Trade Board award after that?

17   A     Yes, I did.

18   Q     Approximately how many?

19   A     Several.

20   Q     When was the first time?

21   A     Probably on the 17th after the meeting.

22   Q     Do you know if Jim Selmasek talked with Denise or

23         Vince Angelilli after January 17, 2008?

24   A     I believe he did.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

34

1  Q    How do you know that?

2  A    Jim told me he had some discussion with Denise.

3  Q    And when was the first time he spoke to Denise?

4  A    I don't recall.

5  Q    What did he tell you?

6  A    That he was working things out with her regarding

7       paying the money.

8  Q    Did Mr. Selmasek tell you specifically what was

9       being worked out?

10 A    No.

11 Q    Do you know if Jim Selmasek talked with Vince

12      Angelilli after January 17, 2008?

13 A    I do not.

14 Q    Let me show you what is marked as Deposition

15      Exhibit No. 8.  If you could review that and let

16      me know when you are finished, please.

17                         (The document was thereupon

18                          marked Deposition Exhibit No. 8

19                          for identification as of

20                          May 19, 2008.)

21 A    Okay.

22 BY MR. BERGLUND:

23 Q    Have you seen this document before today?

24 A    I believe I have.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

35

1   Q   When was the first time you saw it?

2   A   Probably at the Trade Board meeting.

3   Q   Do you see on the first page where it says,

4       "Amended 1/24/08."  Do you know if this document

5       was created on January 24, 2008?

6   A   I do not.

7   Q   Do you know who created this document?

8   A   I do not.

9   Q   If it was created on January 24, 2008, is it fair

10      to state that this document was not presented to

11      the Joint Trade Board on January 17, 2008?

12  A   I don't know.

13  Q   Do you know to whom this document was sent, if

14      anyone?

15  A   I do not.

16  Q   Do you know what this document represents?

17  A   It appears to represent a discrepancy in wages.

18  Q   Did you have any discussions with Vince or Denise

19      Angelilli regarding this document which is marked

20      as Deposition Exhibit No. 8?

21  A   I did not.

22  Q   Did you receive any correspondence from Vinco

23      Painting after January 17, 2008?

24  A   I do not recall.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

36

1    Q    Let me show you what I have marked as Deposition

2         Exhibit No. 9, and let me know when you are

3         finished reviewing it, please.

4                              (The document was thereupon

5                              marked Deposition Exhibit No. 9

6                              for identification as of

7                              May 19, 2008.)

8    A    Okay.

9    BY MR. BERGLUND:

10   Q    Have you seen this before today?

11   A    I may have.

12   Q    Is there anything in this letter to which you

13        disagree with?

14   A    I don't believe the date of the 25th is correct.

15   Q    What date do you think it should be?

16   A    I believe it should be the 24th.

17   Q    Is there anything else in this letter that you

18        disagree with?

19   A    The second and third paragraphs, fourth

20        paragraph, fifth paragraph.

21   Q    What do you disagree with in each of those

22        paragraphs?

23   A    Her opinions.

24   Q    Is there anything you do agree with in those

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

37

1        paragraphs?

2    A   I would agree with my name.  I would agree that

3        she was told to pay the last checks to the

4        employees and send a check for $50,000 to the

5        Council.

6    Q   Was that the only thing you do agree with in

7        those paragraphs?

8    A   Correct.

9    Q   Do you recall discussing this letter or any part

10       of it with Jim Selmasek on or after

11       February 29th, 2008?

12   A   I do not.

13   Q   Do you believe that the fines issued by the Joint

14       Trade Board are within the limits set forth in

15       Section 13.5 of the agreement?

16   A   They are not.

17   Q   How are they not?

18   A   They were reduced by 50 percent.

19   Q   How were they reduced by 50 percent?

20   A   The maximum allowable is $100,000 per violation

21       for every day found in violation.  They were

22       assessed $500 per violation per day.

23   Q   So let me show you Section 13.5 of the agreement,

24       which is contained in Deposition Exhibit No. 7.

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

38

1        And correct me if I'm wrong.  I understand your
2        testimony to be that the fines are within the
3        parameters set forth in Section 13.5 because the
4        violations committed by Vinco were daily
5        violations; correct?
6    A   That's correct.
7    Q   Isn't it true that Section 13.5 doesn't require
8        the violations to be daily?  Rather they are per
9        violation?
10   A   That's not the way I interpret it.
11   Q   Did you prepare for your deposition today?
12   A   Briefly.
13   Q   What did do you?
14   A   Talked with David.
15   Q   Other than talk to him, did you look at any
16       documents?
17   A   No, I don't think so.  I don't think we had any
18       documents.
19   Q   The reason -- I don't want to know what
20       conversation you had with David, but if there is
21       any documents that you looked at that we haven't
22       reviewed, that's what I'm interested in getting.
23   A   That's not the case.
24   Q   Let me show you what is marked as Deposition

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

39

1    Exhibit No. 10.  Please take a moment to review

2    that and let me know if you're familiar with that

3    document.

