IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAINTERS DISTRICT COUNCIL NO. 30, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 1163 |
| v. | ) | |
| | ) | |
| VINCO PAINTING INC., | ) | Judge Conlon |
| | ) | Magistrate Judge Ashman |
| Defendant. | ) | |
| -------------------------------------------------------- | ) | |
| VINCO PAINTING, INC., | ) | |
| | ) | |
| Defendant/Counterplaintiff | ) | |
| vs. | ) | |
| | ) | |
| PAINTERS DISTRICT COUNCIL NO. 30. | ) | |
| | ) | |
| Plaintiff/Counterdefendant. | ) | |

**DEFENDANT/COUNTERPLAINTIFF'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendant/Counterplaintiff, VINCO PAINTING, INC. ("Vinco"), and for its Motion For Entry of Summary Judgment pursuant to Fed.R.Civ.Pro. 56 in its favor and against Plaintiff on Plaintiff's Complaint and Defendant's Counterclaim state as follows:

**I.
FACTS**

On February 26, 2008, Plaintiff, Painters District Council No. 30 ("Union"), filed this action in its attempt to enforce an Award issued by the Painters District Council No. 30 Joint Trade Board ("JTB"). On March 24, 2008, Vinco filed its Answer, Affirmative Defenses and Counterclaim to vacate the Award. (Vinco's Local Rule 56.1 Statement of Facts hereinafter referred to as "DSOMF" at ¶¶1-2)

Vinco is engaged in the painting industry. Vince Angelilli is Vinco's President and runs its day-to-day operations. Denise Angelilli is Vince Angelilli's wife and assists in operating Vinco.

There are no other individuals that assist in operating Vinco. (DSOMF at ¶¶5-6)

The Union has its place of business in Aurora, Illinois. Charles Anderson ("Anderson") is Secretary-Treasurer of the Union which is the highest elected position. Anderson is also Secretary-treasurer of the Painters District Council No. 30 Joint Trade Board ("JTB") and serves on the JTB at every meeting. James Stelmasek ("Stelmasek") has worked for the Union for approximately 17 as a business representative. Stelmasek has reported to Anderson for approximately 15 years. (DSOMF at ¶¶7-9)

Vinco has been signatory to a Collective Bargaining Agreement ("CBA") with the Union since August 30, 2007. (DSOMF at ¶10)

The pertinent provisions of the CBA provide:

(a) Section 13.1. The Union and the Association agree to establish and maintain a Joint Trade Board consisting twelve (12) members with six (6) members and an alternate appointed by each party. All disputes and grievances shall be referred to the Joint Trade Board, unless as otherwise expressly provided for under this Agreement.

(b) Section 13.2. The Joint Trade Board shall have the right to establish reasonable rules and regulations for its operation and such rules and regulations shall be binding upon all the parties.

(c) Section 13.4 (a). The officers of the Joint Trade Board shall be a Chairman and a Secretary-Treasurer. One officer shall be a representative of the Union and the other officer shall be a representative of the Association.

(d) Section 13.5. If the Joint Trade Board finds that an Employer violated this Agreement, the Joint Trade Board is authorized to fashion, in its sole discretion, all appropriate remedies, including but not limited to, awarding actual damages to the aggrieved individual or entity, plus fines not to exceed one thousand dollars ($1,000.00) per violation, and assessing liquidated damages, interest, costs, reasonable attorneys' fees, administrative expenses, and auditing fees incurred by the Joint Trade Board....

(DSOMF at ¶11).

The pertinent provisions of the Joint Trade Board Rules and Regulations provide:

(a) 3. The JTB shall hear and decide all complaints/charges and disputes arising

> under the Collective Bargaining Agreement, and the JTB's decision shall be binding on all parties. The procedures are:
>
> When a written complaint/charge is received by the JTB, *the Respondent shall be advised* that a complaint/charge has been filed with the JTB and will be instructed to appear at the next meeting of the JTB. The written complaint/charge shall contain a concise statement of facts which constitute the complaint and shall list the sections of the Collective Bargaining Agreement which are alleged to be violated.
>
> (b)    Paragraph 4(b).    All evidence is admissible. The JTB will determine the weight and relevance of the evidence. The Chairperson and *the Secretary-Treasurer shall insure* that each party is able to present all pertinent information, and that each side has the opportunity to question the other. JTB members may question the parties.

