**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Painters District Council No. 30,

               Plaintiff/Counterdefendant,

    v.

Vinco Painting Inc.,

               Defendant/Counterplaintiff.

Case No. 08-cv-1163
Judge Conlon
Magistrate Judge Ashman

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Painters District Council No. 30 (the "Union") respectfully submits the following response to Defendant's Motion for Summary Judgment. Defendant has not established that it is entitled to judgment as a matter of law, and this Court should deny its motion. Disputed factual issues prevent the entry of summary judgment on Defendant's asserted ground that it lacked notice of the arbitration hearing; and even if it did lack notice of the hearing, the undisputed facts show that Defendant nonetheless received the process it was due. Finally, the undisputed facts plainly establish that the Joint Trade Board (the "JTB") was engaged straightforwardly in interpreting the collective-bargaining agreement when it computed the amount of Defendant's fine for its contractual violations, relying upon no authority beyond the collective bargaining agreement (the "CBA") itself. Defendant's motion for summary judgment must be denied.

**I.  A Material Factual Dispute Exists as to Whether Vinco**
   **Received Actual Notice of the Arbitration Hearing.**

Disputed factual issues prevent the entry of summary judgment on the first ground cited by Defendant in support of its motion: that because it lacked notice of the JTB hearing, it was denied due process. Where genuine issues exist as to any material fact, then summary

judgment is inappropriate. *Dreher v. Sielaff*, 636 F.2d 1141, 1143-44 (7th Cir. 1980) (vacating entry of summary judgment where certain material facts were in dispute). In assessing whether a factual dispute exists, the Court must construe all facts in the light most favorable to and draw all inferences in favor of the non-movant. *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (finding genuine issue of fact preventing summary judgment); *Carter v. Williams*, 361 F.2d 189, 193 (7th Cir. 1966) ("If, upon the proofs adduced in support of a motion for summary judgment, any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied"). In the present case, factual disputes exist as to whether Defendant received notice of the JTB hearing, and summary judgment premised on its claim *not* to have received notice is inappropriate.

Specifically, there is no dispute that the Union mailed out two separate notices of the charges and hearing. The postal service returned the first, sent by certified mail, to the Union about two weeks after the Union had mailed it. But there is no dispute that the second, sent by regular first-class mail, was *never* returned. (Pl. SMF ¶ 22.) Given that the Union mailed the letter and never received it back, the court should presume that Defendant received it. *See, e.g., Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir. 1993); *Tucker v. Secretary of Health and Human Servs.*, 684 F. Supp. 556, 558 (N.D. Ind. 1988), citing *McPartlin v. Commissioner of Internal Revenue Serv.*, 653 F.2d 1185 (7th Cir. 1981) (all finding presumption that correspondence deposited in mail was delivered and received). And while the address on the letter, the most recent address provided by Vinco, was apparently incorrect, Defendant received first-class mail sent to that same address just a few weeks later. (Def. SMF ¶ 41.) Given that the Union never received its January 7 first-class mailing back, it is reasonable to draw the inference that it was ultimately delivered despite the incorrect address. Because this inference is reasonable, the Court must draw it in evaluating Defendant's summary judgment motion. *Ritchie*, 242 F.3d at 723. And because drawing this reasonable

inference casts doubt upon Defendant's claim that it never received notice of the hearing, that doubt must be resolved against Defendant for purposes of its motion. *Carter*, 361 F.2d at 193. That is, a genuine dispute exists as to whether Defendant received notice of the arbitration hearing by regular first-class mail. Because Defendant's motion for summary judgment on its counterclaim is premised upon a controverted factual assertion — that lack of notice of the arbitration proceedings prevented it from appearing and denied it due process — summary judgment is inappropriate, and Defendant's motion should be denied.

