UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Painters District Council No. 30,<br><br>   Plaintiff/Counterdefendant,<br><br>v.<br><br>Vinco Painting Inc.,<br><br>   Defendant/Counterplaintiff. | Case No. 08-cv-1163<br>Judge Conlon<br>Magistrate Judge Ashman |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
LR56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

*Response to Defendant's Statement of Facts*

1. On February 26, 2008, Plaintiff, Painters District Council No. 30 ("Union"), filed this action in its attempt to enforce an Award issued by the Painters District Council No. 30 Joint Trade Board ("JTB").

**RESPONSE:** Agreed.

2. On March 24, 2008, Vinco filed its Answer, Affirmative Defenses and Counter-claim to vacate the Award.

**RESPONSE:** Agreed.

3. Jurisdiction exists over the Union's Complaint and Vinco's Counterclaim pursuant to Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) and 28 U.S.C. § 1331.

**RESPONSE:** Agreed.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 185(c).

**RESPONSE:** Agreed.

5.  Vinco is an Illinois corporation with its principal place of business in this district and is engaged in the painting industry.

**RESPONSE:** Agreed.

6.  Vince Angelilli is President of Vinco and runs Vinco's day-to-day operations. Denise Angelilli is Vince Angelilli's wife and assists in operating Vinco. There are no other individuals that assist in operating Vinco.

**RESPONSE:** Agreed.

7.  The Union is a labor organization within the meaning of 29 U.S.C. § 152(5) with its place of business in Aurora, Illinois.

**RESPONSE:** Agreed.

8.  Charles Anderson ("Anderson") is Secretary-Treasurer of the Union which is the highest elected position. Anderson is also Secretary-Treasurer of the Painters District Council No. 30 Joint Trade Board ("JTB") and serves on the JTB at every meeting.

**RESPONSE:** Agreed.

9.  James Stelmasek ("Stelmasek") has worked for the Union for approximately 17 years as a business representaive [*sic*]. Stelmasek has reported to Anderson for approximately 15 years.

**RESPONSE:** Agreed.

10.  Vinco has been signatory to a Collective Bargaining Agreement ("CBA") with the Union since August 30, 2007. A genuine copy of the CBA is appended as Deposition Ex. 7 to attached Exhibit 3.

**RESPONSE:** Agreed.

11. The pertinent provisions of the CBA provide:

a) Section 13.1. The Union and the Association agree to establish and maintain a Joint Trade Board consisting twelve (12) members with six (6) members and an alternate appointed by each party. All disputes and grievances shall be referred to the Joint Trade Board, unless as otherwise expressly provided for under this Agreement.

**RESPONSE:** Agreed.

b) Section 13.2. The Joint Trade Board shall have the right to establish reasonable rules and regulations for its operation and such rules and regulations shall be binding upon all the parties.

**RESPONSE:** Agreed.

c) Section 13.4 (a). The officers of the Joint Trade Board shall be a Chairman and a Secretary-Treasurer. One officer shall be a representative of the Union and the other officer shall be a representative of the Association.

**RESPONSE:** Agreed.

d) Section 13.5. If the Joint Trade Board finds that an Employer violated this Agreement, the Joint Trade Board is authorized to fashion, in its sole discretion, all appropriate remedies, including but not limited to, awarding actual damages to the aggrieved individual or entity, plus fines not to exceed one thousand dollars ($1,000.00) per violation, and assessing liquidated damages, interest, costs, reasonable attorneys' fees, administrative expenses, and auditing fees incurred by the Joint Trade Board....

**RESPONSE:** Agreed.

12. The pertinent portions of the Joint Trade Board Rules and Regulations provide:

a) 3. The JTB shall hear and decide all complaints/charges and disputes arising under the Collective Bargaining Agreement, and the JTB's decision shall be binding on all parties. The procedures are:

When a written complaint/charge is received by the JTB, the Respondent shall be advised that a complaint/charge has been filed with the JTB and will be instructed to appear at the next meeting of the JTB. The written complaint/charge shall contain a concise statement of facts which constitute the complaint and shall list the sections of the Collective Bargaining Agreement which are alleged to be violated.

**RESPONSE:** Agreed.

b) Paragraph 4(b). All evidence is admissible. The JTB will determine the weight and relevance of the evidence. The Chairperson and the Secretary-Treasurer shall insure that each party is able to present all pertinent information, and that each side has the opportunity to question the other. JTB members may question the parties.

