UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Painters District Council No. 30,

        Plaintiff/Counterdefendant,

v.

Vinco Painting Inc.,

        Defendant/Counterplaintiff.

Case No. 08-cv-1163
Judge Conlon
Magistrate Judge Ashman

**RESPONSE OF DEFENDANT TO PLAINTIFF'S LR56.1 STATEMENT
OF UNDISPUTED MATERIAL FACTS**

NOW COMES Defendant/Counterplaintiff, VINCO PAINTING, INC. ("Vinco") and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(b) submits its following Responses to the Statement of Undisputed Material Facts filed by Plaintiff/Counterdefendant, PAINTERS DISTRICT COUNCIL No. 30 ("Union"):

1. This is an action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking confirmation and enforcement of a labor arbitration award. (Defendant's Answer, submitted herewith as Exhibit 1, at ¶ 1.)[1]

    **RESPONSE:**     Undisputed

2. Plaintiff Painters District Council No. 30 (the "Union") is a labor organization affiliated with the International Union of Painters and Allied Trades. (Exh. 1 – Answer at ¶ 4.)

    **RESPONSE:**     Undisputed.

3. Defendant Vinco Painting Incorporated ("Vinco") is an Illinois corporation and an employer engaged in the construction painting industry. (Exh. 1 – Answer at ¶ 5.)

---

[1] Plaintiff withdraws its contention in the complaint that Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, provides an independent basis for federal jurisdiction in this case.

**RESPONSE: Undisputed.**

4. At all material times the Union and members of the FCA of Illinois, an employer association (the "Association"), as well as other employers, have been signatories to a collective bargaining agreement with effective dates of May 1, 2004 through April 20, 2008 (the "Agreement"). (Declaration of Charles E. Anderson, submitted herewith as Exhibit 2, at ¶ 4.)

**RESPONSE: Undisputed.**

5. Vinco is and has since August 30, 2007, been signatory to the collective bargaining agreement between the Union and members of the FCA of Illinois effective May 1, 2004, through April 20, 2008. (Defendant's Answers to Plaintiff's Requests for Admission, submitted herewith as Exhibit 3, at ¶ 6-8; Exh. 2 – Anderson Decl. at ¶ 5.)

**RESPONSE: Undisputed.**

6. From August 30, 2007, until at least November 6, 2007, Vinco maintained its offices at 6649 N. Ogallah Ave., Chicago, Illinois 60631. (Defendant's Answers to Plaintiff's First Set of Interrogatories, submitted herewith as Exhibit 4, at ¶ 3.)

**RESPONSE: Undisputed.**

7. Since November 6, 2007, Vinco's offices have been located at 4637 N. Forestview Ave., Chicago, Illinois 60650. (Exh. 4 – Def. Ans. to Interrogs. at ¶ 3.)

**RESPONSE: Undisputed.**

8. Article 13, Section 13.1 of the Agreement provides:

> The Union and the Association agree to establish and maintain a Joint Trade Board consisting of twelve (12) members with six (6) members and an alternate appointed by each party. All disputes and grievances shall be referred to the Joint Trade Board, unless as otherwise expressly provided

for under this Agreement.

(Exh. 2 – Anderson Decl. at Exh. B, §13.1.)

    **RESPONSE:**    Undisputed

9. Article 13, Section 13.3 of the Agreement provides:

Three (3) members of the Joint Trade Board shall constitute a quorum, provided that at least one (1) member is representing each party to this Agreement. In the absence of any party's representatives or if there is a vacancy, that party shall be entitled to cast pro rata through the members present the votes of an absent member or vacant position so that at all times the votes of each party shall be equal. Any decision of the Joint Trade Board shall be final and binding upon every party and any signatory to this Agreement.

(Exh. 2 – Anderson Decl. at Exh. B, §13.3.)

