IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAINTERS DISTRICT COUNCIL NO. 30, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 1163 |
| v. | ) | |
| | ) | |
| VINCO PAINTING INC., | ) | Judge Conlon |
| | ) | Magistrate Judge Ashman |
| Defendant. | ) | |
| -------------------------------------------------- | ) | |
| VINCO PAINTING, INC., | ) | |
| | ) | |
| Defendant/Counterplaintiff | ) | |
| vs. | ) | |
| | ) | |
| PAINTERS DISTRICT COUNCIL NO. 30. | ) | |
| | ) | |
| Plaintiff/Counterdefendant. | ) | |

**DEFENDANT/COUNTER-PLAINTIFF'S AMENDED MEMORANDUM IN
OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendant/Counterplaintiff, VINCO PAINTING, INC. ("Vinco"), and for its Amended Memorandum in Opposition to the Motion for Summary Judgment filed by Plaintiff/Counterdefendant, PAINTER'S DISTRICT COUNCIL NO. 30 ("Union") states as follows:

**ARGUMENT**

**I. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM
FOR CONFIRMATION OF THE AWARD OR ON DEFENDANT'S
COUNTERCLAIM TO VACATE THE AWARD.**

The Union asserts that the Award is procedurally and substantively sufficient. The plain language of the parties' agreement is unambiguous and demonstrates the JTB's Award does not derive its essence from the CBA. Moreover, Vinco was denied its due process rights. Thus, the Award should not be enforced.

The Award does not draw its essence from the CBA and should be vacated. Section 13.5 of

CBA provides the JTB with authority to award actual damages plus fines not to exceed $1,000 per violation. (See Vinco's Statement of Material Facts at ¶ 11(d)[Doc. 20]). This provision is clear and unambiguous. An arbitrator cannot ignore the clear and unambiguous language of the agreement. Tootsie Roll Indus., Inc. v. Local Union # 1, 832 F.2d 81 (7th Cir.1987). The arbitrator's award "is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Id. In applying this standard, the Seventh Circuit has observed that when the arbitrator bases his award "on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference) ... the award can be said not to draw its essence from the [CBA]." Dexter Axle Co. v. Int'l Assoc. of Machinists, 418 F.3d 762, 768 (7th Cir.2005) (internal quotation omitted).

Section 13.5 does not empower the JTB to issue fines that exceed $1,000 per violation. This is completely different than authorizing the JTB to issue a fine accruing at the rate of $500 or even $1,000 per day. Union representative James Stelmasek testified that he alleged Vinco committed 4 violations of the CBA. (Vinco's Statement of Material Facts at ¶20 [Doc. 20]). Calculations underlying the Award show that the JTB awarded $3,449.86 in damages and $302,500 in fines. (See Plaintiff's Statement of Undisputed Facts at ¶27[Doc. 16]). The damages portion of the Award represent a minuscule 1.1% of the total $305,949.86 Award.

The fines issued by the JTB contravene Section 13.5 and it is absurd to argue to the contrary. As with any contract, a labor agreement should not be interpreted in a way that produces an absurd result See Architectural & Ornamental Iron Workers Local Union No. 63 v. Int'l Union of Elevator Constructors, Local 2, 475 F.Supp. 2d 757 (N.D.Ill. 2006). Vinco is not alleging that the JTB merely misread or misinterpreted the CBA. Rather, the JTB exceeded the authority given them

2

under the CBA and they dispensed their own industrial brand of justice. Under these circumstances, the Award should be vacated. Although judicial review of arbitration awards is limited, the facts of this case warrant that the Award be vacated. Otherwise, arbitrators will be allowed to dispense their own industrial brand of justice without any worry of having their actions reviewed and overturned.

This case does not involve a question of statutory interpretation to determine if an employee timely brought an action for discrimination for purposes of satisfying the statute of limitations as was involved in Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014 (7th Cir. 2003). Rather, the issue is whether the Award derives its essence from the CBA especially since Union representative James Stelmasek, who brought the underlying charge, testified that Vinco was alleged to have committed 4 violations and the fines in this case comprise 98.87% of the Award. Even under yet another principle of contract interpretation, "[a] contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek." United States v. Barnett, 415 F.3d 690, 692 (7th Cir.2005) (citing Beanstalk Group, Inc. v. AM Gen. Corp., 283 F.3d 856, 860 (7th Cir.2002); Nelson v. Schellpfeffer, 656 N.W.2d 740, 743 (S.D.2003); Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 96 (3d Cir.2001)). It would be absurd to conclude the parties authorized the imposition of fines that comprise more than 98% of damages claimed due and owing.

The Union cites Sullivan v. Lemoncello, 36 F.3d 676 (7th Cir. 1994) for the proposition that penalties imposed by the JAB draw their essence from the CBA and are enforceable. In Lemoncello, the JAB found that Lemoncello violate the CBA by having persons other than Union journeyman perform plumbing work at 5749 W. Chicago Ave. and 751- 753 N. Menard Ave. between October 10, 1991 and January 1992. 36 F.3d at 679. Lemoncello did not argue that this

3

finding was outside the scope of the Union's Charge.  In June 1992, the JAB found that Lemoncello violated the contributions and deductions sections of the CBA, ordered Lemoncello to pay $15,988 in wages and benefits, imposed a $15,988 fine and an additional fine of 3% which percentage was equal to 10% of the total Award (i.e. $15,988 + $15,988 = $31,976) for a total of $35,167.60.

