IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAINTERS DISTRICT COUNCIL NO. 30, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 1163 |
| v. | ) | |
| | ) | |
| VINCO PAINTING INC., | ) | Judge Conlon |
| | ) | Magistrate Judge Ashman |
| Defendant. | ) | |
| ------------------------------------------------------ | ) | |
| VINCO PAINTING, INC., | ) | |
| | ) | |
| Defendant/Counterplaintiff | ) | |
| vs. | ) | |
| | ) | |
| PAINTERS DISTRICT COUNCIL NO. 30. | ) | |
| | ) | |
| Plaintiff/Counterdefendant. | ) | |

**DEFENDANT/COUNTER-PLAINTIFF'S MEMORANDUM IN REPLY TO PLAINTIFF/COUNTER-DEFENDANT'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendant/Counterplaintiff, VINCO PAINTING, INC. ("Vinco"), and for its Memorandum in Reply to the Response of Plaintiff/Counterdefendant, PAINTER'S DISTRICT COUNCIL NO. 30 ("Union"), to Motion for Summary Judgment states as follows:

**ARGUMENT**

**I. PRESUMPTION OF DELIVERY ISSUES**

Vinco has not only rebutted the presumption of delivery by mail (assuming the mail was sent with sufficient postage) as set forth below, but the Union has also failed to affirmatively show that the charges and Notice of Hearing, which were purportedly sent on January 3, 2008, were mailed with sufficient postage affixed to it.

Where a party establishes that notice was properly addressed and deposited in the mail with sufficient postage, then a rebuttable presumption is raised that the notice was received. In re Nimz Transportation, Inc., 505 F.2d 177, 179 (7th Cir.1974). The Union did not assert record evidence sufficient to raise the presumption that the charges and Notice of Hearing were received by Vinco. There is no record evidence that the charges and Notice of Hearing were mailed with sufficient

postage. The Court can grant Vinco's Motion for Summary Judgment on this ground alone. In addition, the Union did not submit testimony from a person competent to testify that the charges and Notice of Hearing were in fact sent by regular U.S. Mail. The Union submitted testimony in the form of an Declaration of Charles Anderson; however, he is not competent to so testify since he admitted at his deposition that he did not mail the charges and Notice of Hearing. (See Response of Defendant to Plaintiff's LR56.1 Statement of Undisputed Material Facts (hereinafter referred to as "DEF Response to PL LR56.1 Statement") [Doc. 30] to ¶20). See Godfrey v. United States, 997 F.2d 335, 338 (7th Cir.1993) ("To invoke the presumption of delivery, the government could either present evidence of actual mailing such as an affidavit from the employee who mailed the check, or present proof of procedures followed in the regular course of operations which give rise to a strong inference that the check was properly addressed and mailed."). The Union did not submit evidence of actual mailing, proof of procedures followed in the regular course of business or that the letter was sent by first class mail with sufficient postage. Notwithstanding the Union's failure to present such evidence, Vinco has rebutted the presumption of delivery even had the Union met its initial burden.

""'When there is positive testimony that a letter has been enclosed in an envelope *which is correctly stamped and addressed and is deposited in the mail*, there is a rebuttable presumption that it was duly received.'" Scottsdale Ins. Co. v. Sessions, 331 F.Supp.2d 479, 497 (N.D. Tx 2003)(emphasis in original). Such a presumption may not, however, be given conclusive effect without violating the due process clause. United States v. Simmons, 476 F.2d 33, 37 (9th Cir.1973); United States v. Bowen, 414 F.2d 1268, 1273 (3d Cir.1969). A rebuttable presumption, which merely shifts to the challenging party the burden of presenting credible evidence of non-receipt, is constitutional. United States v. Freeman, 402 F.Supp. 1080, 1082 (E.D.Wis.1975).

A presumption cannot be overturned or rebutted by speculation or suspicion. It can be overcome by convincing and uncontradicted evidence to the contrary which clearly and distinctly establishes a fact so that reasonable minds can draw but one inference. Falstaff Brewing Corp. v. Thompson, 101 F.2d 301, 304 (8th Cir. 1939), cert. denied, 307 U.S. 631; Wolfgang v. Burrows,86 U.S.App.D.C. 340, 181 F.2d 630, 631 (1950), cert. denied, 340 U.S. 826. In addition to the foregoing, to overcome the presumption of the arrival of a letter in due course of the mails, the countervailing evidence must show the contrary to be true by direct and positive proof of affirmative facts. Charlseson Realty Co. The United States, 384 F.2d 434, 444-445 (U.S. Ct. Cl.

