UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Painters District Council No. 30,

    Plaintiff/Counterdefendant,

v.

Vinco Painting Inc.,

    Defendant/Counterplaintiff.

Case No. 08-cv-1163
Judge Conlon
Magistrate Judge Ashman

## PLAINTIFF'S REPLY IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Painters District Council No. 30 (the "Union") submits the following memorandum in reply to Defendant's response in opposition to Plaintiff's summary judgment motion, and respectfully requests that this Court grant summary judgment in favor of Plaintiff and against Defendant Vinco Painting Inc. ("Vinco") both on the Union's claim against Defendant for confirmation of an arbitration award and on Defendant's counterclaim against the Union to vacate the award.

### I. Plaintiff's Attempts to Notify Defendant Were Reasonable, Provided Actual or Constructive Notice, and Satisfied Its Obligations to Provide Due Process.

The undisputed facts belie Defendant's contention that the Union acted to deprive it of due process and that this Court must therefore vacate the Award. On the contrary, it was Vinco's slothful approach to notifying the Union of its current office address where the Union could contact it that directly led to any failure by Vinco to receive notice of the hearing and charges against it.

As a threshold matter, this Court should reject Defendant's contention that, by failing to plead it in the complaint, the Union has somehow waived the argument advanced in its

summary judgment motion: that Defendant, having failed to keep the Union apprised of its address, cannot now complain that the Union denied it due process by mailing notice to the only address that Defendant had ever provided. Plaintiff is not "amending the pleadings" by making this argument; it did not need to amend them because the argument represents no new or different cause of action than the Complaint already sets forth. Compare *Insolia v. Philip Morris, Inc.*, cited by Defendant, in which Plaintiffs argued for summary judgment on the basis of a different cause of action — that the public health community was defrauded by Defendant's actions and they had suffered harm as a result — than that pled in the complaint — that they themselves had been defrauded. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 606 (7th Cir. 2000). In the instant case, Plaintiff alleged that Defendant had received notice, as the copy of the notice of hearing sent by regular first-class mail was never returned. (Pl. SMF at ¶ 22.)[1] Defendant denied having received notice, and when asked to explain the basis for this denial in discovery, Defendant claimed that it had moved to a new address. (Def. SMF at ¶ 31.) It was Defendant that raised its change of address, and the Union is fully entitled to argue as to the sufficiency of this asserted defense.

That defense, however, lacks merit. Defendant claims that the CBA required it merely to "maintain" an office and telephone where it could be contacted but nonetheless entitled it to refuse to divulge this information to the Union. The Defendant's interpretation renders the phrase 'where it can be contacted' meaningless. To maintain an office where someone in the know *could* contact you is not the same as maintaining an office where one *can* be contacted. Similarly, the requirement at Section 9.8 that employers notify the benefit funds of their address when they sign the contract becomes meaningless if an employer can move two days after providing it and tell no one. These two contract sections together require employers to maintain a current office address with the Union so that the Union may con-

---

[1] Plaintiff recognizes that whether Defendant received the copy of the notice sent by first-class mail is a disputed factual issue in this case.

2

tact them. Defendant attempts to distract from this sensible reading of the contract by invoking the *expressio unius* canon of statutory interpretation with regard to Section 14.1 of the Agreement, which lists various events of which an employer must notify the Union within ten days. But Defendant fails to note the types of events listed there. All of them — "formation of partnerships; termination of business; change of name commonly used in business operations; change of form of business organization; incorporation of business; dissolution of corporation; name and business organization of successor; admission to or withdrawal from any association operating as a multi-employer bargaining agent; and formation of a L.L.C." (Def. Additional SMF at ¶ 1) — are fundamental changes to the organization or manner of doing business of the employer. A simple change of address does not fall into this category, and the parties' failure to include it in Section 14.1 does not indicate that the employer need not give notice of a change of address, particularly given the requirements of Sections 9.8 and 14.2.

Finally, Defendant is simply wrong that "[t]here is no reason to impose any duty upon a union which is different from the duty imposed upon a union in disciplining its members." (Def. Resp. at 6.) The most obvious distinction is that a union's duties with respect to discipline of its members derive from the "union members' bill of rights" in the Labor Management Reporting and Disclosure Act (the "LMRDA"), which protects the rights of *union members*, and not employers. 29 U.S.C. § 411(a) *et seq.* The LMRDA exists to "promot[e] union democracy, and protect[] the rights of union members from arbitrary action by the union or its officers." *Finnegan v. Leu*, 456 U.S. 431, 442 (1982). By contrast the statute regulating the balance of power between unions and employers — the National Labor Relations Act — has at its heart union members' right to self-organization, including collective bargaining and the right to strike. *Pattern Makers' League of N. Am. v. National Labor Relations Board*, 473 U.S. 95, 118 (1985). The NLRA preserves both parties' rights to wield economic power against one another, as employers are hardly powerless at the hands of unions and

