UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Painters District Council No. 30,<br><br>      Plaintiff/Counter-defendant,<br><br>  v.<br><br>Vinco Painting Inc.,<br><br>      Defendant/Counter-plaintiff. | Case No. 08-cv-1163<br>Judge Conlon<br>Magistrate Judge Ashman |

**PLAINTIFF'S MOTION TO STRIKE IN PART
DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S LR56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff moves to strike portions of Defendant's "Reply to Plaintiff's Response to Defendant's LR56.1 Statement of Undisputed Material Facts" for failure to comply with the requirements of Local Rule 56.1, together with any portions of Defendant's summary judgment reply brief referring to or relying upon the non-compliant materials, and states the following in support:

    1.    On June 6, 2008, Defendant filed its Motion for Summary Judgment, and filed therewith a supporting statement of undisputed material facts as required by LR56.1. (Docket No. 20.)

    2.    On June 16, 2008, Defendant filed a motion requesting an extension of time for the parties to file their respective summary judgment responses and replies which motion the Court granted. Pursuant to the modified briefing schedule, on July 8, 2008, Plaintiff filed its response to Defendant's summary judgment motion, including a Response to Defendant's Local Rule 56.1 statement of undisputed material facts that, following the requirements of the local rules, included both a response to each of Defendant's numbered

statements of fact in its LR56.1 Statement together with references to the record and, as permitted by LR56.1(b)(3)(C), a statement of additional facts that it contended required the denial of summary judgment. (Docket No. 28.)

3. On July 15, 2008, Defendant filed its summary judgment reply. However, not only did Defendant submit "a concise reply in the form prescribed in [subsection (b)] for a response," LR56.1(a), it *also* filed *additional* materials not contemplated by the local rules — specifically, additional evidentiary materials and additional enumerated statements of fact.

4. These additional materials are not authorized by LR56.1. The local rule provides that "if additional material facts are submitted by the opposing party pursuant to section(b)," as Plaintiff did in the instant case, "the moving party may submit a concise reply *in the form prescribed in that section for a response*." LR56.1(a), emphasis added. The form prescribed in section (b) for a response is found at LR56.1(b)(3)(B): "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. *Id.* The Rule provides for no other reply by the moving party beyond responding to each numbered paragraph in the respondent's Statement of Additional Material Facts. *See, e.g., Solaia Technology LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 826 n.27 (N.D. Ill. 2005) ("a summary judgment movant … is not entitled to reply to the non-movant's response to its statement of facts"); *Kozlowski v. Fry*, 238 F. Supp. 2d 996, 1000 n.2 (N.D. Ill. 2002) (declining to consider improper LR56.1 "reply" materials submitted by movant); *Robinson v. Honeywell Microswitch Div.*, 2001 WL 13257, *3 (N.D. Ill. 2001), attached hereto as Exh. 1 (granting motion to strike movant's additional material facts and evidence submitted with summary judgment reply).

5. Defendant's submission of a "Statement of Additional Facts in Response to

Defendant's Response" and three additional supporting exhibits was improper, and the statement and three exhibits should be struck, along with all references thereto in Defendant's summary judgment reply.

FOR ALL THE FOREGOING REASONS, Plaintiff respectfully requests that this Court strike the portion of Defendant's "Reply to Plaintiff's Response to Defendant's LR56.1 Statement of Undisputed Material Facts" appearing at pages 2 and 3 and sub-titled "Statement of Additional Facts in Response to Defendant's Response," Exhibits 1 – 3 thereto, and all references to the struck material in Defendant's summary judgment reply brief.

                                            Respectfully submitted,

                                              s/  David Huffman-Gottschling
                                            One of its attorneys

David Huffman-Gottschling
Jacobs, Burns, Orlove, Stanton and Hernandez
122 S. Michigan Ave., Ste. 1720
Chicago, Illinois 60603
(312) 372-1646

## CERTIFICATE OF SERVICE

I, David Huffman-Gottschling, an attorney, certify that I caused a copy of the foregoing document to be served electronically upon the following person by filing it using the ECF system on July 22, 2008:

                            Joseph P. Berglund
                            Berglund & Mastny, P.C.
                            1010 Jorie Blvd., Ste. 370
                            Oak Brook, IL 60523-4467

                                              s/  David Huffman-Gottschling
                                            David Huffman-Gottschling

4

# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 13257 (N.D.Ill.)
**2001 WL 13257 (N.D.Ill.)**

Robinson v. Honeywell Microswitch Div.
N.D.Ill.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Western Division.
Victoria ROBINSON, Plaintiff,
v.
HONEYWELL MICROSWITCH DIVISION, Defendant.
**No. 98 C 50277.**

Jan. 3, 2001.