4                        (The document was thereupon

5                        marked Deposition Exhibit No. 10

6                        for identification as of

7                        May 19, 2008.)

8    A    Yes, I am.

9    BY MR. BERGLUND:

10   Q    And that's your signature on the last page?

11   A    Yes, it is.

12   Q    These are answers to certain questions that were

13        asked of Painter's District Council No. 30 to

14        respond to, and it indicates that you and Ryan

15        Anderson participated in providing the answers to

16        the questions.  Can you tell me which questions

17        you were involved in answering.

18   A    Yes, I can.

19   Q    Okay.  Can you do so.

20                   THE WITNESS:  David, how long is this

21        going to take because I'm getting a little tired

22        of this?

23   BY MR. BERGLUND:

24   Q    Chuck, I'm going over documents that were

CHARLES ANDERSON -- 5/19/08
EXAMINATION BY MR. BERGLUND

40

1    provided to you.

2  A    They are answered here; that is sufficient.  I

3    need to go to the bathroom.

4                 MR. BERGLUND:  If this case goes to

5    trial --

6                 THE WITNESS:  I need to take a break.

7                     (Whereupon, a recess was had at

8                     11:32 a.m., after which the

9                     deposition was resumed at

10                    11:37 a.m. as follows:)

11                MR. BERGLUND:  Back on the record.

12   Can you read back the question.

13                    (Question from page 39, lines 12

14                    through 17, read.)

15  A    1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 15, and 20.  Those

16   are the ones that I had input on.

17                MR. BERGLUND:  Thank you.  I have no

18   more questions.

19                MR. GOTTSCHLING:  No questions.

20   AND FURTHER DEPONENT SAITH NOT AT 11:40 A.M.

21

22

23

24

41

1  **S54682A**                    **ERRATA SHEET**

2  **PAGE    LINE    CHANGE**                        **REASON**

3  ____  ____  _____

4  ____  ____  _____

5  ____  ____  _____

6  ____  ____  _____

7  ____  ____  _____

8  ____  ____  _____

9  ____  ____  _____

10 ____  ____  _____

11 ____  ____  _____

12 ____  ____  _____

13 ____  ____  _____

14 ____  ____  _____

15 ____  ____  _____

16 ____  ____  _____

17 ____  ____  _____

18 ____  ____  _____

19 ____  ____  _____

20 ____  ____  _____

21 ____  ____  _____

22 ____  ____  _____

23 ____  ____  _____

24 ____  ____  _____

42

1        I have read the above and foregoing, and it

2     is a true and correct transcript of my deposition

3     given on the day and date aforesaid.

4

5

6         _____

                  CHARLES ANDERSON

7

8

9

10

11

12

13        Subscribed and sworn to before me

14    this _____ day of _____, 2008.

15

16

         _____

17               Notary Public

18

19

20   My Commission Expires

21   _____.

22

23

24

43

1      STATE OF ILLINOIS    )

                            ) SS.

2      COUNTY OF DU PAGE    )

3

4          I, Karen S. Fogle, Certified Shorthand

5      Reporter No. 084-004603, CSR, RPR, and a Notary

6      Public in and for the County of DuPage, State of

7      Illinois, do hereby certify that previous to the

8      commencement of the examination, said witness was

9      duly sworn by me to testify the truth; that the

10     said deposition was taken at the time and place

11     aforesaid; that the testimony given by said

12     witness was reduced to writing by means of

13     shorthand and thereafter transcribed into

14     typewritten form; and that the foregoing is a

15     true, correct, and complete transcript of my

16     shorthand notes so taken as aforesaid.

17         I further certify that there were present

18     at the taking of the said deposition the persons

19     and parties as indicated on the appearance page

20     made a part of this deposition.

21

22

23

24

1          I further certify that I am not counsel for

2     nor in any way related to any of the parties to

3     this suit, nor am I in any way interested in the

4     outcome thereof.

5          IN TESTIMONY WHEREOF I have hereunto set my

6     hand and affixed my Notarial Seal this __2nd__ day

7     of ___June___, A.D. 2008.

8

9

10     _____

11            Certified Shorthand Reporter

12            Registered Professional Reporter

13

14

15     My commission expires

16     August 25, 2009

OFFICIAL SEAL
KAREN S FOGLE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/25/09

17

18

19

20

21

22

23

24