(DSOMF at ¶12(a)(b)).

An employer can appeal from a decision of the JTB by submitting a request to Anderson. Anderson prefers the requests to be written. (DSOMF at ¶13)

On January 17, 2008, the JTB heard the Union's grievance against another employer, TriCor Carpentery, in its absence. The JTB ordered TriCor Carpentry to pay $246,413.56 to Jose Vargas and to pay the Union $349,000.00 by January 31, 2008. Anderson allowed Tricor Carpentry to appeal the award. Tricor carpentry appeared before the JTB on March 13, 2008 on its appeal. The JTB reduced the award to $3,588.57 for money owed for an employee and reduced the fine due the Union to $10,000 which was held in abeyance for 12 months provided that all job reports are submitted by March 14, 2008. (DSOMF at ¶¶14-16).

On December 28, Stelmasek filed a written grievance (charges) against Vinco with Charles Anderson, Secretary-Treasurer of the Union and the JTB. As shown toward the upper left-hand portion of the first page of the grievance, reference is made to Vince Angililli's phone 773-507-7400 and does not contain any address for Vinco Painting. Stelmasek did not forward or mail his grievance (charges) to Vinco. (DSOMF at ¶¶17-19).

Stelmasek alleged that Vinco violated four sections of the CBA. The four sections of the CBA which were allegedly violated by Vinco are:

3

    1)    <u>Article 4, Union Security</u>: Dues Check off and Organizing and Defense Fund, Sec. 4.2.  Vinco did not pay into dues check off and organizing and defense fund.

    2)    <u>Article 8, Wage Rates</u>: Overtime Issues, Sec. 8.6.  Vinco didn't pay overtime allegedly.

    3)    Payment of Wages and Check stub, Sec. 8.7(a) and (b).  Vinco did not pay some guys and did not include detachable check stubs.

    4)    <u>Article 9, Benefit Funds</u>: Monthly Reporting, Sec. 9.3(b).  Vinco was not making or submitting monthly reports to the Union.

(DSOMF at ¶20).

Stelmasek claimed that Vinco owed a grand total of $4,276.61 in wages and benefits. (DSOMF at ¶21).

The Union asserts that Vinco received notice of the charges filed with the JTB for violations of Articles 4, 8 and 9 of the CBA, along with notice that a hearing before the JTB was scheduled for January 17, 2008.  Vinco denies these allegations (Vinco's Answer to Plaintiff's Complaint, ¶¶11, 12: Doc. No. 11). (DSOMF at ¶22)

On January 3, 2008, Charles Anderson purportedly sent a letter to Vinco at 6649 Ogallah, Chicago, Illinois 60631 via Certified and First Class Mail, which contained Jim Stelmasek's grievance and notice of the January 17, 2008 hearing scheduled before the JTB. (DSOMF at ¶23)

The Receipt for the Certified Mailing was returned to Charles Anderson with a notation "Moved Left No Address".  (DSOMF at ¶24). The tracking information obtained from the United States Postal Service and produced by the Union in this lawsuit of the Certified Mailing shows that the Union received the Receipt for the Certified Mailing back in its Aurora office on January 14, 2008 at 11:27 a.m. (which is three days before the January 17, 2008 hearing) (DSOMF at ¶25). Charles Anderson did not call Vinco to notify it of the JTB hearing.  (DSOMF at ¶¶25-26).

When Vinco became signatory to the CBA, Vinco's office was located at 6649 N. Ogallah,

Chicago, Illinois 60631 and Vince Angelilli reported this address to the Union at this time. When Vinco became signatory, Vince Angelilli also informed it that the phone number for Vinco and his cell phone was (773) 507-7400. (DSOMF at ¶28).

Vinco's office was not only located at 6649 N. Ogallah, Chicago, Illinois, but Vince and Denise Angelilli also resided at this location with their two children, who are seven and nine years old. Vince and Denise Angelilli leased a single family home from John Thompson at this location. In or about August, 2007, Vince and Denise Angelilli were involved in a dispute with John Thompson. As a result, John Thompson served them with written notice terminating the lease and to vacate 6649 N. Ogallah, Chicago, Illinois by October 1, 2007. (DSOMF at ¶¶29-30).