## II. Defendant Received the Process It Was Due.

Even assuming *arguendo* that Defendant received no notice of the arbitration hearing, its motion for summary judgment still must be denied. As Plaintiff has already argued in Part II-A of its summary judgment brief, it is undisputed that the only reason that the Union sent its January 7 notice of hearing to Vinco's old Ogallah Avenue address is that Vinco inexplicably failed for more than two months to notify the Union that it had moved. The Union fully satisfied its due process obligations to Vinco by mailing notice to the only address that Vinco had ever submitted.[1] Notably, despite documenting in its summary judgment materials how and why it moved to a new address, Vinco never contends or even implies that it *ever* notified the Union of its change of address prior to Vince Angelilli's January 25 conversation with Charles Anderson. As set forth in Plaintiff's summary judgment motion, Sections 9.8(a) and 14.2 of the collective-bargaining agreement obligated Defendant to notify the Union when it moved, an obligation Defendant failed to meet. (Pl. SMF at 32, 33; Pl. S.J. Brief at 10.) Defendant cannot now reasonably come to this Court seeking to benefit from its breach of the Agreement by having the JTB's award vacated.

---

[1] *See* cases cited in Plaintiffs' discussion of this issue at pages 9-10 of its summary judgment brief: *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1996); *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir. 1991); *Thongphilack v. Gonzales*, 506 F.3d 1207, 1208 (10th Cir. 2007); *Theede v. United States Dep't of Labor*, 172 F.3d 1262, 1267-68 (10th Cir. 1999).

Even if one does not construct the CBA as requiring Vinco to report its new address promptly to the Union, Vinco nonetheless is complaining in its summary judgment motion about the fruits of its own negligence. The Union followed procedures reasonably calculated to effect notice. But Vinco's failure to be contacted resulted only from its desire not to be contacted, manifested in its failure to notify the Union or apparently even the Post Office[2] of its new address for well over two months after it moved, *despite* having learned of its eviction and seeking a new address in advance of November 6. (Def. SMF ¶ 30, 31.) Defendant may well have had its reasons for not informing the world of its whereabouts, but having been so lackadaisical about providing notice for well over two months after moving, Defendant simply cannot now be heard to complain that the Union did not go the extra mile beyond its regular notice procedures to track Vinco down and notify it of the hearing. If Vinco had been diligent in notifying the Union or even the Post Office of its new address, or even just a bit less dilatory, the Union's January 7 certified mail would have been delivered. It cannot be the Union's responsibility to make weekly inquiries of each of its signatory contractors to make certain that they have not moved; on the contrary, the Union's expectation that its signatory contractors will keep the Union up to date with their current address is sensible and wholly reasonable. Because Defendant itself was responsible for the fact that the Union's certified mailing of January 7 did not arrive prior to the hearing, the Union's procedure of sending notice by both regular and certified mail to the only address ever provided by the Employer fully satisfied its notice obligations to the Defendant and afforded Defendant the process it was due under both the CBA and the JTB's procedures. Defendant's summary judgment motion asserting a violation of its due process rights must be denied.

---

[2] If Vinco replies that it *did* notify the Postal Service of its change of address prior to January 7, that further bolsters the presumption that the Union's notice sent by regular first-class mail on January 7 *was* delivered.

Vinco's emphasis in its brief on the obligations of the JTB's Secretary-Treasurer to "insure" each party's opportunity to present evidence at the hearing is a red herring. The section of the JTB's procedures quoted by Defendant deals with hearing procedure. (Def. SMF ¶ 12(b).) The quoted section makes all evidence admissible and permits all members of the JTB to question the parties, and also charges the Secretary-Treasurer (and the Chairperson) with ensuring that *each* party has the opportunity *during the hearing* to present its case. (Def. SMF at ¶ 12(b).) It places no affirmative obligation on the Secretary-Treasurer to "insure" a party's attendance at hearing. In any number of circumstances an employer may be unwilling or uninterested in attending, and the Secretary-Treasurer's failure to "insure" its attendance would not thereby invalidate the proceeding. In the present case Anderson, who testified in his deposition that he did not *personally* know when the hearing began that the copy of the notice of hearing sent by certified mail had been returned to the Union, had no reason at the time to believe that Vinco's failure to appear reflected anything other than its choice. (Def. MSJ Exh. 3 at 16.)