**RESPONSE:** Agreed.

13. An employer can appeal from a decision of the JTB by submitting a request to Anderson. Anderson prefers the requests to be written.

**RESPONSE:** Agreed.

14. On January 17, 2008, the JTB heard the Union's grievance against Tricor Carpentery [*sic*] in its absence (See Dep. Ex. 3 appended to attached Exhibit 3). The JTB ordered Tricor Carpentry to pay $246,413.56 to Jose Vargas and to pay the Union $349,000.00 by January 31, 2008.

**RESPONSE:** Agreed.

15. Anderson allowed Tricor Carpentry to appeal the award.

**RESPONSE:** Plaintiff disagrees, and states further that the JTB allowed Tri-cor Carptentry to appeal the award. (Supplemental Declaration of Charles Anderson, attached hereto as Exh. 1, at ¶ 2, 5.)

16. Tricor Carpentry appeared before the JTB on March 13, 2008 on its appeal. The JTB re-opened the hearing and reduced the award to $3,588.57 for money owed for an employee and reduced the fine due the Union to $10,000 which was held in abeyance for 12 months provided that all job reports are submitted by March 14, 2008.

**RESPONSE:** Agreed.

17. On December 28, Jim Stelmasek filed a written grievance (charges) against Vinco with Charles Anderson, Secretary-Treasurer of the Union. A copy of Stelmasek's grievance is attached hereto as Exhibit 7.

**RESPONSE:** Agreed.

18. As shown toward the upper left-hand portion of the first page of the grievance, reference is made to Vince Angililli's phone 773-507-7400 and does not contain any address for Vinco Painting.

**RESPONSE:** Agreed.

19. Stelmasek did not forward or mail his grievance (charges) to Vinco.

**RESPONSE:** Agreed.

20. Stelmasek alleged that Vinco violated four sections of the CBA. The four sections of the CBA which were allegedly violated by Vinco are:

   1) <u>Article 4, Union Security</u>: Dues Check off and Organizing and Defense Fund, Sec. 4.2. Vinco did not pay into dues check off and organizing and defense fund.

   2) <u>Article 8, Wage Rates</u>: Overtime Issues, Sec. 8.6. Vinco didn't pay overtime allegedly.

   3) <u>Payment of Wages and Check stub</u>, Sec. 8.7(a) and (b). Vinco did not pay some guys and did not include detachable check stubs.

   4) <u>Article 9, Benefit Funds</u>: Monthly Reporting, Sec. 9.3(b). Vinco was not making or submitting monthly reports to the Union.

**RESPONSE:** Agreed.

21. Stelmasek claimed that Vinco owed a grand total of $4,276.61 in wages and benefits.

**RESPONSE:** Agreed.

22. The Union asserts that Vinco received notice of the grievance "charges" filed with the JTB for violations of Articles 4, 8 and 9 of the CBA, along with notice that a hearing before the JTB was scheduled for January 17, 2008. Vinco denies these allegations.

**RESPONSE:** Agreed.

23. On January 3, 2008, Charles Anderson purportedly sent a letter to Vinco at 6649 Ogallah, Chicago, Illinois 60631 via Certified and First Class Mail, which contained Jim Stelmacek's [*sic*] grievance and notice of the January 17, 2008 hearing scheduled before the JTB.

**RESPONSE:** Plaintiff agrees with the factual assertions in this paragraph but does not agree to the Defendant's use of the term "purportedly," which is an argumentative term, not a factual one.

24. The Certified Mailing was returned to Charles Anderson with a notation "Moved Left No Address".

**RESPONSE:** Plaintiff disagrees, and states that the Certified Mailing was returned to the *Union* with a notation "Moved Left No Address." (Pl. SMF at ¶ 22.)

25. The tracking information obtained from the United States Postal Service and produced by the Union in this lawsuit of the Certified Mailing shows that the Union received the Certified Mailing back in its Aurora office on January 14, 2008 at 11:27 a.m. (which is three days before the January 17, 2008 hearing).