    **RESPONSE:**    Undisputed

10. Article 13, Section 13.5 of the Agreement provides:

If the Joint Trade Board finds that an Employer violated this Agreement, the Joint Trade Board is authorized to fashion, in its sole discretion, all appropriate remedies, including but not limited to, awarding actual damages to the aggrieved individual or entity, plus fines not to exceed one thousand dollars ($1,000.00) per violation, and assessing liquidated damages, interest, costs, reasonable attorneys' fees, administrative expenses, and auditing fees incurred by the Joint Trade Board. Such remedies and assessments shall also be imposed on the Employer if the Joint Trade Board, any party to this Agreement, or any entity enforcing its rights under this Agreement obtains judicial enforcement of the Joint Trade Board Award.

(Exh. 2 – Anderson Decl. at Exh. B, §13.5.)

    **RESPONSE:**    Undisputed.

11. On or about December 28, 2007, the Union filed charges with the JTB against Vinco for violations of Articles 4, 8, and 9 of the Agreement. (Exh. 1 – Answer at ¶ 11; Exh. 2 – Anderson Decl. at ¶ 9.)

**RESPONSE:** **Undisputed.**

12. Article 6, Section 6.3 of the Agreement provides, "A permit must be secured for overtime or work on Saturday, Sunday or a Holiday. The request must be submitted to the Union's Secretary-Treasurer twenty-four (24) hours in advance, or within four (4) hours of a request to the Employer, whichever is later." (Exh. 2 – Anderson Decl. at Exh. B, § 6.3.)

**RESPONSE:** **Undisputed.**

13. Article 6, Section 6.9 of the Agreement provides:

> The Employer shall report, in writing to Painters District Council NO. 30, all job sites where Collective Bargaining Unit work is to be performed, including the name of the job site and the location of the job site, prior to the commencement of work. Failure to adhere to this Article will be subject to Article 13 of this Agreement.

(Exh. 2 – Anderson Decl. at Exh. B, §6.9.)

**RESPONSE:** **Undisputed.**

14. Article 8, Section 8.5 of the Agreement provides:

> All work performed in industrial and commercial buildings only after 3:30 p.m. or before 7:00 a.m. Monday to Friday inclusive until 7:00 a.m. Saturday, shall be paid at the rate of nine (9) hours of pay for eight (8) hours worked. If less than eight hours of work is performed during this period, each employee shall be paid at the premium rate one (1) extra hour of pay above the number of hours actually worked. The Employer shall report all such work to the Union at least twenty-four (24) hours before the work begins or be subject to the procedures of the Joint Trade Board. If such notice is not given, all work performed shall be paid at time and one-half (1½) the employee's regular rate.

4

(Exh. 2 – Anderson Decl. at Exh. B, §8.5.)

    **RESPONSE:**    **Undisputed.**

15. Article 8, Section 8.6 of the Agreement provides:

If an employee works more than eight (8) hours in a day, premium pay of time and one-half (1½) shall be paid for each hour worked after eight (8) hours. All work on Saturday, Sunday, and Holidays, if permitted pursuant to Article 6.3, shall also be at time and one-half (1½) the employee's regular rate (subject to Article 6.4, for Saturday makeup).

(Exh. 2 – Anderson Decl. at Exh. B, §8.6.)

    **RESPONSE:**    **Undisputed.**

16. Article 8, Section 8.7(a) of the Agreement provides:

The Employer shall establish and maintain a weekly payday which shall be Friday, not later than the ending time of the normal work day. Payment of wages is to be made on the job site or, if prior arrangements have been made and agreed to by the Union, the employees and the Employer, such payments may be made at the Employer's principal place of business, by electronic transfer or mailed to the employee. All employees shall be paid by negotiable check for all work performed up through and including the Wednesday night preceding said payday.

(Exh. 2 – Anderson Decl. at Exh. B, §8.7.)

    **RESPONSE:**    **Undisputed.**

17. Article 8, Section 8.7(b) of the Agreement provides:

Each employee shall be furnished with a detachable check stub showing the Employer's business name, the employee's name or social security number, total straight time hours, overtime hours, the ending date of the pay period, the total amount due, and all itemized deductions. The Employer shall (as shown on the pay stub) conform with federal law pertaining to the payment of Social Security. It shall be a violation of this Agreement for an Employer to issue any check other than a payroll check for compensation earned under this Agreement.