The JAB in Lemoncello again found that Lemoncello violated the contribution and deduction sections of the CBA and ordered Lemoncello to pay $7,124.24, imposed an 8% penalty of $569.94 and assessed $2,576.47 in interest on the unpaid contributions at a rate of 1.5% per month.  The Seventh Circuit ruled that Lemoncello's failure to bring an action to vacate the Award within 90 days of receiving the Award barred Lemoncello from challenging the Award.  Yet, the Seventh Circuit proceeded to address in *dicta* Lemoncello's argument that the Awards were unenforceable since they contained punitive components.  The Seventh Circuit stated that the amount of the fine "is arguably a mite steep" but it could not conclude the fine was excessive or that the Award was unenforceable since the fines were rationally derived from the CBA which permitted the JAB to issue appropriate penalties including fines against offending Employers.  36 F.3d at 683-684.

Unlike Lemoncello, Section 13.5 of the CBA imposes a maximum fine of $1,000 per violation.  There was no cap imposed in the Lemoncello CBA and the fines actually assessed represented a smaller fraction of the total Award than this case where the fines in this case comprise 98.87% of the total Award.  This case is a prime example where a court should step in and vacate the Award since it does not draw its essence from the CBA. The willingness of the JTB to issue excessive fines to absentee Employers and the subsequent, apparent reduction of excessive fines to nearly nothing, as in the case of Tri-Cor Carpentry, shows that the JTB dispense their own industrial brand of justice to punish Employers they might view as combative and to "reward" them when Employers appear non-combative.  This is not contract interpretation.

The Union also argues that the Award is procedurally sufficient.  The Union asserts on page

4

10 of its Memorandum of Law (Doc. 15) that Vinco is required to notify the Union of its change of address. This is a new argument raised by the Union and is not supported by the CBA.

The Union did not claim in its Complaint that Vinco was obligated to provide notice of a change of address. Vinco respectfully requests the Court to disregard this argument because the Union cannot now amend its Complaint through these proceedings. The Union specifically alleged in ¶¶11 and 16 of its Complaint that Vinco received notice of the charges and JTB hearing. The Union also asserts in its Reply to Vinco's Counterclaim at 8 that Vinco received notice of the charges and JTB hearing (Doc. 13). At no time does the Union allege that Vinco was required to notify the Union of its change in address. Parties cannot amend their pleadings in their summary judgment briefs. See Insolia v. Philip Morris, Inc., 216 F.3d 596, 606 (7th Cir.2000). However, the CBA does not require any such notice to be given by Vinco even if the Union is allowed to assert this belated claim.

There is no dispute that Vinco maintained an office and telephone where it could be contacted during usual working hours as set forth in Section 14.2. Section 9.8 does not apply since any requirement therein is required to be given to the Benefit Funds. This dispute involves the Union. In any event, there is no dispute that Vinco furnished the Trustees with its business address when it became signatory to the CBA.

Section 14.1 requires Employers to give the Union notice within 10 ten days after the occurrence of certain events. (See Vinco's Statement of Additional Facts at ¶1.) The requirement to provide notice of a change in address is not enumerated in Section 14.1. Under the maxim *expressio unius est exclusio alterius* (expressly including some matters in a contract implies the exclusion of others), see R.L. Coolsaet Construction Co. v. Local 150, International Union of Operating Engineers, 177 F.3d 648, 658 (7th Cir.1999), Vinco cannot be deemed to have a contractual obligation to give notice of a change of address to the Union within 10 days after it

moved. Even if Vinco were under any obligation to provide notice, it was given by Vinco on January 25, 2008. (See Union's Statement of Undisputed Facts at ¶32.)

Furthermore, the Rules and Regulations of the JTB obligate the Union to insure that an Employer receives notice of a complaint and hearing and also be present at hearings to present all pertinent information. (See Defendant's Statement of Material Facts at ¶12). There is no reason to impose any duty upon a Union which is different from the duty imposed upon a union in disciplining its members. In situations where there is the risk of incurring substantial penalties, there is an obligation to draw upon standards of fairness beyond those expressed or embraced in the union constitution. See e.g. Parks v. International Broth. of Elec. Workers, 314 F.2d 886 (4th Cir. 1963), certiorari denied 372 U.S. 976. Due process requires that an accused person be told, far enough in advance of trial, that he or she has certain rights including the risk of incurring serious penalties. Due process requires that an accused be told, far enough in advance of trial, that he has certain rights, including that he runs risk of incurring serious penalties. See e.g. Reilly v. Sheet Metal Workers' Intern. Ass'n, AFL-CIO, 488 F.Supp. 1121 (S.D.N.Y. 1980). The cases cited by the Union on pages 9-10 do not apply because those cases involve repeated notices or a statutory obligation to give notice. For instance, the Court in Gingiss Int'l, Inc. v. Bormet, 58 F.3d 328, 332 (7th Cir. 1996), held that the Federal Arbitration Act ("FAA"), 9 U.S.C. ¶10(a) does not allow inadequate notice to set aside an arbitration award award. The Union concedes n its Statement of Facts at ¶1, fn 1, that the FAA does not apply. Moreover, the AAA in Bormet sent 4 letters regarding the arbitration and none of them were returned undelivered. In Bormet, Arbitration Rules also provided that notice may be served on a party by mail addressed to its last known address. In this case, the Union received actual notice prior to the JTB hearing that Vinco moved and was not notified of the charges or hearing by certified mail. Moreover, Charles Anderson admits that Vinco told him in January 2008 that Vinco did not receive notice of the charges or hearing. (See Union's