1967). Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary. CUNA Mutual Ins. Group v. Williams (In re Williams), 185 B.R. 598, 600 (9th Cir.BAP1995) (evidence of business routine regarding receipt of mail not sufficient; more positive evidence such as testimony of a clerk's office employee that notice was not sent or proof that none of the listed creditors received notice or that the mail was returned unclaimed.); In re Chicago P'ship Bd., Inc., 236 B.R. 249, 256 (Bankr.N.D.Ill.1999) (the presumption that the addressee of a properly addressed and mailed notice receives that notice may be rebutted by "direct" and "substantial" evidence); Ms. Interpret v. Rawe Druck-Und-Veredlungs-GMBH (In re Ms. Interpret), 222 B.R. 409, 413 (Bankr.S.D.N.Y.1998) (a party must do more than merely assert that it did not receive the mailing; its testimony or affidavit of non-receipt is insufficient, standing alone, to rebut the presumption.); "When a plaintiff unequivocally denies receipt of the letter, there is a genuine issue of a material fact." Jones v. Citibank, 844 F.Supp. 437, 442 (N.D.Ill.1994) (citing In re Longardner & Assocs., 855 F.2d 455, 459 (7th Cir.1988)). The "denial of receipt alone does not rebut the presumption, but merely creates a question of fact." ).

Vinco has submitted evidence by direct and positive proof of affirmative facts to rebut any presumption that may arise. Vinco's evidence which rebuts the presumption is as follows:

- The Certified Mail was returned with the notation "Moved Left No Address."[1]
- Vinco moved from 6649 Ogallah, Chicago, Illinois to 4637 Forestview, Chicago, Illinois on November 6, 2007[2]
- Union representative Anderson admitted that Vinco told him on January 25, 2008, that Vinco did not receive notice[3]
- Vinco sent a letter to Union representative and reiterated that Vinco never received notice of the hearing.[4]

The U.S. Postal Service was unable to deliver the certified mail since Vinco moved and left no address. Since the U.S. Postal Service did not have a forwarding address, it is not reasonable to

---

[1] Plaintiff's Response to Defendant's LR56.1 Statement of Undisputed Material Facts (hereinafter referred to as "PL LR56.1 Response") [Doc. 28] to ¶24.

[2] PL LR56.1 Response to ¶31.

[3] PL LR56.1 Response to ¶47.

[4] PL LR56.1 Response to ¶52.

infer that the letter, which was sent by first class mail, was forwarded to and received by Vinco. Rather, it is reasonable to infer from the foregoing evidence that Vinco did not receive notice of the charges and hearing. It is further reasonable to make this inference in light of the Union's admission that Vinco immediately called the Union upon receipt of the Award on January 25, 2008 and informed Anderson that it did not receive notice.[5]

Thus, this case involves more than Vinco's mere denial of receipt of the letter which contained the charges filed against it and the Notice of Hearing. The mere denial of receipt would result in a genuine issue of material fact. However, the Union's failure to submit record evidence as to the fact of sending the charges and Notice of Hearing by regular U.S. Mail coupled with the Union's failure to submit record evidence that it was mailed with sufficient postage, prevents the presumption of delivery from arising in the first instance. Even if the presumption were to arise, Vinco rebutted it with positive evidence.

## II. DUE PROCESS WAS NOT AFFORDED VINCO

The Union asserts that Vinco received due process since Vinco did not provide the Union with its new address. Vinco respectfully requests that the Court ignore this argument now raised by the Union since it was not raised in its pleadings or as a topic for depositions of Union representatives Anderson and James Stelmasek. The Union cannot now amend its Complaint in the Summary Judgment proceedings. The Union is improperly claiming that Vinco is obligated to provide notice of a change of address. However, the Union specifically alleged in ¶¶11 and 16 of its Complaint that Vinco received notice of the charges and JTB hearing. The Union also asserts in its Reply to Vinco's Counterclaim at ¶8 that Vinco received notice of the charges and JTB hearing [Doc. 13]. Parties cannot amend their pleadings in their summary judgment briefs. See Insolia v.

---

[5] PL LR56.1 Response to ¶47.

Philip Morris, Inc. 216 F.3d 596, 606 (7th Cir.2000).