3

do not require protection through a statutory "bill of rights." In the present case, the Union had no unilateral power to decide whether or not to "discipline" the Defendant; it brought its case before a neutral board comprised of both union and employer representatives, which rendered a decision. There is every reason to treat the present case differently from a case in which a union member stands to be fined or expelled by a union on disciplinary charges. Defendant's LMRDA cases are inapposite. Defendant received the process it was due when Plaintiff mailed notice of the hearing by *both* certified and regular first-class mail to the address most recently submitted by Defendant — an address that Defendant knew was over two months out of date.

In short, Defendant was under an obligation to keep the Union informed of its current office location, and it failed to do so. If it had met its obligation, there would be no question about whether it had received notice. Instead, Defendant failed for two and a half months after moving to tell the Union where it had gone, and the notice sent by certified mail to the address provided by Defendant came back to the Union undelivered, leaving the parties to dispute the fate of the copy sent by first-class mail. Defendant cannot reasonably complain that the inevitable result of its own failure to notify the Union of the very basic fact of where it maintains its office, in violation of the contract, has resulted in a failure of due process.

## II. The JTB's Fines Were Neither Excessive nor Absurd.

Defendant makes two contentions, both wrong, with respect to the proportion of the fines levied against Defendant by the JTB to the wages that the JTB found Defendant owed four of its employees: (a) the fines violate Defendant's due process rights because they exceed the ten-to-one ratio for "punitive damages" suggested by the Supreme Court as the upper limit that will generally satisfy due process in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and (b) the fines are so "absurd" a result that the JTB could not have been interpreting the contract.

First, *Campbell* has no bearing upon the present case. The Supreme Court in *Campbell* held that in tort cases, in which a court's aim is to punish tortious conduct and deter future misconduct, due process requires proportionality between "punishment" and "offense," measured by the ratio of punitive damages to actual damages. *Campbell* at 422-23, 425. In the present case, the situation is quite different. Rather than a judge or jury crafting a damage figure that punishes a wrongdoer for tortious misconduct, the present case simply involves straightforward contract damages freely negotiated by the parties. Any fine falling within the negotiated range presumptively satisfies due process.[2] Because the parties agreed to fines of up to $1,000 for contract violations, and because the JTB assessed fines at only half that rate, the fines are *per se* proportionate and reasonable and do not implicate due process at all.

The second of Defendant's contentions — that the JTB cannot possibly have been interpreting the contract because its interpretation is absurd — is itself absurd. Defendant offers no argument beyond baldly asserting that it is an "absurd" result for contractual fines assessed at an arbitration hearing to significantly exceed contractual damages for unpaid wages. But even a cursory examination of the collective-bargaining agreement reveals that this is not an absurd result at all. The contract authorizes the JTB to assess a $1,000 fine against an employer every time it violates the contract. (Pl. MSJ Exh. 2-A at 44.) But the contract contains various provisions that an employer could breach without causing any party to incur monetary damages: for instance, an employer could fail to report a change in the form of its business organization, or fail to comply with state of Illinois health and safety laws, or fail to provide proper lighting for employees. (Pl. MSJ Exh. 2-A at 16, 20, 46.) None of these violations would result in monetary damages other than fines, yet the JTB could

---

[2] Even if this Court's function *were* to evaluate whether the fines awarded by the JTB were reasonable, it would be difficult to conclude that a $500 fine for violating the CBA is so far outside the bounds of reasonableness as to implicate due process concerns. That the aggregate fine becomes large when Defendant violates the CBA many times does not make $500 an unreasonable fine.

properly fine the employer $1,000 for each of these violations under the CBA. That is, the JTB could issue an award consisting 100% of fines. The contract authorizes every ratio of fines to other contract damages, from 0 to 1 all the way to 1 to 0, and no particular ratio is any more "absurd" than another. The large ratio of fines to other damages in the JTB's award in this case proves not that the JTB somehow strayed outside the collective bargaining agreement, but simply that it interpreted and applied the terms of the agreement authorizing it to issue a separate fine of $1,000 every time an employer violates the contract. It is not an "absurd" result that an employer incurs significant fines upon repeatedly violating the contract; on the contrary, that result is exactly what the parties bargained for, and the law gives this Court no authority to rewrite the parties' bargain by eviscerating the JTB's contractual authority to issue fines for contractual violations.