Michael K. Havrilesko, Havrilesko & Associates, Rockford, for Plaintiff or Petitioner.
Kevin J. Luther, Heyl, Royster, Voelker & Allen, Rockford, Pamela J. King, Micro Switch, Freeport, for Defendant or Respondent.

MEMORANDUM OPINION AND ORDER

REINHARD, J.

*Introduction*

**\*1** On August 26, 1998, plaintiff Victoria Robinson filed a complaint against defendant Micro Switch, a division of Honeywell, Inc. ("Micro Switch"), pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.* Micro Switch has filed a motion for summary judgment pursuant to Fed .R.Civ.P. 56 and a motion to strike pursuant to Fed.R.Civ.P. 12(f). During a status hearing on December 6, 2000, Robinson orally moved to strike additional materials Micro Switch submitted with its reply brief and response to Robinson's LR56.1(b) statement. This court has jurisdiction over Robinson's claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper as the alleged events occurred in this district and division. *See* 28 U.S.C. § 1391(b).

*Facts*

Robinson (African-American) has worked at Micro Switch in Freeport, Illinois, since 1976 and currently holds the position of Team Member Four on second shift in Department 280, a department which places resistors or conductors on ceramic capacitors through thick film printing. (LR56.1(a) ¶¶ 1-3) Her supervisors for the relevant time periods have been: Mark Gallagher (1996-98), Charmaine Munz (1998-99), Denise Dykstra (portions of 1999) and Larry Trask (1999-present).(*Id.* ¶¶ 4-5)

Apparently, Robinson's employment at Micro Switch was relatively uneventful until September 1996 (or least she has not mentioned any incidents prior to that time). At that time, Robinson had an argument with a coworker, Patty Beam, and a supervisor, Mike Entmeier, got involved. He said something to Robinson to the effect that he did not want the incident to "blow up any bigger" than it was, to which Robinson responded that it probably would not if he stayed out of it. (*Id.* ¶ 44; Def. Exh. 1, Robinson dep., p. 30) Entmeier lost his temper and shoved a notebook into Robinson's chest. (Def. Exh. 1, Robinson dep., p. 33)

Robinson, Beam, and Donna Dwyer, a location facilitator, met to discuss the incident and Dwyer then wrote a report, dated October 7, 1996. (LR56.1(a) ¶ 49) According to Robinson's version (which the court accepts as true at this time), she told Dwyer that Entmeier had shoved a book at her, which she perceived to be an assault. Dwyer laughed and said that was when Entmeier "lost it." (Def. Exh. 1, Robinson dep., p. 33) To cover up for Entmeier, however, Dwyer did not mention in her report Entmeier striking Robinson with a notebook. Instead, Dwyer's report addressed efforts to improve the working relationship between Beam and Robinson. (LR56.1(a) ¶¶ 56, 60) George "Ralph" Hill (African-American), Micro Switch's Director of Human Resources, reviewed Dwyer's report and concluded that satisfactory agreements had been reached to minimize future conflict. (*Id.* ¶ 62)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

In April 1997, Robinson again complained about the incident. At that time, a human resources representative, Rebecca Anderson, investigated. As part of her investigation, Anderson spoke with Dorothy Turner, one of Robinson's coworkers, who witnessed the incident. (*Id.* ¶ 66) According to Turner (the version the court accepts at this stage), she told Anderson that Entmeier had forcefully shoved the notebook into Robinson's chest. (LR56.1(b) ¶¶ 229, 232) Anderson also spoke with Entmeier, who stated he had merely handed the notebook to Robinson, and she took it out of his hand. (LR56.1(a) ¶ 69) Based on her investigation, Anderson concluded the only corrective action needed was to coach Entmeier on maintaining a professional demeanor with employees at all times. Hill reviewed Anderson's investigation and could not conclude that Entmeier had handed the notebook to Robinson with such force so as to constitute an assault. (*Id.* ¶ 72)