After receiving written notice from John Thompson, Vince and Denise Angelilli made plans to move to 4637 N. Forestview Avenue, Chicago, Illinois 60650. On or about November 6, 2007, they did move to 4637 N. Forestview Avenue, Chicago, Illinois. Since Denise and Vince Angelilli moved their residence, the office of Vinco also changed on November 6, 2007 to 4637 N. Forestview Avenue, Chicago, Illinois 60650. Although Vinco's office address changed on November 6, 2007, its telephone number remained the same. (DSOMF at ¶¶31-32).

Vinco did not receive Anderson's January 3, 2008, letter that was sent by Certified Mail or by First Class Mail. (DSOMF at ¶35). Even though the Union, including Anderson, received the certified Mailing back in its Aurora office on January 14, 2008, which showed that Vinco did not receive it since it moved, the Union as well as Anderson (who served on the JTB as Secretary-Treasurer) proceeded with the hearing before the JTB on January 17, 2008. (DSOMF at ¶27). Vinco was not present at the JTB hearing.

The JTB found Vinco guilty in its absence and ordered as follows:

> Vinco is to pay Loren Deland $38,591.82 ($500.00 per day for 73 days for non-payment of overtime plus actual overtime 11-5-07 through 1-17-08), pay William Medina $40,092.95 ($500.00 per day for 79 days for non-payment of overtime plus

5

>actual overtime 10-30-07 through 1-17-08), pay Jesus Mota $32,048.70 ($500.00 per day for 63 days for non-payment of overtime plus actual overtime 11-15-07 through 1-17-08), pay Jeremy Weise $47,216.39 ($500.00 per day for 94 days for non-payment of overtime plus actual overtime 10-15-07 through 1-17-08). In addition, Vinco is to pay Painters District Council 30 a total of $148,000.00 for violations of the Collective Bargaining Agreement ($500.00 per day for 94 days of no overtime permit, 101 days of not registering job locations and 101 days for not providing check stubs to the employees). Mr. Angelilli will be informed that all payments are to be sent to the District council before January 31, 2008."

(DSOMF at ¶38).

The JTB did not issue a separate Award. (DSOMF at ¶39).

On January 22, 2008, Charles Anderson caused to be sent to Vinco by Certified and First Class Mail excerpts of the Minutes from the January 17, 2008, JTB hearing, which contained the JTB decision. Charles Anderson sent excerpts of the Minutes to Vinco at 6649 Ogallah, Chicago, Illinois 60631. The Certified mailing was not received by Vinco. The Certified mailing shows that it was forwarded to Vinco's address at 4637 N. Forestview, Chicago, but was unclaimed. (DSOMF at ¶¶40-41).

The First Class Mailing was forwarded to Vinco's address at 4637 N. Forestview, Chicago, on or about January 25, 2008. Vinco received the First Class Mailing on or about January 25, 2008. (DSOMF at ¶¶42-43).

Anderson's January 22, 2008 letter states in pertinent part that the

>"the following is the excerpt from the minutes of Painters District Council 30's Joint Trade Board hearing involving your company. I am sure that you will find it self explanatory. The case of Vinco Painting was presented to the Board by Secretary-Treasurer Anderson. James Stelmasek, Director of Membership Servicing and Member Loren Deland were in attendance. Vince Angelilli of Vinco was absent. In accordance with the rules of the Joint Trade Board the hearing was held in his absence. The facts and testimony as they related to the charges were presented to the Board. After hearing the testimony the Board found Vinco guilty as charged and set forth the following decisions: Vinco is to pay Loren Deland $38,591.82 ($500.00 per day for 73 days for non-payment of overtime plus actual overtime 11-5-07 through 1-17-08), pay William Medina $40,092.95 ($500.00 per day for 79 days for non-payment of overtime plus actual overtime 10-30-07 through 1-17-08), pay Jesus Mota $32,048.70 ($500.00 per day for 63 days for non-payment of overtime plus actual overtime 11-15-07 through 1-17-08), pay Jeremy Weise $47,216.39 ($500.00 per day for 94 days for

non-payment of overtime plus actual overtime 10-15-07 through 1-17-08). In addition, Vinco is to pay Painters District Council 30 a total of $148,000.00 for violations of the Collective Bargaining Agreement ($500.00 per day for 94 days of no overtime permit, 101 days of not registering job locations and 101 days for not providing check stubs to the employees). Mr. Angelilli will be informed that all payments are to be sent to the District council before January 31, 2008."