Defendant's complaint in its brief that another employer, Tri-Cor Carpentry, received a second opportunity to present its case before the JTB that Defendant was denied, is misplaced. In fact, Defendant and Tri-Cor both received exactly the same opportunities to appear before the JTB on exactly the same terms; the only difference is that Tri-Cor took advantage of that opportunity while Defendant did not. Tri-Cor, just like Defendant, was asked to put its request for reconsideration in writing and to tender a check for a significant portion of the JTB Award ($75,000) that would not be cashed. (Pl. Suppl. SMF ¶ 4.) But *unlike* Defendant, Tri-Cor met both of these conditions. (Pl. Suppl. SMF ¶ 4.) The fact that the JTB reduced the award after Tri-Cor appeared before the Committee shows nothing more than that Vinco forewent an opportunity to make its case before the JTB.

Vinco claims that "Anderson refused to … allow it" to "present its defense to the JTB," (Def. Br. at 11), but the undisputed facts make clear that this was not the case. Anderson

communicated to Angelilli the JTB's policy of requiring the tendering of a check, akin to posting a bond to stay enforcement of a judgment pending appeal. Anderson told Angelilli that the check would not be cashed, making Angelilli's claim that he "did not have $50,000" irrelevant. The JTB is empowered to adopt rules and procedures under the CBA, and requiring the tendering of a check before reconsidering an award is a reasonable measure to encourage enforcement of the JTB's awards and discourage trivial requests for reconsideration. Vinco, which never made any attempt to come to the JTB's meeting and seek a hearing, has taken exactly the same approach to pursuing its appeal before the JTB as it did to notifying others of its change of address: a lackadaisical one. Because Vinco never pursued its case before the JTB, it cannot claim that it was denied due process.

Finally, Vinco's claim that "the Union and JTB do not consider all awards issued by the JTB as final and binding" is plainly wrong. (Def. Br. at 11.) When a court issues a judgment, that judgment is final and binding despite a litigant's right to seek reconsideration or to appeal. The JTB's award is no different, and Defendant has identified no reason to think that it is. If Defendant were correct that the JTB's discretion to re-open the record or to reconsider awards deprives those awards of finality, then none of its awards would *ever* be "final and binding." But that would clearly thwart the intention of the parties plainly and unequivocally expressed in the CBA: "*Any* decision of the Joint Trade Board shall be final and binding upon every party and any signatory to this Agreement." (Pl. MSJ. Exh. 2 at Sec. 13.3, emphasis added.) The JTB's award against Vinco, like *all* of its awards, was final and binding when made, and this Court should confirm it. Defendant's motion for summary judgment on its counterclaim should be denied.

### III. The JTB's Award Draws Its Essence from the Collective Bargaining Agreement.

Defendant's argument that the JTB's award fails to draw its essence from the CBA because it misinterpreted the contractual cap on fines is faulty, ignoring the meaning of the

very cases that Defendant cites in its brief. It is clear that the JTB *was* engaged in interpretation of the CBA when it assessed Defendant $500 per violation; Defendant's complaint is merely that the JTB misinterpreted the CBA. But an arbitrator who *mis*interprets a contract is still interpreting it, and this Court should not vacate the award simply because Defendant, or even the Court, disagrees with the JTB's interpretation of the contract.

Defendant itself inadvertently acknowledges in its brief the very distinction that the JTB made in interpreting Section 13.5 of the CBA, stating, "James Stelmasek charged Vinco with violating 4 *sections* of the CBA. Vinco and the Union have contractually authorized the JTB to assess as a fine no more than $1,000 for *each violation* of the Collective Bargaining Agreement…" (Def. Br. at 13.) That is, the contractual cap applies to each violation of the CBA. But the CBA is divided into sections; every violation of the CBA is automatically a violation of *some section* of the CBA. If a contractor violated the same section of the CBA 1,000 times, it would be a reasonable interpretation of Section 13.5 of the CBA to consider the contractor to have committed 1,000 violations, and not just one. James Stelmasek may have correctly identified the number of CBA *sections* violated at four; this does not mean that Defendant violated those four sections only one time each. In counting the number of violations demonstrated by the evidence presented at hearing and assessing half of the contractual cap, or $500, in fines for each one of those violations, the JTB was straightforwardly interpreting and applying the terms of the CBA. The fact that Defendant arrives at a different interpretation is not a reason to vacate the Award.