**RESPONSE:** Agreed.

26. Charles Anderson did not call Vinco to notify it of the JTB hearing.

**RESPONSE:** Agreed.

27. Even though the Union received the certified Mailing back in its Aurora office on January 14, 2008, which showed that Vinco did not receive it since it moved and left no address, the Union proceeded with the hearing before the JTB on January 17, 2008

**RESPONSE:** Plaintiff agrees with the factual assertions in this paragraph: that the certified mailing was received in the Union's office on January 14, 2008 and that the hearing before

6

the JTB proceeded on January 17, 2008. Plaintiff objects to the use of the phrase "even though," which is argumentative and not factual.

28. When Vinco became signatory to the CBA, Vinco's office was located at 6649 N. Ogallah, Chicago, Illinois 60631 and Vince Angelilli reported this address to the Union at this time. When Vinco became signatory, Vince Angelilli also informed it that the phone number for Vinco and his cell phone was (773) 507-7400.

**RESPONSE:** Agreed.

29. Vinco's office was not only located at 6649 N. Ogallah, Chicago, Illinois, but Vince and Denise Angelilli also resided at this location with their two children, who are seven and nine years old. Vince and Denise Angelilli leased a single family home from John Thompson at this location.

**RESPONSE:** Agreed, on information and belief.

30. In or about August, 2007, Vince and Denise Angelilli were involved in a dispute with John Thompson. As a result, John Thompson served them with written notice terminating the lease and to vacate 6649 N. Ogallah, Chicago, Illinois by October 1, 2007.

**RESPONSE:** Agreed, on information and belief.

31. After receiving written notice from John Thompson, Vince and Denise Angelilli made plans to move to 4637 N. Forestview Avenue, Chicago, Illinois 60650. On or about November 6, 2007, they moved to 4637 N. Forestview Avenue, Chicago, Illinois 60650. Since Denise and Vince Angelilli moved their residence, the office of Vinco also changed on November 6, 2007 to 4637 N. Forestview Avenue, Chicago, Illinois 60650.

**RESPONSE:** Agreed, on information and belief.

32. Although Vinco's office address changed on November 6, 2007, its telephone number remained the same.

**RESPONSE:** Agreed, on information and belief.

33. Denise and Vince Angelilli have reviewed a letter written by Charles E. Anderson, which is dated January 3, 2008, that states Vinco Painting was instructed to appear before the Joint Trade Board ("JTB") on January 17, 2008, at 9:00 a.m. and also enclosed a copy of charges filed against Vinco by James Stelmasek that was produced by the Union in the lawsuit.

**RESPONSE:** Agreed, on information and belief.

34. Anderson's January 3, 2008, letter indicates directly above the saluation [*sic*] on the first page, that it was sent Certified Return Receipt Mail and First Class Mail.

**RESPONSE:** Agreed.

35. Vinco did not receive Anderson's January 3, 2008, letter that was sent by Certified Mail or by First Class Mail.

**RESPONSE:** Plaintiff disagrees. (Pl. MSJ Exh. 2, Decl. of Charles Anderson, at ¶ 15.)

36. The Union's grievance against Vinco proceeded to hearing on January 17, 2008. Those present representing the Association ("FCA of Illinois") were: Joe Maring, Michael LeGood and Rick Vandegraft. Those present representing the Union were: Charles E. Anderson, Aaron Anderson, Brian Muscat, Mark Guethle and Todd Dotson.

**RESPONSE:** Agreed.

37. Vinco was not present at the JTB hearing.

**RESPONSE:** Agreed.

38. The JTB found Vinco guilty and ordered as follows:

8

> Vinco is to pay Loren Deland $38,591.82 ($500.00 per day for 73 days for non-payment of overtime plus actual overtime 11-5-07 through 1-17-08), pay William Medina $40,092.95 ($500.00 per day for 79 days for non-payment of overtime plus actual overtime 10-30-07 through 1-17-08), pay Jesus Mota $32,048.70 ($500.00 per day for 63 days for non-payment of overtime plus actual overtime 11-15-07 through 1-17-08), pay Jeremy Weise $47,216.39 ($500.00 per day for 94 days for non-payment of overtime plus actual overtime 10-15-07 through 1-17-08). In addition, Vinco is to pay Painters District Council 30 a total of $148,000.00 for violations of the Collective Bargaining Agreement ($500.00 per day for 94 days of no overtime permit, 101 days of not registering job locations and 101 days for not providing check stubs to the employees). Mr. Angelilli will be informed that all payments are to be sent to the District council before January 31, 2008."