(Exh. 2 – Anderson Decl. at Exh. B, §8.7.)

    **RESPONSE:**    **Undisputed.**

18. Article 14, Section 14.2 of the Agreement provides, "The Employer shall maintain an office and telephone where it can be contacted during the usual working hours." (Exh. 2 – Anderson Decl. at Exh. B, § 14.2.)

    **RESPONSE:**    **Undisputed.**

19. Article 9, Section 9.8(a) of the Agreement provides:

> Each Employer shall furnish the Trustees with information such as the names of all subcontractors, affiliates, employees (by classification, craft and social security number), wages earned and hours worked by employees, the Employer's federal/state employer identification number, the Employer's business address (which shall not be a P.O. Box), the principal corporate officer's or business owner's driver's license number, proof of the Employer's corporate status, proof of insurance or surety bonds as required by this Agreement, and such other information as may be required by the Trustees. Such information available at the time this Agreement is executed shall be provided within seven (7) days of execution; all other information shall be provided within seven (7) days of the Trustees' written request.

(Exh. 2 – Anderson Decl. at Exh. B, §9.8.)

    **RESPONSE:**    **Undisputed.**

20. On about January 3, 2008, the Union sent written notice of the charges and that the JTB would hear those charges on January 17, 2008, to Vinco by both certified and regular first-class mail at the address reported by Vinco to the Union when it became a signatory contractor in August 2007: 6649 Ogallah Ave., Chicago, Illinois 60631. (Exh. 2 – Anderson Decl. at ¶ 11-13.)

    **RESPONSE:**    **Vinco moves to strike these allegations since they are not based upon personal knowledge. Moreover, these factual allegations are neither supported by facts admissible in evidence nor does the Union show affirmatively that the affiant, Charles E. Anderson, is competent to testify to any facts relating to the mailing of**

the charges and JTB hearing. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Federal Rules of Civil Procedure Rule 56(e). "The requirements of Rule 56(e) are set out in mandatory terms and the failure to comply with those requirements makes the proposed evidence inadmissible during the consideration of the summary judgment motion." Friedel v. City of Madison. 832 F.2d 965, 970 (7th Cir. 1987). A party may not attempt to survive a motion for summary judgment through the submission of an affidavit that contradicts testimony in his deposition or other sworn testimony. Flannery v. Recording Industry Ass'n of America. 354 F.3d 632, 638 (7th Cir.2004).

In his deposition, Charles Anderson testified that he did not personally mail the charges and notice of hearing. See Deposition of Charles Anderson at p.12 (lines 8-9) and p.13 (lines 11-14) attached as Exhibit 3 to Defendant/Counterplaintiff's Rule 56.1 Statement of Material Facts (Doc.20). After having admitted that he did not mail the charges and notice of hearing, Anderson cannot now attest to the factual allegations made in ¶ 20 which are also unsupported by facts admissible in evidence and should be stricken or disregarded.

21. Vinco did not notify the Union of its new address until about January 24 or 25, 2008. (Exh. 2 – Anderson Decl. at ¶ 22.)

RESPONSE:　　Vinco moves to strike this allegation since the Union cannot amend its Complaint through its Motion for Summary Judgment. The Union is improperly claiming that Vinco is obligated to provide notice of a change of address. However, the Union specifically alleged in ¶¶ 11 and 16 of its Complaint that Vinco received notice

of the charges and JTB hearing. The Union also asserts in its Reply to Vinco's Counter-claim at ¶ 8 that Vinco received notice of the charges and JTB hearing (Doc. 13). Parties cannot amend their pleadings in their summary judgment briefs. See Insolia v. Philip Morris, Inc., 216 F.3d 596, 606 (7th Cir.2000). Without waiving this objection, Vinco denies these allegations. (See Declaration of Denise Angelilli attached hereto as Exhibit 1 at ¶ 1).