Statement of Undisputed Facts at ¶32). Vinco did not receive the notice that was sent by regular U.S. Mail.(See Vinco's Statement of Facts at ¶35). Unlike Bormet, the Union was contractually obligated to insure notice was given to Vinco. Moreover, Vinco was not given repeated notices as the string of cases cited by the Union shows is important in determining whether a party's due process rights are satisfied. The Union could have telephoned Vinco but did not do so even though the Union knew in advance that Vinco moved and did not receive the certified mailing (See Vinco's Statement of Facts at ¶¶24-27). The Union should have at least called Vinco on the telephone under these circumstances and especially given the Union's contractual obligation to insure notice.

The cases cited by Vinco in its Memorandum on pages 9-10 (Doc. 21) also show that, in the alternative, due process should result in the vacation of the Award and remand to JTB for an adversarial hearing. See e.g. Chicago Truck Drivers, Helpers And Warehouse Union v. Denton Cartage Co., 648 F. Supp. 1009, 1012 (N.D. Ill. 1986); Local 727, Laborers' International Union of North America v. MacNab, 1999 WL 300283 (N.D. Ill. 1999)(Court vacated arbitration award and remanded dispute back to arbitration board with instructions to conduct an adversarial hearing because employer averred that it did not receive notice of the grievance.); Local 727, Laborers' International Union of North America v. MacNab, 1999 WL 300283 (N.D. Ill. 1999).

The excessive fines also show a due process violation. Few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003). Under Campbell, the $302,500 fine violates Vinco's due process rights under the Fourteenth Amendment, which prohibits the imposition of grossly excessive or arbitrary punishments on a wrongdoer. See State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 416, (2003)(citation omitted). Vinco simply failed to appear at the JTB hearing because it did not receive notice and did not engage in any sort of reprehensible conduct that allows for the imposition of such a fine.

The Union's argument that the JTB afforded Vinco an opportunity to appear at its next meeting also fails. In discovery, the Union initially represented that no rules or regulations existed which govern the JTB other than those contained in the BA. Contrary to the Union's Answer To Vinco's Request For Production, Anderson then admitted under oath at his deposition that additional rules and regulations do exist. Anderson then asserted additional rules exist which were apparently not reduced to writing. One unwritten policy, which was discussed by Anderson at his deposition and was not previously disclosed by the Union, supposedly provides that an Employer can appear or reappear before the JTB by paying 50% of the Award which is $152,974 in this case. Vinco did not even have $50,000. Vince Angelilli thought that Anderson was extorting him when Anderson demanded $50,000.. Anderson never said that his demand was the policy of the JTB. Angelilli did not know if Anderson was or was not going to cash such a check. When Angelilli asked why he needed to write a check for $50,000, Anderson told him not to ask any questions. Vince Angelilli did not want to face criminal charges for writing a check for insufficient funds if Anderson cashed the check. As a result, Angelilli did not write the check to appear before the JTB. (See Vinco's Statement of Additional Facts at ¶2) Thus, this case is unlike Dean v. Sullivan, 118 F.3d 1170, 1172 (7th Cir. 1997), wherein the employer was afforded an opportunity to appear at a hearing without being required to write a check for insufficient funds. Vinco was not afforded its due process rights.

WHEREFORE, Plaintiff/Counter-Defendant, Vinco Painting, Inc. moves this Honorable Court to:

A.    Deny the Motion For Summary Judgment filed by the Union and grant Vinco's Cross-Motion For Summary judgment;

B.    Vacate the Award on the ground that the Award does not draw its essence from the CBA,

      C.      In the event the Court declines to vacate the Award on the ground that the Award does not draw its essence from the CBA, Vinco prays that the Court vacate the Award and remand it to the JTB for an adversarial hearing; and

      D.      Award it such other relief deemed just and equitable.

      Respectfully submitted,

      VINCO PAINTING, INC.

      By   /s/ Joseph P. Berglund
          One of Its Attorneys

Joseph P. Berglund
BERGLUND & Mastny, P.C.
1010 Jorie Boulevard, Suite 370
Oak Brook, Illinois 60523-2229
(630) 990-0234
J:\C-Drive\WPDOCS\Vinco Painting\PDC 30 JTB Award\memo in oppositiontomoSJdgmtAmended7.14.08.wpd`