In fact, the Union's attorney specifically limited the subject matter of inquiry in depositions of Union representatives Anderson and Stelmasek to: a) whether Vinco received notice of the charges and hearing, b) whether the Award derived its essence from the CBA by finding Vinco in an amount of $1,000 per violation and c) whether the JTB heard evidence at the hearing and determined violation occurred. (See Reply to Plaintiff's Response to Defendant's LR56.1 Statement of Undisputed Material Facts (hereinafter referred to as "DEF Reply to PL LR56.1 Response") in Vinco's Statement of Additional Facts at ¶4 and Exhibit 2 attached thereto. Since the Union never raised any obligation of Vinco to provide notice of a change in its address, Vinco also did not engage in discovery which may have showed that the Union did receive notice. Vinco certainly thought that it did provide notice[6] and the Union's failure to timely raise this argument prejudiced Vinco since it was unable to engage in discovery relating to notice received by the Union and/or its representatives as to Vinco's change of address as well as discovery relating to the date the United States Postal Service was provided with a forwarding address by Vinco.

There is no dispute that Vinco maintained an office and telephone where it could be contacted during usual working hours as set forth in Section 14.2. Section 9.8 does not apply since any requirement therein is required to be given to the Benefit Funds. This dispute involves the Union. In any event, there is no dispute that Vinco furnished the Trustees with its business address when it became signatory to the CBA.

Section 14.1 requires Employers to give the Union notice within 10 ten days after the occurrence of certain events. (See Vinco's Statement of Additional Facts at ¶1.) The requirement to provide notice of a change in address is not enumerated in Section 14.1. Under the maxim

---

[6] See DEF Reply to PL LR56.1 Response in Vinco's Statement of Additional Facts at ¶¶2-3.

*expressio unius est exclusio alterius* (expressly including some matters in a contract implies the exclusion of others), see R.L. Coolsaet Construction Co. v. Local 150, International Union of Operating Engineers, 177 F.3d 648, 658 (7th Cir.1999), Vinco cannot be deemed to have a contractual obligation to give notice of a change of address to the Union within 10 days after it moved. Even if Vinco were under any obligation to provide notice, it was given by Vinco on January 25, 2008. (See Union's Statement of Undisputed Facts at ¶32.)

Furthermore, the Rules and Regulations of the JTB obligate the Union to insure that an Employer receives notice of a complaint and hearing and also be present at hearings to present all pertinent information. (See Defendant's Statement of Material Facts at ¶12). This is not merely an evidentiary matter which the Union conclusory asserts.

The Union is silent in its Response as to the cases cited by Vinco in its Memorandum on pages 9-10 (Doc. 21) which show that, in the alternative, due process should result in the vacation of the Award and remand to JTB for an adversarial hearing. See e.g. Chicago Truck Drivers, Helpers And Warehouse Union v. Denton Cartage Co., 648 F. Supp. 1009, 1012 (N.D. Ill. 1986); Local 727, Laborers' International Union of North America v. MacNab, 1999 WL 300283 (N.D. Ill. 1999)(Court vacated arbitration award and remanded dispute back to arbitration board with instructions to conduct an adversarial hearing because employer averred that it did not receive notice of the grievance.); Local 727, Laborers' International Union of North America v. MacNab, 1999 WL 300283 (N.D. Ill. 1999). The Union's silence speaks volumes. At the very least, this matter should be remanded to the JTB for hearing.

Even if the Union's belated argument regarding its claim that Vinco is contractually obligated to provide notice of its change of address is considered, Vinco also did not waive its right to receive notice of and defend any charges brought against it. A waiver is an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U.S. 458, 464

(1938). Any failure of the Union to receive notice was inadvertent and certainly unintentional since Denise Angelilli's life had been complicated and disrupted as a result of the dispute she had with her landlord, the move to her new address, caring for her two children, attending school full time and performing administrative duties for Vinco Painting, Inc.[7]

The excessive fines also show a due process violation. Few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003). Under Campbell, the $302,500 fine violates Vinco's due process rights under the Fourteenth Amendment, which prohibits the imposition of grossly excessive or arbitrary punishments on a wrongdoer. See State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 416, (2003)(citation omitted). Vinco simply failed to appear at the JTB hearing because it did not receive notice and did not engage in any sort of reprehensible conduct that allows for the imposition of such a fine.

The Union received the Certified Mail back prior to the hearing and the receipt for the Certified Mail specifically indicated that it was not delivered since Vinco moved. Vinco does not assert that the Union is required to make weekly inquiries. Rather, the Union should have at least called Vinco on the telephone to ensure that Vinco had notice of the charges and the hearing.