Defendant calls the contractual damages cap of $1,000 per violation "clear and unambiguous." Yet the parties to this action continue in reasoned debate as to what it means. Defendant asserts that '$1,000 per violation' means, "$1,000 per section of the contract that an employer violates, no matter how many times it does so," and Plaintiff asserts that the JTB reasonably interpreted that same phrase to mean, "$1,000 per occasion on which an employer violates any section of the contract." Defendant asserts that it may violate the contract over and over again without incurring more than $1,000 in fines so long as it keeps violating the *same section* of the contract; Plaintiff asserts that the JTB's interpretation that it may fine an employer *each time* it violates the contract is reasonable.[3] But regardless of

---

[3] While perhaps literally true, Defendant's claim that "Union representative James Stelmasek testified that he alleged Vinco committed 4 violations of the CBA" is misleading when taken out of context. Stelmasek testified as follows:
    Q. You charged Vinco with violating the collective bargaining agreement; correct?
    A. Yes.
    Q. And the different sections that you charged Vinco Painting with violating; correct?
    A. Yes.
    Q. Are those sections set forth on the first page of your letter dated December 28, 2007?
    A. Yes.    *(cont'd next page)*

whose interpretation is more reasonable, *both are interpretations of the contract*. Despite Defendant's protest that it "is not alleging that the JTB merely misread or misinterpreted the CBA," (Def. Resp. at 2), that is exactly what Defendant alleges. The fact that it does not like the award of the JTB does not make it "absurd." Even a "clearly wrong" interpretation of the collective-bargaining agreement must be upheld by a reviewing court. *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 184 (7th Cir. 1985). But there is nothing inherently absurd about agreeing to a contract that authorizes fines of up to $1,000 each time one violates it, as evidenced by the fact that Defendant did just that.

Because the JTB was so obviously engaged in contract interpretation, Defendant must resort to wild speculation in order to try to cast doubt upon the JTB's award. Defendant opines that the JTB awards against both Tri-Cor Carpentry and Defendant show that "the JTB dispense their own industrial brand of justice to punish Employers they might view as combative and to 'reward' them when Employers appear non-combative." (Def. Br. at 4.) But Defendant presents no evidence as to what occurred when Tri-Cor appeared before the JTB; for all Defendant knows Tri-Cor *was* combative at the meeting but presented overwhelming evidence in support of its case. And the subjective motivations of a joint arbitration board are in any event irrelevant, *McGann Plumbing, Inc. v. Chicago Journeymen Plumbers Local 130*, 522 F. Supp. 2d 1009, 1014 (N.D. Ill. 2007), and this Court should decline Defendant's invitation to speculate about those motivations. Instead, this Court should accept the JTB's decision for what it is: the JTB's interpretation and application of the contract to the evidence presented at the January 17 hearing. This Court should not second-guess the

---

    Q. How many violations did you charge Vinco with?
    A. Looks like four.
(Def. MSJ Exh. 3 at 9-10.) These questions were clearly calculated to elicit from Stelmasek the number of *contract sections* he charged Defendant with violating. The minutes from the JTB meeting make clear that the JTB found that Defendant violated the contract on many more than four occasions. (Pl. MSJ Exh. 2-F.)

JTB's fact-finding and contract interpretation but should instead confirm its award against Defendant.

## CONCLUSION

Summary judgment should be granted in favor of the Union and against Defendant. The JTB afforded Defendant the process that it was due, particularly given that the Defendant dirtied its hands by neglecting its obligation to keep the Union informed of its current office address for well over two months. The JTB award reflects a reasoned interpretation of the collective-bargaining agreement that the federal common law does not empower the courts to second-guess. Despite the fact that Defendant finds it unpalatable, Defendant got exactly what it bargained for: an interpretation of the contract language that it bound itself to by an arbitral panel that it also agreed to. The Union respectfully requests this Court to enter judgment against Defendant and in favor of Plaintiff, entering an order confirming the Arbitration Award of the Joint Trade Board against Defendant Vinco Painting, Inc., dismissing Defendant's Counterclaim, and awarding the Union its reasonable attorneys' fees and costs pursuant to the terms of the collective bargaining agreement.

Respectfully submitted,

**PAINTERS DISTRICT COUNCIL NO. 30**

By:   s/ David Huffman-Gottschling
One of its attorneys

David Huffman-Gottschling
ARDC No. 6269976
Jacobs, Burns, Orlove, Stanton and Hernandez
122 S. Michigan Ave., Ste. 1720
Chicago, Illinois 60603
(312) 372-1646

## CERTIFICATE OF SERVICE

I, David Huffman-Gottschling, an attorney, certify that I caused a copy of the foregoing document to be served electronically upon the person below by filing it using the ECF system on July 16, 2008:

>Joseph P. Berglund
>Berglund & Mastny, P.C.
>900 Jorie Blvd., Ste. 122
>Oak Brook, IL 60523-2229

>s/ David Huffman-Gottschling
>David Huffman-Gottschling