*2 Robinson was involved in an incident which occurred in March 1997 with a coworker, Marsha Manske. The two women had words and during the exchange Manske pointed her finger in Robinson's face, said "bullshit" several times, and told Robinson, "kiss my ass." (*Id.* ¶ 81) Anderson investigated this incident by speaking with Manske, Entmeier, and Kathy Miley, a witness to the incident. As a result of the incident, Manske was given a verbal warning regarding the use of profane language. (*Id.* ¶ 89)

Robinson also claims that in July 1997, her former first shift supervisor, Charmaine Munz, accused her of failing to show up for overtime on a Saturday.(*Id.* ¶ 97) Robinson told Munz she had never signed up for the overtime and that someone else must have put her name on the list. (*Id.*) As a result, Munz reviewed the rules for overtime with everyone in the department. (*Id.* ¶ 105) Although no official reprimand was placed in Robinson's file, she maintains the incident contributed to Munz' overall perception that Robinson was a troublemaker.

In 1998, Munz gave Robinson a performance review which Robinson characterizes as poor. According to Robinson, Munz did not properly calculate the number of sick time make-up hours Robinson had accumulated. (LR56.1(b) ¶ 273) Robinson also states Munz wrote her up for the number of sick days she had, yet Gary Blair (Caucasian) used more sick time, was not written up, and received a higher pay raise than Robinson. (*Id.* ¶ 271)

Coworkers have also told Robinson they have heard white coworkers use the word "nigger" at work. (LR56.1(a) ¶¶ 118-20) She directly heard the word used once, but only through hearsay. Specifically, Theresa Liu, a coworker, told her a white coworker said she was leaving the department because she was sick of the company catering to the "niggers" in the department. (Def. Exh. 1, Robinson Dep., p. 77) Debbie Schwartz told Robinson the same thing, although the record is unclear as to whether Schwartz was referring to the same white coworker or a different employee, involving a different incident. *Compare* LR56.1(a) ¶¶ 119-20 (Schwartz identified Marion Long as the culprit) *with* LR56.1(b) ¶ 245 (Theresa Liu identified Marsha Manske as the culprit).

In any event, Robinson reported to human resources representatives, Larry Trask (African-American) and Hill, that Long had made racial slurs and stated there were "too many niggers on second shift."(LR56.1(b) ¶ 246) According to Robinson, when she complained to Trask he sarcastically told her the company did not have a policy about white employees using racial slurs, and told her she was too sensitive and did not know how to play the game. (*Id.* ¶¶ 247-48) Company records show Anderson and Munz investigated Long's reported use of the offensive word. Although she denied using any racial slurs, the company issued her a "performance report," which stated that "any future incidences [sic] of non-teaming behavior and/or harassment will be investigated and could result in further disciplinary action, up to and including termination."(LR56.1(a) ¶¶ 124, 129-30; Def. Exh.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

23) Robinson also states her supervisor in 1999, Denise Dykstra, told her the white girls in the department did not want her to work overtime with them. (LR56.1(b) ¶ 284)

***3** Robinson states she was denied a promotion in April 1999 because of false write-ups in her file. (*Id.* ¶ 287) It is unclear what false write-ups Robinson is complaining about. According to Robinson, Munz created a document which listed incidents Robinson was involved in and which, according to Munz, showed she was a troublemaker. Yet the only document which appears to fit her description was signed by Mark Gallagher. (Def.Exh. 21) In any event, Robinson states the incidents Munz listed correspond to the complaints she made about unfair treatment and racial slurs. (LR56.1(b) ¶ 288)

Robinson filed Charge Number 210982124 with the Equal Employment Opportunity Commission ("EEOC") on March 25, 1998, alleging race discrimination, racial harassment, and retaliation. The EEOC issued a right-to-sue notice on June 26, 1998. Robinson filled out another EEOC charge and dated it August 25, 1998. The EEOC charge attached to Robinson's complaint in this lawsuit contains no markings to indicate the EEOC received this charge, nor did she allege in her complaint whether she received a right-to-sue notice in relation to this charge.

*Preliminary Matters*

Micro Switch has moved to strike two affidavits of Dorothy Turner attached to Robinson's statement of additional facts. Micro Switch's motion centers largely on evidentiary objections, and the court denies it. Nevertheless, the court agrees with Micro Switch's arguments. Turner's affidavit dated November 21, 2000, centers on an incident involving Entmeier shoving a notebook at Robinson. As will be discussed *infra,* Robinson did not timely file a charge with respect to this incident. Therefore, the November affidavit is irrelevant.