(DSOMF at ¶44.

The first time Vinco learned that the Union filed any charges against it was on or about January 25, 2008, when Vince and Denise Angelilli received Anderson's January 22, 2008 letter by First Class Mail. The first time Vinco learned that it was ordered to appear at a hearing before the JTB was likewise on or about January 25, 2008, when Vince and Denise Angelilli received Anderson's January 22, 2008 letter by First Class Mail.(DSOMF at ¶¶45-46).

On the same day Vinco received Anderson's letter on January 25, 2008, Vince Angelilli immediately called Anderson at the Union's offices. Denise Angelilli was present for this conversation. Vince Angelilli told Anderson that Vinco had not received prior notice of the JTB hearing. Charles Anderson told Vince Angelilli that he could get Vinco back before the JTB if Vinco gave him a check for $50,000.00. Vince Angelilli told him that he did not have $50,000.00. Vinco did not and does not have $50,000.00 to give to Charles Anderson.(DSOMF at ¶¶47-49).

On January 25, 2008, Denise Angelilli spoke with Stelmasek. Stelmasek told her to ignore the numbers in the JTB Award since they were outrageous. Stelmasek also told Denise Angelilli that he would fax amended claims to her. Stelmasek did fax amended claims to Denise Angelilli on January 25, 2008. (DSOMF at ¶¶50-51).

On February 29, 2008, Denise Angelilli sent a letter to Charles Anderson by facsimile and again informed Charles Anderson that Vinco never received notice of the JTB hearing. Denise Angelilli also requested Charles Anderson to provide her with the basis of any belief he may have had that Vinco received notice of the hearing. She received no response from Charles Anderson.

(DSOMF at ¶52).

## II.
## ARGUMENT

Under the Federal Rule of Civil Procedure 56(c), summary judgment is required "If the pleadings, depositions,...and admissions on file, together with affidavits, if any, "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See New Burnham Prairie Homes, Inc. v. Village of Burnham, 910 F.2d 1474 (7th Cir. 1990). As set forth below, there is no material fact in dispute and Vinco is entitled to judgment as a matter of law on at least 2 grounds.

First, Anderson (as Secretary-Treasurer) not only failed to insure that Vinco was advised of the JTB hearing but also failed to insure that Vinco was able to present all pertinent information. Vinco failed to receive notice of both the charges and the hearing. In fact, the Union proceeded with the hearing even after it, including Anderson who himself served on the JTB, received notice from the U.S.Postal Service that Vinco moved and did not receive the certified mailing. Anderson could have simply called Vinco on the telephone but did not do so. Vinco immediately called Anderson when it learned of the hearing and of the award but Anderson refused to allow Vinco back before the JTB. Basic notions of fairness and due process dictate that the Award be vacated and the dispute remanded to the JTB for resolution on the merits.

In the event this Honorable Court does not vacate the award and remand the dispute to the JTB, Vinco submits that the award be vacated in its entirety or, at the very least reduced to $8,276.61, since the JTB exceeded their contractual powers by excessively fining Vinco in violation of the CBA. Section 13.5 of the CBA, which is clear and unambiguous, contractually authorizes the

JTB to award no more than $1,000 in fines for each violation. Stelmasek claimed that the grand total of damages due was $4,276.61. Thus, the total amount of the award should not have exceeded a total of $8,276.61 which represents the total damages claimed due in the amount of $4,276.61 plus $4,000 (based upon a fine of $1,000 for each violation alleged by Stelmasek). However, Vinco urges this Honorable court to vacate the award in its entirety since the JTB clearly exceeded their powers, dispensed their own industrial brand of injustice and issued an award which does not draw its essence from the CBA.

### A. VINCO'S DUE PROCESS RIGHTS WERE VIOLATED

Proceeding with the hearing against Vinco in its absence and/or failing to allow Vinco to appear before the JTB "violates the fundamental public policy of ensuring due process in legal disputes, whether they be in the federal courts or in alternative systems of dispute resolution. While arbitration proceedings need not emulate the judicial process, basic notions of fairness must be respected in order to facilitate the orderly and peaceful resolution of labor-management disputes... If there is no guarantee of basic fairness in the dispute resolution procedure for a party who has in good faith attempted to abide by that procedure, then Union and management will suffer alike." Chicago Truck Drivers, Helpers And Warehouse Union v. Denton Cartage Co., 648 F. Supp. 1009, 1012 (N.D. Ill. 1986). See also Local 727, Laborers' International Union of North America v. MacNab, 1999 WL 300283 (N.D. Ill. 1999)(Court vacated arbitration award and remanded dispute back to arbitration board with instructions to conduct an adversarial hearing because employer averred that it did not receive notice of the grievance.)(Opinion attached hereto as Exhibit A).