Defendant's own cases stand for just this proposition. In particular the *Ethyl* case discusses this principle at some length, noting that even if "the arbitrator may have been wrong, maybe even clearly wrong," that "does not show that he was doing something other than interpreting the contract." *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 184 (7th Cir. 1985). The court, which reversed the district court's vacating of an arbitration award, concluded its extended discussion as follows:

We have gone on at such length because we want to make clear that we take seriously the twin propositions that (1) the reviewing court's function (whether the district court's, or this court's) is at an end when it concludes that what the arbitrator did was interpretation of the contract, and (2) when in doubt the court must find that it was interpretation. We do not want to be plagued by cases in which companies or unions refuse to comply with arbitration awards merely because they think the arbitrator clearly misinterpreted the collective bargaining agreement. If parties to collective bargaining contracts are unhappy with arbitration awards they can bargain for a different method of selecting arbitrators, or for panels of arbitrators, trial or appellate.

*Ethyl Corp.*, 768 F.2d at 184. In the present case, it is clear that what the JTB did in assessing fines of $500 per violation was interpretation of the contract. Any doubts this Court harbors as to whether that is so should be resolved in favor of finding that the JTB was interpreting the Agreement. *Ethyl Corp.*, 768 F.2d at 187. The instant case is precisely the kind of case with which the Seventh Circuit warned us twenty-three years ago it did not wish to be plagued: Defendant has refused to comply with the JTB's award merely because it thinks the JTB clearly misinterpreted the CBA. Defendant has failed to establish any entitlement as a matter of law to a judgment vacating the JTB Award. On the contrary, the Award, which draws its essence from the CBA, should be confirmed. This Court should deny Defendant's motion for summary judgment.

## CONCLUSION

Defendant is not entitled to summary judgment. Because the parties dispute whether Defendant actually received notice of the JTB hearing by first-class mail, summary judgment on the basis of Defendant's assertion that it lacked notice and was denied due process is inappropriate. Even if one concludes that Defendant did not receive notice, the Union's regular notice procedures failed to result in notice to Defendant as a result of Defendant's own failure to notify the Union of its new address for over two months after it moved. Because its own violation of the CBA led to any failure to receive notice, Defendant may not now benefit from its breach of the CBA. Defendant received the process it was due, and its mo-

tion for summary judgment must be denied. Finally, Defendant's contention that the JTB's award fails to draw its essence from the CBA is simply wrong and fails to draw the lessons of the well-established precedents cited in its own brief. Alleging that the JTB misinterpreted the agreement and alleging that it failed to base its award upon any interpretation of the agreement are two different things. Defendant has done the former, offering no legitimate basis for vacating the Award.

For all the foregoing reasons, the Union respectfully requests this Court to enter judgment against Defendant and in favor of Plaintiff, entering an order confirming the Arbitration Award of the Joint Trade Board against Defendant Vinco Painting, Inc., dismissing Defendant's Counterclaim, and awarding the Union its reasonable attorneys' fees and costs.

Respectfully submitted,

**PAINTERS DISTRICT COUNCIL NO. 30**

By:    s/ David Huffman-Gottschling
       One of its attorneys

David Huffman-Gottschling
ARDC No. 6269976
Jacobs, Burns, Orlove, Stanton and Hernandez
122 S. Michigan Ave., Ste. 1720
Chicago, Illinois 60603
(312) 372-1646

**CERTIFICATE OF SERVICE**

I, David Huffman-Gottschling, an attorney, certify that I caused a copy of the foregoing document to be served electronically upon the person below by filing it using the ECF system on July 8, 2008:

Joseph P. Berglund
Berglund & Mastny, P.C.
1010 Jorie Blvd., Ste. 370
Oak Brook, IL 60523-4467

s/ David Huffman-Gottschling
David Huffman-Gottschling