**RESPONSE:** Agreed.

39. The JTB did not issue a separate Award.

**RESPONSE:** Agreed.

40. On January 22, 2008, Charles Anderson purportedly sent by Certified and First Class Mail, excerpts of the Minutes from the January 17, 2008, JTB hearing, which contained the JTB decision.

**RESPONSE:** Plaintiff agrees with the factual assertions in this paragraph but does not agree to the Defendant's use of the term "purportedly," which is an argumentative term, not a factual one.

41. Charles Anderson sent excerpts of the Minutes to Vinco at 6649 Ogallah, Chicago, Illinois 60631. The Certified mailing was not received by Vinco. The Certified mailing shows that it was forwarded to Vinco's address at 4637 N. Forestview, Chicago, but was unclaimed.

**RESPONSE:** Agreed.

42. The First Class Mailing was forwarded to Vinco's address at 4637 N. Forestview, Chicago, on or about January 25, 2008.

**RESPONSE:** Agreed.

43. Vinco received the First Class Mailing on or about January 25, 2008.

**RESPONSE:** Agreed.

44. Anderson's January 22, 2008 letter states in pertinent part that the

> "the following is the excerpt from the minutes of Painters District Council 30's Joint Trade Board hearing involving your company. I am sure that you will find it self explanatory. The case of Vinco Painting was presented to the Board by Secretary-Treasurer Anderson. James Stelmasek, Director of Membership Servicing and Member Loren Deland were in attendance. Vince Angelilli of Vinco was absent. In accordance with the rules of the Joint Trade Board the hearing was held in his absence. The facts and testimony as they related to the charges were presented to the Board. After hearing the testimony the Board found Vinco guilty as charged and set forth the following decisions: Vinco is to pay Loren Deland $38,591.82 ($500.00 per day for 73 days for non-payment of overtime plus actual overtime 11-5-07 through 1-17-08), pay William Medina $40,092.95 ($500.00 per day for 79 days for non-payment of overtime plus actual overtime 10-30-07 through 1-17-08), pay Jesus Mota $32,048.70 ($500.00 per day for 63 days for non-payment of overtime plus actual overtime 11-15-07 through 1-17-08), pay Jeremy Weise $47,216.39 ($500.00 per day for 94 days for non-payment of overtime plus actual overtime 10-15-07 through 1-17-08). In addition, Vinco is to pay Painters District Council 30 a total of $148,000.00 for violations of the Collective Bargaining Agreement ($500.00 per day for 94 days of no overtime permit, 101 days of not registering job locations and 101 days for not providing check stubs to the employees). Mr. Angelilli will be informed that all payments are to be sent to the District council before January 31, 2008."

**RESPONSE:** Agreed.

45. The first time Vinco learned that the Union filed any charges against it was on or about January 25, 2008, when Vince and Denise Angelilli received Anderson's January 22, 2008 letter by First Class Mail.

**RESPONSE:** Plaintiff disagrees. (Pl. MSJ Exh. 2, Decl. of Charles Anderson, at ¶ 15.)

46. The first time Vinco learned that it was ordered to appear at a hearing before the JTB, was on or about January 25, 2008, when Vince and Denise Angelilli received Anderson's January 22, 2008 letter by First Class Mail.

**RESPONSE:** Plaintiff disagrees. (Pl. MSJ Exh. 2, Decl. of Charles Anderson, at ¶ 15.)

47. On the same day Vinco received Anderson's letter on January 25, 2008, Vince Angelilli called Anderson at the Union's offices. Denise Angelilli was present for this conversation. Vince Angelilli told Anderson that Vinco had not received prior notice of the JTB hearing.

**RESPONSE:** Agreed.

48. Charles Anderson told Vince Angelilli that he could get Vinco back before the JTB if Vinco gave him a check for $50,000.00. Vince AngelilliI [*sic*] told him that he did not have $50,000.00.

**RESPONSE:** Plaintiff disagrees. (Pl. MSJ Exh. 2, Decl. of Charles Anderson, at ¶ 23-24; Def. MSJ Exh. 3 at 29-31; Exh. 1 – Suppl. Anderson Decl. at ¶ 3.)