22. On January 14, 2008, the United States postal service returned the January 3, 2008, notice marked, "Return to sender — moved left no address." The copy of the notice sent by first-class mail was never returned to the Union. (Exh. 2 – Anderson Decl. at ¶ 14, 15.)

**RESPONSE:** Undisputed.

23. On January 17, 2008, the JTB convened. No representative of Vinco was in attendance. (Exh. 1 – Answer at ¶ 12; Exh. 2 – Anderson Decl. at ¶ 16, 17.)

**RESPONSE:** Undisputed.

24. Evidence supporting the allegations in the charges was presented, and the JTB found that Vinco violated the collective-bargaining agreement. (Exh. 2 – Anderson Decl. at ¶ 18.)

**RESPONSE:** Vinco does not dispute that the JTB found it violated the Collective Bargaining Agreement. Vinco moves to strike and request the Court to disregard the allegation that evidence supporting the allegations in the charges was presented since this is a conclusory allegation unsupported by facts and inadmissible evidence . Answering further, Vinco denies that evidence was presented to support all of the findings since William Medina, Jesus Mota and Jeremy Weise did not themselves appear and the hearing. (See Union's Reply to Counterclaim at ¶ 10 [Doc. 13]).

8

25. The JTB's findings are summarized in the minutes of the meeting taken by Anderson, who was present at the meeting. (Exh. 2 – Anderson Decl. at ¶ 18.)

   **RESPONSE:**     **Undisputed.**

26. Specifically, the JTB found that Vinco had violated the Agreement by failing to pay employees Loren Deland, William Medina, Jesus Mota, and Jeremy Weise overtime as required by Article 8 of the Agreement, by failing to secure an overtime permit from the Union for overtime work performed on Saturdays, Sundays, or holidays as required by Section 6.3 of the Agreement, by failing to report to the Union all job sites where work covered by the Agreement was performed as required by Section 6.9 of the Agreement, and by failing to provide check stubs to its employees showing Vinco's business name, the employee's name or social security number, total straight time hours, overtime hours, the ending date of the pay period, the total amount due, and all itemized deductions as required by Section 8.7(b) of the Agreement. (Exh. 2 – Anderson Decl. at Exh. F.)

   **RESPONSE:**     **Undisputed.**

27. The JTB ordered Vinco to pay the following amounts in damages and fines to the above-named persons and to the Union for its contractual violations:

|  |  | Total Owed |
|---|---|---|
| **Loren Deland** |  |  |
|   Actual overtime wages | $ 2,091.82 |  |
|   Fine of $500/day for 73 days of non-payment of overtime | 36,500.00 |  |
|   Sub-Total |  | $ 38,591.82 |
| **William Medina** |  |  |
|   Actual overtime wages | 592.95 |  |
|   Fine of $500/day for 79 days of non-payment of overtime | 39,500.00 |  |
|   Sub-Total |  | 40,092.95 |

|  |  | Total Owed |
|---|---|---|
| Jesus Mota |  |  |
|   Actual overtime wages | 548.70 |  |
|   Fine of $500/day for 63 days |  |  |
|     of non-payment of overtime | 31,500.00 |  |
|   Sub-Total |  | 32,048.70 |
| Jeremy Weise |  |  |
|   Actual overtime wages | 216.39 |  |
|   Fine of $500/day for 94 days |  |  |
|     of non-payment of overtime | 47,000.00 |  |
|   Sub-Total |  | 47,216.39 |
| Painters District Council 30 |  |  |
|   Fine of $500/day for 94 days of failing to |  |  |
|     secure an overtime permit from the Union | 47,000.00 |  |
|   Fine of $500/day for 101 days of failing to |  |  |
|     register job locations with the Union | 50,500.00 |  |
|   Fine of $500/day for 101 days of failing to |  |  |
|     provide check stubs to employees | 50,500.00 |  |
|   Sub-Total |  | 148,000.00 |
| Total |  | $305,949.86 |

(Exh. 2 – Anderson Decl. at Exh. F.)