The fact that Charles Anderson may not have personally known at the hearing that Vinco did not receive notice is of no effect since it is undisputed that the certified mail was returned to Anderson's office 3 days *before* the January 17th on January 14, 2008 with the notation that it was not delivered because Vinco moved. (See PL Response To Def. LR 56.1 Statement at ¶¶24-25). Notice is imputed to Anderson. It is well-established that courts impute an employee's knowledge to his or her employer when the employee receives actual notice of a matter but fails to pass on the

---

[7] See DEF Reply to PL LR56.1 Response in Vinco's Statement of Additional Facts at ¶¶2-3.

information to his or her employer. See Cange v. Stotler and Co., Inc., 826 F.2d 581, 592 n. 8 (7th Cir.1987) (oral notice to agent of unauthorized trades sufficient to put principal on notice even when contract provision required written notice); Union Ins. Exchange Inc. v. Gaul, 393 F.2d 151, 154 (7th Cir.1968) (agent's knowledge that insured's prior insurance policy had been cancelled imputable to insurer); State Farm Mutual Automobile Ins. Co. v. Bockhorst, 453 F.2d 533, 536 (10th Cir.1972) (court refused to void policy because local agent's and adjuster's knowledge that insured had been in accident imputable to insurer).

  Whether Tri-Cor Carpentry appeared before the JTB is not dispositive as to whether or not Vinco was afforded due process. Vinco did not have an opportunity to attend and did not make a voluntary, conscious decision to refrain from attending the JTB hearing on March 13, 2008. In fact, the Supplemental Declaration of Charles Anderson (¶5), which is attached to PL Response To DEF LR 56.1 Statement, supports the conclusion that Vinco did not receive due process since Tri-Cor was allegedly asked by the JTB to submit its request in writing. In this case, the JTB did not make any such request of Vinco. Rather, Anderson demanded a check from Vince Angelilli for $50,000. Vince Angelilli told Anderson that Vinco did not have $50,000. Anderson told Angelilli not to ask any questions when Angelilli asked him why he needed a $50,000 check. Anderson did not tell Angelilli that this was a JTB policy and Angelilli thought that Anderson was trying to extort him. Since Vinco did not have $50,000 and Angelilli did not want to face criminal charges for writing a check for insufficient funds if the check was cashed, Vinco did not appear before the JTB on March 13, 2008. (See DEF Amended Response Brief [Doc. No. 33] at p. 8; DEF Amended Response to PL LR 56.1 Statement [Doc. No. 32] of Vinco's Statement of Additional Facts at ¶¶2-3 on pp. 18-19).

  The meeting minutes reflect Anderson's statement to the JTB on March 13th that suit was filed against Vinco. (See Reply to PL LR56.1 Response in Vinco's Statement of Additional Facts

at ¶5). Anderson testified that he makes all notes at the hearings and types them up. Notably absent from the meeting minutes is any remark by Anderson that he spoke with Vince Angelilli on March 12th as Anderson now claims in his Declaration which corroborates Vince Angelilli's testimony. Logic dictates that Anderson's alleged March 12th conversation with Vince Angelilli would have been contained in the minutes of the March 13th meeting had such conversation occurred.

## II. THE JTB IMPROPERLY MODIFIED RATHER THAN INTERPRETED THE CBA

The Award does not draw its essence from the CBA and should be vacated. Section 13.5 of CBA provides the JTB with authority to award actual damages plus fines not to exceed $1,000 per violation. (See Vinco's Statement of Material Facts at ¶ 11(d)[Doc. 20]). This provision is clear and unambiguous. An arbitrator cannot ignore the clear and unambiguous language of the agreement. Tootsie Roll Indus., Inc. v. Local Union # 1, 832 F.2d 81 (7th Cir.1987). The arbitrator's award "is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Id. In applying this standard, the Seventh Circuit has observed that when the arbitrator bases his award "on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference) ... the award can be said not to draw its essence from the [CBA] ." Dexter Axle Co. v. Int'l Assoc. of Machinists, 418 F.3d 762, 768 (7th Cir.2005) (internal quotation omitted).