The court also finds Turner's affidavit dated July 26, 2000, which largely addresses claims that she was discriminatorily denied promotions, is irrelevant. Turner's claims challenge Micro Switch's promotion policies and procedures. As will be discussed *infra,* the 1999 promotion Robinson challenges is beyond the scope of her charges in this case, and Robinson has not otherwise shown a connection between Turner's allegations and her claims. The court finds Turner's remaining allegations (Pl. Exh. A, Turner Nov. Aff., ¶ ¶ 10, 12-13; Pl. Exh. B, Turner July Aff., ¶¶ 15-16) are conclusory, vague, and of little value. *See Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir.1998) (district court properly struck affidavits with conclusory allegations, completely lacking specific, concrete facts).

At a status hearing on December 6, 2000, Robinson orally moved to strike additional materials Micro Switch submitted in support of its reply brief and responses to Robinson's LR56.1(b) statement of additional facts as being in derogation of LR56.1. The court agrees. Under LR56.1(a), the moving party may controvert additional material facts submitted by the opposing party pursuant to LR56.1(b). However, its denials must be based on materials already part of the record unless the opposing party's LR56.1(b) statement of additional facts raises unanticipated new issues entirely outside the scope of the moving party's motion for summary judgment. Such is not the case here, and Robinson's oral motion to strike is granted.

*Analysis*

***4** Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The question to be determined is whether, if the record of the summary judgment proceeding were the record

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

at trial, a reasonable fact finder could find in favor of the nonmoving party. Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir.1993). The record is to be examined in the light most favorable to Robinson, but conclusory allegations will not suffice. Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir.1999). Intent and credibility are crucial issues in employment discrimination cases and, therefore, the summary judgment standard is applied with added rigor in such cases, but summary judgment will not be defeated just because motive or intent are involved. *Id.* (citations omitted).

A. *Timeliness*

Under Title VII, a charging party in Illinois must file a charge with the EEOC within 300 days after the allegedly unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Micro Switch argues Robinson is time-barred from pursuing claims based on incidents occurring prior to May 29, 1997, which is 300 days prior to the filing of her March 1998 EEOC charge. This would eliminate the September 1996 book shoving incident between her and Entmeier, and the March 1997 finger pointing incident between Manske and Robinson. Robinson concedes she cannot base her lawsuit on these incidents. (Pl.Resp., p. 7) The court will address *infra* Robinson's contention that management covered up the Entmeier incident and that the effects of the concealment extended into Title VII's 300-day limitations period.[FN1]

> FN1. Robinson also argues management concealed the Manske finger pointing incident, the effects of which extended into the limitations period, but there is no evidence of this. On the contrary, within several days of the incident, management issued a "special performance report" giving Manske a verbal warning for using profane language. (LR56.1(a) ¶ 89)

B. *Scope of Charge*

In this lawsuit, Robinson complains of, *inter alia,* poor evaluations in 1998 and 1999, a lower salary increase in 1998 and the denial of a salary increase in 1999, being accused of reading a newspaper in a picnic area, and the denial of a promotion in April 1999. (LR56.1(b) ¶¶ 270, 271-73, 276, 279-81, 286-87) Micro Switch argues these incidents are outside the scope of her March 1998 charge, all having occurred after Robinson received her EEOC right-to-sue letter. The 1998 performance review and lower salary increase form the basis of Robinson's August 1998 charge, but there is no evidence in this lawsuit that she received a right-to-sue letter based on this charge.

To further complicate matters, Robinson is currently a plaintiff in two other lawsuits involving race discrimination, harassment and/or retaliation, both of which involve allegations she has raised here. In *Thomas v. Honeywell,* No. 00 C 50022, Robinson complains of, *inter alia,* the 1998 performance evaluation and corresponding pay raise, the denial of overtime hours, and the attitude of Munz and her coworkers. In *Robinson v. Honeywell,* No. 00 C 50383 (filed pro se), she complains of the June 1999 incident involving a black woman sitting in a picnic area reading a newspaper.