As Judge Charles Kocoras aptly stated in Local 727, Laborers' International Union of North America v. MacNab, 1999 WL 300283 (N.D. Ill. 1999), "we refuse to simply rubber stamp the decision of an arbitration board if one of the parties to the proceedings was never

9

advised of the hearing or the entry of judgment against it. To do so would pervert basic notions of fairness and due process." As in MacNab, basic notions of fairness and due process would be perverted by enforcing the award and thereby preventing Vinco from presenting its defense especially since the JTB Rules require notice and an opportunity to present a defense.

The written Rules and Regulations of the JTB state in Paragraph 3 that "When a written Complaint/charge is received by the JTB, the Respondent *shall be advised* that a complaint/charge has been filed with the JTB and will be instructed to appear at the next meeting of the JTB. DSOMF at ¶12(a). The JTB Rules further mandate that "the Secretary-Treasurer *shall insure* that each party is able to present all pertinent information, *and that each side has the opportunity to question the other*." DSOMF at ¶12(b).

Vinco did not receive notice of the charges or that the hearing was scheduled on January 17, 2008. DSOMF at ¶¶ 24, 35 and 47. Anderson admitted that Vinco told him that they did not receive notice. DSOMF at ¶47 and Exhibit 3 (pp.24-25) attached thereto.

The record also shows that the Union received the June 3, 2008 Return Receipt for the Certified Mailing sent to Vinco, which contained the charges and notice of the hearing set for January 17, 2008, back in its office 3 days *before* the hearing on January 14, 2008 with a notation that Vinco moved. DSOMF at ¶¶24-25. Although Vinco moved, its telephone number remained the same. DSOMF at ¶32. Anderson did not attempt to call Vinco by telephone after his office was notified that Vinco did not receive the certified mailing. DSOMF at ¶26. In spite of being informed that Vinco moved and failing to call Vinco before the January 17, 2008 hearing, the Union, including Anderson, chose to proceed with the hearing in Vinco's absence and thereby not only violated fundamental notions of fairness and due process but also abdicated its obligations to ensure that Vinco, as a Respondent to charges, was advised of the hearing and provided with the opportunity to present its defense and question its opposition.

The unwritten rules of the JTB also show that fairness and due process requires the JTB Award to be vacated and the dispute remanded to the JTB. Anderson admitted that an employer can appeal from a decision issued by the JTB by submitting a request to Anderson. DSOMF at ¶13. The request may be verbal but Anderson prefers it to be written. DSOMF at ¶13. In fact, an award in the amount of $595,413.56 was entered against Tricor Carpentry by the JTB, who failed to appear at its hearing on the same day the JTB fined Vinco the outrageous sum of $305,949.86. (DSOMF at ¶14; Reply to Counterclaim at ¶9: Doc. 13). Anderson allowed Tricor Carpentry to appeal and the JTB significantly reduced the award to $3,588.57 for money owed for an employee and to $10,000 for money owed to the Union which was held in abeyance for one year and provided that all job reports were submitted by March 14, 2008. DSOMF at ¶16.

Vinco immediately called Anderson when it received notice of the award on January 25, 2008. DSOMF at ¶47. Anderson admits that Vinco told him they had not received notice. Yet, Anderson demanded $50,000 from Vinco in order to get Vinco back before the JTB. DSOMF at ¶48. Vinco did not and does not have $50,000. DSOMF at ¶49. The Union's conduct and JTB unwritten policy demonstrates that the Union and JTB do not consider all awards issued by the JTB as final and binding. Vinco should have been allowed to present its defense to the JTB but Anderson refused to so allow it.

As a result, basic notions of fairness and due process require that the Award be vacated and the dispute be remanded to the JTB. In the event this Honorable Court disagrees, Vinco submits in the alternative that the Award be reduced to $8,276.61 as set forth below.