49. Vinco did not and does not have $50,000.00 to give to Charles Anderson.

**RESPONSE:** Plaintiff disagrees, and also disputes that this statement is material, insofar as Charles Anderson never demanded that Vinco pay him any money. (Pl. MSJ Exh. 2, Decl. of Charles Anderson, at ¶ 23-24; Def. MSJ Exh. 3 at 29-31; Exh. 1 – Suppl. Anderson Decl. at ¶ 3.)

50. On January 25, 2008, Denise Angelilli spoke with James Stelmasek ("Stelmasek"). Stelmasek told her to ignore the numbers in the JTB Award since they were outrageous. Stelmasek also told Denise Angelilli that he would fax amended claims to her.

**RESPONSE:** Plaintiff disagrees. (Def. MSJ Exh. 4 at 12-13.)

51. Stelmasek did fax amended claims to Denise Angelilli on January 25, 2008.

**RESPONSE:** Agreed.

52. On February 29, 2008, Denise Angelilli sent a letter to Charles Anderson by facsimile and again informed Charles Anderson that Vinco never received notice of the JTB

hearing. Denise Angelilli also requested Charles Anderson to provide her with the basis of any belief he may have had that Vinco received notice of the hearing. She received no response from Charles Anderson.

**RESPONSE:** Agreed.

*Statement of Additional Facts Requiring Denial of Summary Judgment*

1.  Whether or not an employer against which the JTB has issued an award may appear before the JTB to request reconsideration of that award is the decision of the JTB, and not exclusively of Charles Anderson. (Exh. 1 – Suppl. Anderson Decl. at ¶ 2.)

2.  Charles Anderson did not ask Vinco to pay him personally $50,000 as a precondition to the JTB reconsidering its Award against Vinco, or for any other reason. (Exh. 1 – Suppl. Anderson Decl. at ¶ 3.)

3.  No representative of Vinco ever told Charles Anderson that Vinco was unable to tender a check for $50,000 in order to appear before the JTB to seek reconsideration of its decision. (Exh. 1 – Suppl. Anderson Decl. at ¶ 4.)

4.   Before Tri-Cor appeared before the JTB in March, it was asked by the JTB to make a written request and to tender a check for $75,000, which would not be cashed. Tri-Cor met both of these conditions prior to the March hearing. (Exh. 1 – Suppl. Anderson Decl. at ¶ 5.)

Respectfully submitted,

  s/  David Huffman-Gottschling
One of Plaintiff's attorneys

David Huffman-Gottschling
Jacobs, Burns, Orlove, Stanton and Hernandez
122 S. Michigan Ave., Ste. 1720
Chicago, Illinois 60603
(312) 372-1646

## CERTIFICATE OF SERVICE

I, David Huffman-Gottschling, an attorney, certify that I caused a copy of the foregoing document to be served electronically upon the following person by filing it using the ECF system on July 8, 2008:

> Joseph P. Berglund
> Berglund & Mastny, P.C.
> 1010 Jorie Blvd., Ste. 370
> Oak Brook, IL 60523-4467

  s/  David Huffman-Gottschling
David Huffman-Gottschling

# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Painters District Council No. 30,

    Plaintiff/Counterdefendant,

v.

Vinco Painting Inc.,

    Defendant/Counterplaintiff.

Case No. 08-cv-1163
Judge Conlon
Magistrate Judge Ashman

### SUPPLEMENTAL DECLARATION OF CHARLES E. ANDERSON

I, Charles E. Anderson, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1. I previously gave a declaration in this matter, dated June 5, 2008, which I hereby incorporate by reference.

2. Whether or not an employer against which the JTB has issued an award may appear before the JTB to request reconsideration of that award is the decision of the JTB, and not exclusively my decision.

3. I did not ask Vinco to pay me $50,000 as a precondition to the JTB reconsidering its Award against Vinco, or for any other reason; I asked Vinco to tender to the Union a check for $50,000 that the Union would not cash prior to the hearing.

4. No representative of Vinco ever told me that Vinco was unable to tender a check for $50,000 to the JTB prior to its March 2008 meeting.

5. Before Tri-Cor Carpentry appeared before the JTB in March, it was asked by the JTB to submit its request in writing and to tender a check for $75,000, which would not be cashed. Tri-Cor met both of these conditions prior to the March hearing.

Executed on July 7, 2008.

                                                                 Charles E. Anderson