**RESPONSE:** **Undisputed.**

28. The JTB's decision is immediately effective and requires no further action by the JTB to become final. (Exh. 2 – Anderson Decl. at ¶ 19.)

**RESPONSE:** **Vinco disputes this allegation. The Rules and Regulations of the JTB require notice to be given by Certified and regular U.S. Mail. (See Exh. 5 attached to Defendant/Counterplaintiff's Rule 56.1 Statement of Material Facts [Doc. 20]).**

29. On about January 22, 2008, the Union mailed a letter to Vinco at 6649 Ogallah Ave., Chicago, Illinois 60631, by both regular first-class mail and certified mail notifying it of the award of the JTB on January 22, 2008. (Exh. 2 – Anderson Decl. at ¶ 20.)

10

**RESPONSE: Vinco moves to strike these allegations since they are not based upon personal knowledge. Moreover, these factual allegations are neither supported by facts admissible in evidence nor does the Union show affirmatively that the affiant, Charles E. Anderson, is competent to testify to any facts relating to the mailing of the JTB Award.**

30. The Union's January 22 letter that was sent by certified mail was returned to the Union's offices by the U.S. Postal Service on February 25, 2008, marked "Return to Sender — Harwood Hts. (60656) — Unclaimed." (Exh. 2 – Anderson Decl. at ¶ 21.)

    **RESPONSE:** Undisputed.

31. When it was returned, the envelope contained a sticker pasted over the Ogallah Ave. address with a new, handwritten address on it — 4637 N. Forestview, Chicago, IL 60656 — that was not on the envelope when the Union placed it in the mail on January 22. The Postal Service never returned to the Union the copy of the January 22 letter sent by regular first-class mail. (Exh. 2 – Anderson Decl. at ¶ 21.)

    **RESPONSE:** Undisputed.

32. On January 24 or 25, 2008, Anderson spoke by telephone with Defendant's representative Denise Angelilli to inform her of the outcome of the JTB hearing, and she told him that Vinco had moved from its former address and had therefore not been notified of the hearing. (Exh. 2 – Anderson Decl. at ¶ 22.)

    **RESPONSE: Undisputed.**

33. The day of Anderson's telephone conversation with Denise Angelilli was the first time that the Union learned of Vinco's new address. (Exh. 2 – Anderson Decl. at ¶ 22.)

**RESPONSE:   Vinco disputes these allegations.   The Union is improperly claiming that Vinco is obligated to provide notice of a change of address.  However, the Union specifically alleges in ¶¶ 11 and 16 of its Complaint that Vinco received notice of the charges and JTB hearing.  The Union also asserts in its Reply to Vinco's Counterclaim at ¶ 8 that Vinco received notice of the charges and JTB hearing (Doc. 13). Parties cannot amend their pleadings in their summary judgment briefs. See Insolia v. Philip Morris, Inc., 216 F.3d 596, 606 (7th Cir.2000).   Without waiving this objection, Vinco denies these allegations.  (See Declaration of Denise Angelilli attached hereto as Exhibit 1 at ¶ 1).**

34. Also on January 24 or 25, 2008, Anderson spoke with Vinco principal Vince Angelilli. Anderson informed Angelilli that he could appear before the JTB at its next meeting on March 13, 2008, present any evidence he wished the JTB to consider, and ask it to reconsider its award. (Exh. 2 – Anderson Decl. at ¶ 23.)

**RESPONSE:    Vinco disputes that this represents the entire conversation.   (See Declaration of Vince Angelilli at ¶¶ 20-21 and Denise Angelilli at ¶¶ 20-22, which are attached as Exhibits 1 and 2 respectively to Defendant/Counterplaintiff's Rule 56.1 Statement of Material Facts. [Doc. 20].**

35. Anderson instructed Angelilli to make a written request and to send a check for $50,000 to the Union, which the Union would not cash. (Exh. 2 – Anderson Decl. at ¶ 23.)