In Road Master Corp. v. Production and Maintenance Employees' Local 504, Laborers' International Union Of North America, 851 F.2d 886, 888-889 (7th Cir. 1988), the Seventh Circuit affirmed the trial court's vacation of an arbitrator's award where the arbitrator exceeded his

9

authority by considering outside "positive" law. In finding that the arbitrator ignored the the <u>Road Master</u> Court based its analysis upon The United States Supreme Court's Opinion in <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) wherein Justice Powell described an arbitrator's role as follows:

> His source of authority is the collective-bargaining agreement, and he must interpret and apply that agreement in accordance with the "industrial common law of the shop" and the various needs and desires of the parties. The arbitrator, however, has no general authority to invoke public laws that conflict with the bargain between the parties:
>
> "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." <u>United Steelworkers of America Enterprise Wheel & CarCorp.</u>, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

415 U.S. at 53.

The Union's reliance on <u>Ethyl Corp. v. United Steelworkers of Am.</u>, 768 F.2d 180 (7th Cir. 1985) is misplaced. The Union relies upon <u>Ethyl Corp.</u> for the proposition that if "the arbitrator may have been wrong, maybe even clearly wrong," that "does not show that he was doing something other than interpreting the contract." Vinco has no quarrel with this proposition. However, even the broad language of <u>Ethyl Corp.</u> does very little because it simply does not present the issues confronted here.

The arbitrator in <u>Ethyl Corp.</u> was presented with a situation in which the employer prevented employees from earning vacation in a certain year by laying them off-temporarily, as it turned out-thereby foreclosing their ability to work the requisite number of hours. In an effort to interpret the parties' CBA in light of the circumstances, the arbitrator "applied ... a traditional principle of contract law: that you cannot prevent the other party to the contract from fulfilling a condition precedent to your own performance, and then use that failure to justify your nonperformance." 768

F.2d at 185. The Seventh Circuit found that by inferring this doctrine of conditions into the contract, the arbitrator was doing no more than reading the contract in a methodologically "conventional" fashion. Id. at 187.  Thus, Ethyl Corp. teaches that an arbitrator may apply traditional doctrines of contract law to infer implied conditions into the contract; however, Ethyl Corp. does not speak at all to the parameters of an arbitrator's application of a specific contractual provision for the imposition of fines limited to a maximum amount of $1,000 per violation.  Unlike Ethyl Corp.,"our point is that there is nothing in the arbitrator's Opinion that even remotely suggests he is attempting to interpret the Agreement; indeed, everything militates against such a conclusion." Judsen Rubber Works, Inc. v. Mfg., Production & Service Workers Union Local No. 24, 889 F.Supp. 1057, 1065 fn. 8 (N.D. Ill. 1995).

>The Judsen Rubber Works court declared:
>
> "The key, as we read the Seventh Circuit opinions, is that reliance on past practice is proper where it is in the service of interpreting the contract rather than serving as a mechanism to rewrite a contract based on the arbitrator's sense of industrial fairness. See Tootsie Roll Indus., Inc. v. Local Union No. 1, Bakery, Confectionery & Tobacco Workers' Int'l Union, 832 F.2d 81, 84 (7th Cir.1987) ("[R]eliance on the law of the shop is appropriate to interpret ambiguous contract terms ... the law of the shop cannot be relied upon to modify clear and unambiguous provisions."). In this regard, we find the following passage concerning past practice and the "common law of the shop" instructive: when there are overlapping contracts, or where a party seeks to disambiguate a contractual provision by reference to the parties' practices, the concept of the "common law of the shop" comes into play.... But this is not true common law; it is an interpretive concept. It denotes a methodology for interpreting a written contract....International Ass'n of Machinists & Aerospace Workers, Progressive Lodge No. 1000 v. General Elec. Co., 865 F.2d 902, 906 (7th Cir.1989) (citations omitted). This passage reinforces our conclusion that past practice and the common law of the shop are not licenses for creating new contractual terms but are merely vehicles for contract interpretation.

889 F.Supp. at 1064.

Likewise, "[an] award fails to derive its essence from the agreement when (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is

based on "general considerations of fairness and equity" instead of the exact terms of the agreement. " Dallas & Mavis Forwarding Co., Inc. v. General Drivers, Warehousemen & Helpers, Local Union No. 89, 972 F.2d 129, 134 (6th Cir. 1992)(citations omitted).