*5 A plaintiff is barred from raising a claim in the district court that was not raised in her EEOC charge unless the claim is reasonably related to the EEOC charge and can be expected to develop from an investigation into the charges actually raised. Green v. National Steel Corp., 197 F.3d 894, 898 (7th Cir.1999). Here, the record supports Micro Switch's claim that the poor evaluation and corresponding denial of a salary increase in 1999, being accused of reading a newspaper in a picnic area, and the denial of a promotion in April 1999, all were incidents which occurred after the EEOC issued its right-to-sue letter in June 1998. Thus, they could not possibly be expected to develop from any investigation into the charges which form the basis of this lawsuit. The court finds these incidents fall outside the scope of her charge.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 13257 (N.D.Ill.)
**2001 WL 13257 (N.D.Ill.)**

Page 5

However, as for the 1998 performance review and corresponding pay raise, it is undisputed this review is the subject of Robinson's August 1998 charge, which is also attached to her complaint in this lawsuit. Micro Switch argues there is no evidence in this lawsuit that the charge was filed with the EEOC or when, if at all, the EEOC issued a right-to-sue letter, a necessary condition precedent. It is clear from the record Micro Switch has had ample opportunity to explore Robinson's claims relating to the 1998 performance review and salary increase. To increase judicial efficiency, the court takes judicial notice from the pleadings in *Thomas v. Honeywell,* No. 00 C 50022, that Robinson in fact filed the August 1998 charge with the EEOC (Charge No. 210983859), and the EEOC issued a right-to-sue letter on September 27, 1999. These pleadings effectively cure the deficiencies in her complaint here. *See Perkins v. Silverstein,* 939 F.2d 463, 471 (7th Cir.1991) (subsequent receipt of right-to-sue letter cured deficiency in original complaint). The court will consider her claims relating to the 1998 performance review.[FN2]

> FN2. Of course, issues addressed here will have preclusive effect on any overlapping claims asserted in Robinson's other two lawsuits.

Thus, what the court is left with is the July 1997 incident when Munz accused Robinson of failing to report for overtime work, management's concealment of the Entmeier book shoving incident, the 1998 performance evaluation and corresponding low pay raise, the racial slurs, and false write-ups.

C. *Race Discrimination*

Under Title VII, it is unlawful for an employer to discriminate against an employee because of her race. 42 U.S.C. § 2000e-2(a)(1). The two accepted ways of establishing that an employer has discriminated are by direct evidence or by indirect evidence. *Hasham v. California State Bd. of Equalization,* 200 F.3d 1035, 1044 (7th Cir.2000). Here, Robinson is apparently proceeding under the indirect method of proof, as she has proffered no direct evidence of discrimination.

Under the indirect, burden-shifting method, Robinson must initially establish a prima facie case of unlawful discrimination by demonstrating: (1) she is in a protected class; (2) she suffered an adverse employment action; (3) she was meeting Micro Switch's legitimate expectations; and, (4) a similarly situated, non-protected individual was treated more favorably. *See Stockett v. Muncie Ind. Transit Sys.,* 221 F.3d 997, 1001 (7th Cir.2000). Once Robinson makes this showing, there is a presumption of discrimination against Micro Switch and it must then come forward with a legitimate, nondiscriminatory reason for its action. *Id.* At this stage, Micro Switch need not prove this was its actual motivation but, rather, need only produce admissible evidence which would allow a trier of fact to rationally conclude the employment decision at issue was not motivated by discriminatory animus. *Id.* Once Micro Switch meets its burden of production, Robinson must produce evidence from which a reasonable factfinder could conclude that Micro Switch's articulated reason is a pretext for discrimination. *Id.*

**\*6** Here, Robinson has failed to establish a prima facie case of discrimination with respect to the July 1997 overtime issue. Specifically, Robinson has failed to show Munz' accusation that she failed to report for overtime (when in fact Robinson had never signed up for overtime) resulted in an adverse employment action. For an employment action to be considered adverse within the meaning of Title VII, the employee must suffer a materially adverse change in the terms and conditions of her employment that is more disruptive than a mere inconvenience or alteration of job responsibilities. *Id.;Bell v. EPA,* 232 F.3d 546, 555 (7th Cir.2000). Robinson was not disciplined as a result of this incident. Rather, Munz merely reviewed the rules for overtime with everyone in the department. (Def. Exh. 11, Munz Aff., ¶ 6) There is no evidence in the re-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

cord she did it in such a way as to cause embarrassment or humiliation to Robinson. See *Stockett,* 221 F.3d at 1001 (conditions designed to harass and humiliate employees because of their race are actionable employment actions under Title VII).