**B. THE JTB EXCEEDED ITS CONTRACTUAL AUTHORITY AND THE AWARD FAILS TO DRAW ITS ESSENCE FROM THE CBA.**

Vinco recognizes the general principle that "[j]udicial review of a labor arbitration award is very limited." <u>Williams v. Romano Brothers Beverage Co</u>., 939 F.2d 505, 507 (7th Cir. 1991).

11

However courts do not give the arbitrators complete rule over the parties.  To this extent, the United States Supreme Court has stated:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.  He may, of course, look for guidance from any sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.  When the arbitrator's words manifest an infidelity to the obligation, courts have no choice but to refuse enforcement of the award.

United Steelworkers of America v. Enterprises Wheel and Car Corp., 363 U.S. 593, 597 (1960) (emphasis added).

Consistent with the Supreme Court's statement pertaining to the review of labor arbitration awards, the Seventh Circuit has declared that it will enforce an arbitrator's award only if the award draws its essence from the collective bargaining agreement.  See Ethyl Corporation v. United Steelworkers of America, 768 F.2d 180, 184 (7th Cir. 1985), cert. den. 475 U.S. 1010 (1986).  See also, Romano Brothers, 939 F.2d at 507 (This circuit will uphold awards provided that the arbitrator  attempted to interpret the collective bargaining agreement rather than to apply his own ideas of right and wrong) (citation omitted).  Since "arbitration is a matter of contract," United Steelworkers v. Warrior & Gulf NavigationCo., 363 U.S. 574, 582 (1960), an arbitrator's award must "draw[ ] its essence from the collective bargaining agreement." and the arbitrator is not free merely to dispense his own brand of industrial justice," Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).  "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award," Id. (Emphasis added).

Additionally, when it is clear that the arbitrator "must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference either), the arbitrator has failed to draw the award from the essence of the

collective bargaining agreement." Ethyl Corp. v. United Steelworkers of America, 768 F.2d 180 184-85 (7th Cir. 1985) Cert. den. 475 U.S. 1010 (1986).  (Emphasis in original) (Citation omitted).

"[T]he paramount point to be remembered in labor arbitration is that the power and authority of an arbitrator is totally derived from the collective bargaining agreement and that he violates his obligation to the parties if he substitutes 'his own brand of industrial justice' for what has been agreed to by the parties in that contract".  See Georgia-Pacific Corp. v. Local 27, 864 F.2d 940, 945 (1st Cir. 1988), quoting United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. at 597.

James Stelmasek charged Vinco with violating 4 sections of the CBA. DSOMF at ¶20. Stelmasek claimed that Vinco owed a grand total of $4,276.61 in wages and benefits. DSOMF at ¶21.  Vinco and the Union have contractually authorized the JTB to assess as a fine no more than $1,000 for each violation of the Collective Bargaining Agreement ("CBA") as expressly set forth in Section 13.5 thereof. DSOMF at ¶11(d).  Thus, the highest total amount of fines allowed under the CBA is a total of $4,000 ($1,000 per violation).  Yet, the JTB awarded a total of $305,949.86. (Reply to Counterclaim at ¶9: Doc. 13).  The JTB clearly exceeded the powers given to them under the CBA and the award should be vacated in its entirety or, at the very least reduced to $8,276.61, since the JTB dispensed their own brand of industrial justice and the Award does not thereby draw its essence from the CBA.

## III.
## CONCLUSION

In light of the foregoing law and argument, Plaintiff/Counter-Defendant, Vinco Painting, Inc. moves this Honorable Court to:

A. Grant its Motion for Summary Judgment in its favor and against Plaintiff on Plaintiff's Complaint and on Vinco's Counterclaim,

B. Vacate the JTB Award and remand the dispute to the JTB; or

C. If the Court does not vacate the Award and remand the dispute, vacate the Award in its entirety or, at the very least, reduce the award to $8,276.61; and

D. Award Vinco Painting, Inc. such other relief deemed just and equitable.

    Respectfully submitted,

    VINCO PAINTING, INC.

    By:   /s/ Joseph P. Berglund

Attorneys For Vinco Painting, Inc.
Joseph P. Berglund
BERGLUND & MASTNY, P.C.
900 Jorie Boulevard, Suite 122
Oak Brook, Illinois 60523-2229
(630) 990-0234

J:\C-Drive\WPDOCS\Vinco Painting\PDC 30 JTB Award\memoinsupportofmosjt.wpd