**RESPONSE:         Undisputed.**

36. Angelilli initially refused but then called back a few minutes later to state that he wished to appear before the JTB and would meet the conditions set forth by Anderson. (Exh. 2 – Anderson Decl. at ¶ 24.)

**RESPONSE:   Disputed.  (See Declaration of Vince Angelilli attached hereto as Exhibit 2 at ¶ 1.)**

37. It is an established but unwritten policy of the JTB to require an employer wishing to appear before the JTB to appeal an adverse award to submit a written request and to tender a check for fifty percent of the amount of the findings, which check the JTB does not cash in advance of the employer's appearance. (Exh. 2 – Anderson Decl. at ¶ 25.)

**RESPONSE:   Vinco moves to strike this paragraph since such allegations are made in the absence of facts admissible as evidence.  For example, there are no facts which establish who, when or under what authority such alleged policy was established.**

38. Anderson partially waived that requirement by requiring payment by Vinco of less than twenty percent of the JTB's findings in order to appear before the JTB. (Exh. 2 – Anderson Decl. at ¶ 26.)

**RESPONSE:    Vinco disputes these allegations.  The citation by the Union for this allegation does not support it.  Paragraph 26 of Anderson's Declaration states that Anderson deviated from an alleged unwritten policy.  There are no facts alleged which show that Anderson had any authority to deviate from the policy alleged by the Union which itself is unsupported by facts admissible in evidence.**

39. The first JTB meeting after the January 17, 2008, meeting was scheduled for March 13, 2008. (Exh. 2 – Anderson Decl. at ¶ 27.)

**RESPONSE:** **Undisputed.**

40. On about March 12, 2008, Anderson spoke by telephone with Vince Angelilli. (Exh. 2 – Anderson Decl. at ¶ 28.)

    **RESPONSE: Vinco disputes these allegations. (See attached Exhibit 2: Dec. of Vince Angelilli at ¶3.)**

41. During this conversation, Angelilli again stated that he intended to appear before the JTB the next day and that he would bring a check for $50,000. (Exh. 2 – Anderson Decl. at ¶ 28.)

    **RESPONSE: Vinco disputes these allegations. (See attached Exhibit 2: Dec. of Vince Angelilli at ¶3.)**

42. Angelilli never tendered a check for $50,000. (Exh. 2 – Anderson Decl. at ¶ 28.)

    **RESPONSE:** **Undisputed.**

43. The JTB met on March 13, 2008. (Exh. 2 – Anderson Decl. at ¶ 29.)

    **RESPONSE:** **Undisputed.**

44. At its March 13, 2008, meeting, the JTB approved the minutes of its January 2008 meeting. (Exh. 2 – Anderson Decl. at ¶ 30, Exh. I.)

    **RESPONSE:** **Undisputed.**

45. Tri-Cor Painting is also a signatory employer against whom the JTB had issued an award at its meeting on January 17, 2008. (Exh. 2 – Anderson Decl. at ¶ 31.)

    **RESPONSE:** **Undisputed.**

46. Tri-Cor appeared at the March 13 meeting to appeal the JTB's findings against it. (Exh. 2 – Anderson Decl. at ¶ 31.)

    **RESPONSE:** **Undisputed.**

47. The JTB substantially reduced the penalties against Tri-Cor at its March 2008 meeting. (Exh. 2 – Anderson Decl. at ¶ 31.)

    **RESPONSE:** **Undisputed.**

48. No representative of Defendant appeared at the March 2008 meeting of the JTB. (Exh. 2 – Anderson Decl. at ¶ 32.)

    **RESPONSE:** **Undisputed**.

49. Defendant has not paid the amounts assessed by the JTB in January 2008. (Exh. 1 – Answer at ¶ 17.)

**RESPONSE:** **Undisputed**.

50. Jurisdiction in this Court is proper pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), because the Award was issued by the JTB pursuant to its authority under the CBA. (Exh. 1 – Answer at ¶ 2.)