Section 13.5 is not ambiguous which would allow the JTB to infer any contract doctrines into the application of remedies set forth thereunder as the arbitrator did in Ethyl Corp.. The Award conflicts directly with Section 13.5 and is not rationally supported by or derived from the agreement. Section 13.5 does not empower the JTB to issue fines that exceed $1,000 per violation. This is completely different than authorizing the JTB to issue a fine accruing at the rate of $500 or even $1,000 per day. Union representative James Stelmasek testified that he alleged Vinco committed 4 violations of the CBA. (Vinco's Statement of Material Facts at ¶20 [Doc. 20]). Calculations underlying the Award show that the JTB awarded $3,449.86 in damages and $302,500 in fines. (See Plaintiff's Statement of Undisputed Facts at ¶27[Doc. 16]). The damages portion of the Award represent a minuscule 1.1% of the total $305,949.86 Award. Thus, the JTB improperly modified, rather than interpreted, Section 13.5 just as the arbitrator in Judsen Rubber Works impermissibly modifies the parties' contract.

Moreover, an award does not draw its essence from the contract when the arbitrator fails to discuss critical terminology which might reasonable require a different result. See Clinchfield Coal Co. v. District 28, United Mine Workers, 720 F.2d 1365, 1369 (4th Cir. 1983); see also George A. Hormel & Co. v. Local 9, AFL-CIO, 879 F.2d 347, 351 (8th Cir. 1989)(There is a strong possibility that the award was not based on the contract where an arbitrator fails to discuss a probative contract term and explain how he construed the contract). The JTB did not discuss Section 13.5 of the CBA in its Award and its silence further supports Vinco's assertion that the JTB did not interpret the contract in imposing a daily fine upon Vinco retroactively.

The fines issued by the JTB contravene Section 13.5 and it is absurd to argue to the contrary.

As with any contract, a labor agreement should not be interpreted in a way that produces an absurd result See <u>Architectural & Ornamental Iron Workers Local Union No. 63 v. Int'l Union of Elevator Constructors, Local 2</u>, 475 F.Supp. 2d 757 (N.D.Ill. 2006). Vinco is not alleging that the JTB merely misread or misinterpreted the CBA. Rather, the JTB exceeded the authority given them under the CBA and they dispensed their own industrial brand of justice.

Additional support to find that the JTB exceeded their authority is found in Section 14.6 of the parties current collective bargaining agreement which has replaced the "old" Section 13.5 to increase the maximum penalty that the JTB can impose per violation. The maximum penalty of $1,000 set forth in Section 13.5 has now been increased to a maximum penalty of $2,500 per violation in Section 14.6 of the parties' CBA that was renewed for the period from May 1, 2008 - April 31, 2001.(See DEF Reply to PL LR56.1 Response in Vinco's Statement of Additional Facts at ¶1). It is difficult if not impossible to envision a violation whereby the imposition of a daily fine in the amount of $2,500 (let alone a daily fine of $1,000) would justify a violation under the Union's argument. However, it is more logical to understand that the imposition of a $1,000 fine might not be sufficient to deter future violations and that the parties; therefore, desired to provide the JTB wit authority to levy a higher fine for a violation.

Even under yet another principle of contract interpretation, "[a] contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek." <u>United States v. Barnett</u>, 415 F.3d 690, 692 (7th Cir.2005) (citing <u>Beanstalk Group, Inc. v. AM Gen. Corp.</u>, 283 F.3d 856, 860 (7th Cir.2002); <u>Nelson v. Schellpfeffer</u>, 656 N.W.2d 740, 743 (S.D.2003); <u>Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79, 96 (3d Cir.2001)). It would be absurd to conclude the parties authorized the imposition of fines that total more than 98% of actual damages.

In light of the foregoing law and argument, Plaintiff/Counter-Defendant, Vinco Painting, Inc. moves this Honorable Court to:

A. Grant its Motion for Summary Judgment in its favor and against Plaintiff on Plaintiff's Complaint and on Vinco's Counterclaim,

B. Vacate the JTB Award and remand the dispute to the JTB; or

C. If the Court does not vacate the Award and remand the dispute, vacate the Award in its entirety or, at the very least, reduce the award to $8,276.61; and

D. Award Vinco Painting, Inc. such other relief deemed just and equitable.

Respectfully submitted,

VINCO PAINTING, INC.

By  /s/ Joseph P. Berglund
       One of Its Attorneys

Joseph P. Berglund
BERGLUND & Mastny, P.C.
1010 Jorie Boulevard, Suite 370
Oak Brook, Illinois 60523-2229
(630) 990-0234
J:\C-Drive\WPDOCS\Vinco Painting\PDC 30 JTB Award\Replymemo in supportmoSJdgmt7.15.08.wpd`