As for the 1998 performance review, Robinson claims Munz improperly calculated her use of sick time and impermissibly wrote her up. (LR56.1(b) ¶¶ 271, 273) Her claim fails for several reasons. First, Robinson has not shown how Munz' calculations were wrong or how they violated company policy. Robinson states Munz did not give her full credit for her sick time "make-up" hours, but Munz' chart of Robinson's attendance and her written comments in Robinson's performance evaluation note the number of hours Robinson had made up.

Second, Robinson has not shown similarly situated, non-protected employees were treated more favorably than her. Robinson points to Gary Blair, a white coworker, and claims he had a worse attendance record than her but was not disciplined. Robinson's knowledge as to whether Blair was disciplined is based on Blair's statement to her that he had not been disciplined. However, Munz' comments about Blair's attendance in his 1998 performance review are similar to the comments she wrote in Robinson's review, including the warning that continued problems with his attendance could result in further disciplinary action. (*Compare* Def. Exh. 27 *with* Def. Exh. 29) While Blair may not have perceived these comments as constituting discipline, they show Munz' treatment of Robinson and Blair was identical. Robinson claims Munz did not discipline Blair until after she complained about unfair treatment (LR56.1(b) ¶ 281), but she offers no evidence to support this allegation. In fact, the documents show otherwise. Blair's performance evaluation is dated prior to Robinson's, and there is no evidence the evaluation was altered at a later date to include the negative comment about his attendance.

Robinson has established a prima facie case with respect to her pay raise claim, however. The only element that could be in dispute is the fourth element, that a similarly situated, non-protected employee was treated more favorably. To establish this element, Robinson again points to Blair. Micro Switch argues Robinson has not shown Blair was treated more favorably because he was earning less than her, even after Munz' raise. While this may be true (Munz raised Blair's salary to $507 per week, whereas raised Robinson's salary to $508 per week), the percentage increase Blair received (four and one-half percent) was higher than what Robinson received (three percent). (Def.Exhs.27, 29) This shows, for purposes of Robinson's prima facie case, that Blair was treated more favorably.

**\*7** Micro Switch has met its burden of articulating a legitimate, nondiscriminatory reason for the difference in pay raises. Munz states the pay raises for both Robinson and Blair were consistent with the "Consistently Meets Expectations" pay range, a category in which both employees fell. (Def. Exh. 11, Munz Aff., ¶¶ 17, 22) She states she increased Blair's pay rate to $507 per week because he only had one area in which she rated him at "skill-building" (the lowest level), whereas she rated Robinson at this level in three areas.(*Id.* ¶ 22;*see also* Def. Exh. 29)

Robinson has not sustained her burden of producing evidence from which a reasonable factfinder could conclude Munz' stated reason is pretextual. She has produced no evidence which calls into question the stated accuracy of the performance evaluations, or which would legitimately challenge Munz' corresponding explanation. Thus, her pay raise claim fails.

Robinson's remaining claims, that management concealed the book shoving incident and placed false write-ups in her file, fail because they are based on sheer speculation. For example, accepting as true Robinson's claim that management did not document Entmeier's "assault," she has failed to produce any evidence, directly or indirectly, that the concealment was because of her race. On the contrary, she appears to be hinting that manage-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

ment was trying to protect Entmeier (*i.e.,* "one of their own"). If so, this is not a racially motivated reason and does not support a Title VII claim.

D. *Racial Harassment*

Robinson contends she was subjected to racial harassment in the form of taunting and racial slurs, including white coworkers using the word "nigger" on the job. (Compl., p. 4) An employer may be liable for discrimination under Title VII if an employee is subject to a hostile work environment based on her race. *Mason v. Southern Ill. Univ.,* 233 F.3d 1036, 2000 WL 1779187, at *5 (7th Cir. Dec. 5, 2000). To recover, Robinson must show: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was severe and pervasive so as to alter the conditions of her employment and create a hostile or abusive work environment; and (4) there is a basis for employer liability. *Id.* Regarding liability, if the supervisor created the hostile work environment and the employee suffered a tangible employment action, the employer is strictly liable. *Id.* If the employee does not suffer a tangible employment action, the employer may raise an affirmative defense involving its use of reasonable care in preventing and correcting the harassment and the employee's failure to take advantage of any preventive or corrective opportunities. *Id.* at *5 n. 4. If the coworkers created the hostile work environment, the employer is liable only when the employee shows the employer was negligent in discovering or remedying the harassment. *Id.* at *5.