**RESPONSE:  Vinco does not dispute that jurisdiction is proper pursuant to Section 301 of the LMRA.  However, Vinco moves to strike the Union's allegation that the award was issued by the JTB pursuant to its authority under the CBA because ¶ 2 of Defendant's Answer does not support this allegation which is in dispute.  (See also Affirmative Defenses raised by Vinco to Plaintiff's Complaint and Vinco's Counterclaim (Doc. 11).**

51. Venue in this judicial district is proper because the Award was made and both parties are located in the district. (Exh. 1 – Answer at ¶ 3.)

**RESPONSE:** **Undisputed.**

**Vinco's Statement of Additional facts Requiring Denial of Union's Motion for Summary**

**1. Section 14.1 of the CBA provides that "[t]he Employer shall give notice to the Union in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer occurring after the date hereof:**

(a)   formation of partnerships;

(b)   termination of business;

(c)   change of name commonly used in business operation;

(d)   change of form of business organization;

16

**(e)** incorporation of business;

**(f)** dissolution of corporation;

**(g)** name and business organization of successor;

**(h)** admission to or withdrawal from any association operating as a multi-employer bargaining agent;

**(i)** formation of a L.L.C.

**A copy of this notification shall be sent to the Association Secretary."**

**(See Exhibit A: Collective Bargaining Agreement at Section 14.1, p. 46, which is attached to Charles Anderson's Declaration marked and attached as Exhibit 2 to Plaintiff's Statement of Undisputed Facts [Doc. 16].**

**2.     On January 25, 2008, Charles Anderson never told Vince Angelilli that Anderson was authorized by the JTB to    accept payment in order for an employer to appear before the JTB.  Rather, Anderson demanded a check for $50,000.  Vince Angelilli thought that Anderson wanted him to pay the Union $50,000 and he told Anderson that he thought it was extortion.   Anderson's spoke in a threatening manner.  Angelilli did not know if Anderson was or was not going to cash such a check.  Angelilli asked Anderson why he needed a check for $50,000 if he intended not to cash it.  Anderson told Angelilli not to ask any questions.  Vince Angelilli was faced with possible criminal charges if Anderson did cash the check since sufficient funds were not available to cover it; therefore, he did not write the check to appear before the JTB (See attached Exhibit 2: Dec. of Vince Angelilli at ¶4).**

**3.  Charles Anderson said it was Vinco's problem if it did not have $50,000. (See Exh. 7: Dep. of Charles Anderson at p. 30, lines 8-9 attached to**

Defendant/Counterplaintiff's Rule 56.1 Statement of Material Facts [Doc. 20]).

4. The Union asserted that there were no rules, policies, regulations and guide lines of the JTB other than those contained in the CBA. (See attached Ex. 3: Plaintiff's Answers to Defendant's First Request For Production of Documents at ¶17).

5. Charles Anderson admitted under examination that there are rules and regulations that govern the JTB other than those contained in the CBA. (See Exh. 7: Dep. of Charles Anderson at p. 7, lines 6-24 attached to Defendant/Counterplaintiff's Rule 56.1 Statement of Material Facts [Doc. 20]).

6. After Charles Anderson's deposition, the Union produced Rules and Regulations of the JTB which are silent on any policy of allowing Employers to appeal Awards issued by the JTB by paying 50% of the Award. (See Exh. 5: Painters District Council No. 30 Joint Trade Board Rules and Regulations attached to Defendant/Counterplaintiff's Rule 56.1 Statement of Material Facts [Doc. 20]).

                                      Respectfully submitted,

                                      VINCO PAINTING, INC.

                                        s/  Joseph P. Berglund

Joseph P. Berglund                         One of It's attorneys
Berglund & Mastny, P.C.
1010 Jorie Blvd., Suite 370
Oak Brook, IL   60523
630-990-0234

J:\c-drive\wpdocs\vincopainting\PDC30JTBAward\LR56.1(b)Statement.doc