**\*8** Here, Robinson is alleging both management and her coworkers created a hostile work environment, so the court will look at the totality of the circumstances in evaluating her claim. *See Id.,* at *6. To prevail, Robinson must show her work environment was both subjectively and objectively hostile. Robinson's claim fails because at a minimum, she has not shown from an objective viewpoint that she was subjected to harassment so severe and pervasive as to alter the conditions of her employment and create a hostile or abusive work environment. *See McPhaul v. Board of Comm'rs,* 226 F.3d 558, 566 (7th Cir.2000).

Apparently, the crux of Robinson's racial harassment claim is the racial slurs, including use of the word "nigger." (LR56.1(b) ¶ 283) While use of this word is reprehensible, Robinson's evidence in support of this claim is lacking. Robinson claims white employees made racial slurs, but her personal knowledge is based entirely on hearsay. The court does not consider hearsay statements that are otherwise inadmissible at trial at the summary judgment stage. *Hong v. Children's Mem'l Hosp.,* 993 F.2d 1257, 1265 (7th Cir.1993), *cert. denied,* 511 U.S. 1005 (1994). Robinson claims she directly heard Theresa Liu use the word "nigger," yet it was in the context of Liu repeating what another employee allegedly said. The impact of second hand harassment is obviously not as great as the impact of harassment directed at the plaintiff. *McPhaul,* 226 F.3d at 567. Even assuming racial slurs were made, she has not produced any evidence showing when or how often such slurs were made, or who made them. In short, Robinson simply has not shown that from an objective viewpoint she was subjected to harassment so severe and pervasive as to alter the conditions of her employment. *See id.*

Robinson also points to the statement of General Manager Ron Sieck, who allegedly told Dennis Jordan, then the President of the Freeport branch of the NAACP, that using the work "nigger" was not grounds for firing an employee. (LR56.1(b) ¶ 80) Robinson argues this statement, as well as the company's overall lack of response to the NAACP's complaints of racial slurs and discrimination, shows a lackadaisical attitude towards race discrimination. Sieck's comment does not show the company would do nothing when confronted with an employee using a racial slur. In fact, the record shows the company disciplined an employee who it believed had used a racial slur at work. (LR56.1(a) ¶¶ 129-30)

E. *Retaliation*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Robinson also alleges she was retaliated against after she complained to the United States Department of Labor, Office of Federal Contract Compliance Programs ("OFCCP") in August 1997 about race discrimination and after she complained to Hill about the use of racial slurs. (LR56.1(b) ¶¶ 234, 250, 251, 256, 272, 276, 279, 286) Because Robinson has not produced any direct evidence of retaliation, the court will analyze her claim under the familiar *McDonnell Douglas* burden-shifting method. To establish a prima facie case of retaliation, Robinson must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action subsequent to her participation; and (3) a causal connection exists between the adverse employment action and her participation in the protected activity. *Bell,* 232 F.3d at 554.

**\*9** It seems most, if not all, the incidents which form the basis of Robinson's discrimination claim also form the basis of her retaliation claim. When viewed in their totality, it becomes clear Robinson has failed to establish the second element of a prima facie case of retaliation. She has not shown she suffered any adverse employment action. At most, Robinson states Munz ignored her and "turned her nose up" at Robinson because she complained to Hill about racial slurs. This is not an adverse employment action within the meaning of Title VII. *See Bell,* 232 F.3d at 555;*Drake,* 134 F.3d at 887. Because Robinson has not shown she suffered any adverse employment action, she likewise cannot show the requisite causal connection.

*Conclusion*

For the reasons set forth above, Micro Switch's Rule 56 motion is granted and its motion to strike is denied. Robinson's oral motion to strike is granted. This cause is hereby dismissed in its entirety.

N.D.Ill.,2001.
Robinson v. Honeywell Microswitch Div.
Not Reported in F.Supp.2d, 2001 WL 13257 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.